# EXHIBIT B

(to Dec. 13, 2019 Declaration of William J. Hine, Esq. – In re *Ex Parte* Application of Mauricio Mota For An Order To Take Discovery For Use In Foreign Proceedings Pursuant to 28 U.S.C. § 1782)



# FRANZISKA AMALIA LUSTOSA BECSKEHAZY

**SWORN PUBLIC TRANSLATOR & COMMERCIAL INTERPRETER**
**ENGLISH LANGUAGE**
Member of the Professional Association of Sworn Public Translators and Commercial Interpreter of the State of Rio de Janeiro (ATP-RIO)
TRANSLATION Nº356/2019

**I, the undersigned Sworn Public Translator and Commercial Interpreter, registered under nr. 168 with the Board of Trade of the State of Rio de Janeiro (JUCERJA), Federative Republic of Brazil, and under tax nr. (CPF/MF) 735.052.187-15 with the Ministry of Finance, do hereby certify that a document written in Portuguese has been submitted to me for translation into English, which I undertake in my official capacity, as follows:**

Separation Page
(Automatically generated by the system)
**EVENT 1**

Event:
DISTRIBUTED BY DRAW (RJRI008S)
Date:
11/14/2019 02:55:05 pm
User:
RJ135064 - GUSTAVO FONTES VALENTE SALGUEIRO - LAWYER
Case:
5089754-29.2019.4.02.5101/RJ
Event Sequence:
1

Assinado digitalmente por Franziska A. L. Becskehazy Signed digitally by Franziska A. L. Becskehazy



# FRANZISKA AMALIA LUSTOSA BECSKEHAZY
## SWORN PUBLIC TRANSLATOR & COMMERCIAL INTERPRETER
### ENGLISH LANGUAGE
Member of the Professional Association of Sworn Public Translators and Commercial Interpreter of the State of Rio de Janeiro (ATP-RIO)
TRANSLATION Nº356/2019

```
Case 5089754-29 .2019.4.02.5101 / RJ, Event 1, INIC1, Page 1
```

## Galdino e Coelho
### Advogados

| | | | | |
|---|---|---|---|---|
| Flavio Galdino | Gabriel Rocha Barreto | Luciana Barsotti Machado | Milene Pimentel Moreno | Isabela Augusta Xavier da Silva |
| Sergio Coelho | Diogo Rezende de Almeida | Aline da Silva Gomes | Amanda Titoneli | Leonardo Mucillo de Mattia |
| Rafael Pimenta | Felipe Brandão | Maria Flávia J. F. Macarimi | Carolina Bueno de Oliveira | Ana Caroline S.Gasparine |
| Rodrigo Candido de Oliveira | Adrianna Chambô Eiger | Ivana Harter Albuquerque | Maria Eduarda Gamborgi | Yuri Athayde da C. Nascimento |
| Eduardo Takemi Kataoka | Pedro Renato de Souza Mota | Fernanda Rocha David | Isabela Rampini Esteves | Carolina Pfeiffer Figueiredo |
| Cristina Biancastelli | Wallace Corbo | Luan Gomes Peixoto | Jacques F. Albuquerque Rubens | Maria Victoria Marins |
| Gustavo Salgueiro | Mauro Teixeira de Faria | Carlos Eduardo Brantes | Marcela Ruzza Silva Quintana | Gabriela Santiago de Alencar |
| Isabel Picot França | Isadora A R. de Almeida | Bruno Duarte Santos | Marcos de Souza Paula | Mônica Franco Lima |
| Marcelo Atherino | Vanessa F. F. Rodrigues | Tomás de S. Góes M. Costa | Yasmin Valle Viana M. Paiva | Felipe L. Lyra e Castro Perretti |
| Marta Alves | Julianne Zanconato | Júlia Leal Danzinger | Carolina Leite Pereira L. Moura | Rafael Dantas da Silva |
| Cláudia Maziteli Trindade | Rodrigo Saraiva Porto Garcia | Roberta Issa Maffei | Isabella Bandeira de Mello | |
| Pedro C. da Veiga Murgel | Camila Almeida | Cláudia Tiemi Ferreira | Michelle Sorensen Camilo | |

The Honorable Federal Judge of the __ th Federal Court of the Judiciary Section of the State of Rio de Janeiro

"*THAT, as for the incorporation of Blessed, the Deponent explains that it was conceived by FABIO PEGAS, from JP Morgan NY; THAT the incorporation of this offshore company was designed to make sure that the BATISTA family would remain the controlling shareholder of JBS after the merger with BERTIN; THAT* the Deponent does not know much about the structure, but knows that GILBERTO BIOJONE is the legal representative of LightHouse and US Common Wealthy insurance companies;(…)THAT the Deponent does not feel he has enough knowledge to describe the structure because it was entirely conceived by FABIO, but reports that this strategy was used to further reduce the possibility that the BERTIN FAMILY would have any form of controlling interest in JBS.* "
Excerpt from the testimony given by JOESLEY BATISTA to the Federal Police on June 21st, 2017"

MAURICIO JORGE PEREIRA FROM THE MOTA, Brazilian, married, lawyer, Brazilian Bar Association Member Nº.83,845 and Individual Taxpayer

Assinado digitalmente por Franziska A. L. Becskehazy Signed digitally by Franziska A. L. Becskehazy



# FRANZISKA AMALIA LUSTOSA BECSKEHAZY
## SWORN PUBLIC TRANSLATOR & COMMERCIAL INTERPRETER
### ENGLISH LANGUAGE
Member of the Professional Association of Sworn Public Translators and Commercial Interpreter of the State of Rio de Janeiro (ATP-RIO)
TRANSLATION Nº356/2019

Registration CPF/ME Number 795.458.587-53, voter´s card Nº. 0032.0602.0353, fully vested in his political rights, with domicile in this city at Praça Mahatma Gandhi, Nº. 2, grupo 613/615, Centro, CEP 20.031-100 (Doc. 1), through his lawyers (Doc. 2), under art. 5, LXXIII of the Federal Constitution ("CRFB") and Law No. 4,717 / 65 ("Law of Citizen Lawsuits"), brings the present Citizen Lawsuit with request for granting urgent relief

Rio de Janeiro
Av. Rio Branco 138, 11°andar
20040 002 / Centro
Rio de Janeiro /RJ
T + 55 21 3195 0240

São Paulo
Av. Brig. Faria Lima 3900/ 11°
04538 132 / Itaim Bibi
São Paulo /SP
T + 55 11 3041 1500

Brasilia
SAUS Sul / quadra 05
bloco K/ N° 17/ Salas 508-511
70070 050 Brasília / DF
T + 55 61 3323 3865

**Case 5089754-29 .2019.4.02.5101 / RJ, Event 1, INIC1, Page 2**

*Galdino e Coelho*
**Advogados**

against (i) JOESLEY MENDONÇA BATISTA ("Joesley"), Brazilian, married, businessman, Individual Taxpayer Registration CPF Number 376.842.211-91, with business address at Av. Marginal Direita Tietê, Nº. 500, bloco 1, 1º andar, Vila Jaraguá, Sao Paulo / SP, unknown email address; (ii) WESLEY MENDONÇA BATISTA ("Wesley" and, when mentioned together with his brother Joesley, "the Batista brothers"), Brazilian, married, businessman, Individual Taxpayer Registration CPF Number 364.873.921-20, with business address at Av. Marginal Direita Tietê, Nº. 500, bloco 1, 1º andar, Vila Jaraguá, Sao Paulo / SP, unknown email address; (iii) JBS S.A. ("JBS"), Corporate Taxpayer Registration CNPJ Number 02.916.265/0001-60, with address at Av. Marginal Direita Tietê, Nº. 500, bloco 1, 3º andar, Vila Jaraguá, Sao Paulo / SP, CEP 04.617-004, unknown email address; (iv) J&F INVESTIMENTOS S.A. ("J&F Investimentos"), Corporate Taxpayer Registration CNPJ Number 00.350.763/0001-62, with address at Av. Marginal Direita do Tietê, Nº. 500, Vila Jaraguá, Sao Paulo / SP, CEP 05.118-100, unknown email address; (v) PINHEIROS FUNDO DE INVESTIMENTO EM PARTICIPAÇÕES MULTIESTRATÉGIA ("Pinheiros FIP"), currently called Bertin Fundo de Investimento em Participações - FIP, an investment fund registered with Corporate Taxpayer Registration CNPJ/ME Number 11.369.979/0001-96, managed by Reag Administradora de Recursos Ltda., with Headquarters in the city and state of São Paulo at Avenida Brigadeiro Faria Lima, Nº. 2277, 17º andar, conjunto 1701, Jardim

Assinado digitalmente por Franziska A. L. Becskehazy Signed digitally by Franziska A. L. Becskehazy



# FRANZISKA AMALIA LUSTOSA BECSKEHAZY
## SWORN PUBLIC TRANSLATOR & COMMERCIAL INTERPRETER
### ENGLISH LANGUAGE
Member of the Professional Association of Sworn Public Translators and Commercial Interpreter of the State of Rio de Janeiro (ATP-RIO)
TRANSLATION Nº356/2019

Paulistano, CEP 01452-000, Corporate Taxpayer Registration CNPJ/ME Number 18.606.232/0001-53, unknown email address; and <u>in the capacity of public institutions victims of illegal acts committed by the first Defendants</u>. (vi) BANCO NACIONAL DE DESENVOLVIMENTO ECONÔMICO E SOCIAL ("BNDES"), a federal state company, Corporate Taxpayer Registration CNPJ Number, with address at Avenida República do Chile, Nº 100, Rio de Janeiro / RJ, CEP 20.031-917, unknown email address; and (vii) <u>BNDES PARTICIPAÇÕES S.A. - BNDESPAR</u> ("BNDESPar"), a corporation with Corporate Taxpayer Registration CNPJ Number, with address at Avenida República do Chile, nº. 100, parte, CEP 20.031-91, unknown email address (Doc. 3), for the following facts and legal grounds:

**2**
Case 5089754-29 .2019.4.02.5101 / RJ, Event 1, INIC1, Page 3

*Galdino e Coelho*
**Advogados**

**SUMMARY**

THE BOMBSHELL REVELATION: The "off-the-record contract" hidden for 10 years has finally been made public, revealing the actual terms of the acquisition of Bertin by JBS, to the detriment of the BNDES System and the Brazilian Treasury.    4

THIS CITIZEN SUIT IN ONE PARAGRAPH    6

EXPECTED CONDUCT OF BNDES AND BNDESPAR: ACTING ALONGSIDE THE CITIZEN SUIT PLAINTIFF    7

DEMOCRATIC MEANS OF PROTECTIION OF THE RES PUBLICA    9

HOW THE SIMULATED OPERATION WAS PRESENTED TO THE SOCIETY    10

AND THE TRUTH BEGINS TO SURFACE    25

THE MISSING PIECE: "THE OFF-THE-RECORD CONTRACT"    32

KICKBACKS: AS EXPECTED    44

BREACHES AND OTHER DAMAGES TO BNDES AND BNDESPAR UNCOVERED BY TCU - FEDERAL COURT OF ACCOUNTS    46

Rua Canning 31, Cob01- 22081-040 Rio de Janeiro – cell: (55)(21) 9 87987472
e-mail: fbecskehazy@gmail.com
4



# FRANZISKA AMALIA LUSTOSA BECSKEHAZY
**SWORN PUBLIC TRANSLATOR & COMMERCIAL INTERPRETER**
**ENGLISH LANGUAGE**
Member of the Professional Association of Sworn Public Translators and Commercial Interpreter of the State
of Rio de Janeiro (ATP-RIO)
TRANSLATION Nº356/2019

EVIDENT NULLITY OF THE DECEIVING OPERATION                    53

PETITION FOR URGENT RELIEF                                    56

**a) Presumption of sufficient legal basis**                 57

**b) Risk of imminent and irreparable damage**               59

FINAL REMARKS AND CLAIMS                                      66

**List of Documents**                                        70

**3**

Case 5089754-29 .2019.4.02.5101 / RJ, Event 1, INIC1, Page 4

*Galdino e Coelho*
**Advogados**

THE BOMBSHELL REVELATION:
The "off-the-record contract" hidden for 10 years has finally been made
public, revealing the actual terms of acquisition of Bertin by JBS, to
the detriment of the BNDES System and the Brazilian Treasury.

1. On September 16, 2009, JBS S.A. ("JBS") published a Material Fact
   disclosing an operation aiming at an "association" with Bertin S.A.
   ("Bertin") after which JBS would eventually incorporate the assets
   of "Frigorífico Bertin" – Bertin Meat Processing Company (Doc. 4).
   The operation resulting from this intention of the parties will be
   referred to in this complaint as accurately and well deserved as
   possible: "The Deceiving Operation".
2. The press release, however, did not fully disclose the actual terms
   and conditions of the transactions involved. It did not and could
   not, as the real intentions, amounts and terms were entered into
   under a contract kept confidential by the parties (Docs. 5/6). A
   quintessential off-the-record contract.
3. As proven and demonstrated in detail in this complaint, this off-
   the-record contract – in fact, a contract and an amendment signed
   on the same date! - is the last piece in a complex puzzle that
   unequivocally constitutes the perpetration of the deceiving deal.

Assinado digitalmente por Franziska A. L. Becskehazy Signed digitally by Franziska A. L. Becskehazy



# FRANZISKA AMALIA LUSTOSA BECSKEHAZY
## SWORN PUBLIC TRANSLATOR & COMMERCIAL INTERPRETER
### ENGLISH LANGUAGE
Member of the Professional Association of Sworn Public Translators and Commercial Interpreter of the State of Rio de Janeiro (ATP-RIO)
TRANSLATION Nº356/2019

4. The disclosure of the off-the-record contract was only made on May 14th, 2019, in a statement given in during a session of the "Parliamentary Inquiry Committee created to investigate unlawful practices and breaches in connection with the National Economic and Social Development Bank (BNDES) in support of the internationalization of Brazilian companies between 2003 and 2015"("BNDES CPI"), whose work was recently completed and disclosed in the form of an extensive report ("BNDES CPI Report"- Doc. 7).

5. During the course of the BNDES CPI, the businessman and former partner of the Batista Brothers, Mário Celso Lopes ("Mário Celso"), explained that the deal entered into between Bertin and J&F was never a merger <u>but an acquisition</u>

**4**

Case 5089754-29 .2019.4.02.5101 / RJ, Event 1, INIC1, Page 5

*Galdino e Coelho*
**Advogados**

<u>(purchase and sale) where Bertin was intentionally overvalued</u> to benefit the Batista Brothers. And that all this was formalized in the off-the-record contract, which Mário Celso signed as a witness, whose copy was delivered to BNDES CPI.

6. Annex 3 of the BNDES CPI Report contains, precisely, the <u>" Private Instrument of Commitment to Sell Stock and Other Covenants</u>" (Doc. 5), duly accompanied by an <u>"Amendment</u>" (Doc. 6), both executed on August 12, 2009 (hereinafter, these instruments will be jointly referred to as the "<u>off-the-record contract</u>").

7. However, bearing in mind that "sunlight is the best of disinfectants[1]" with the disclosure of information that has recently been made public - namely the expalnation provided by Mário Celso under the BNDES CPI and the disclosure of the off-the-record contract" - there is no more room for the Batista Brothers and JBS to continue to argue that the transaction would have consisted of a merger, paid through the exchange of shares of the new JBS (i.e., JBS after the acquisition of the Bertin assets).

---

[1] Louis Brandeis, US Attorney and Supreme Court Judge from 1916 to 1939.

**Rua Canning 31, Cob01- 22081-040 Rio de Janeiro – cell: (55)(21) 9 87987472**
**e-mail: fbecskehazy@gmail.com**
6



# FRANZISKA AMALIA LUSTOSA BECSKEHAZY
## SWORN PUBLIC TRANSLATOR & COMMERCIAL INTERPRETER
### ENGLISH LANGUAGE
Member of the Professional Association of Sworn Public Translators and Commercial Interpreter of the State of Rio de Janeiro (ATP-RIO)
TRANSLATION Nº356/2019

8. JBS, the "*national champion*" forged at the time, was not really the result of a merger, but rather the product of an acquisition (purchase and sale) in which Bertin's assets were intentionally overvalued in order to benefit the Batista Brothers to the detriment of the Brazilian treasury and BNDES.

`Case 5089754-29 .2019.4.02.5101 / RJ, Event 1, INIC1, Page 6`

*Galdino e Coelho*
**Advogados**

9.   As will be demonstrated, due to the Simulated Operation, the following were harmed; the Treasury, the Tax Authority, BNDES, and the minority shareholders of JBS,2 of which the main ones were BNDESPar and PROT - Fundo de Investimento em Participações ("PROT FIP"), an investment fund that is currently extinct that had as its main shareholders BNDESPar, the Foundation of Caixa Econômica Federal Employees – FUNCEF (pension fund of the Caixa Econômica Federal and the Petrobras Social Security Foundation – PETROS (Petrobras pension fund).

### THIS CITIZEN SUIT IN ONE (1) PARAGRAPH

10.   Over the next chapters, the Plaintiff needs to explain in detail the Simulated Operation and its peculiarities. However, if this citizen suit had to be explained in a single paragraph, the Plaintiff would describe it as follows:

11.   **The Batista Brothers, while controlling stockholders of JBS, fraudulently conceived a structure – which involved the confessed payment of US$ 50 million in kickbacks – in which the assets of Bertin were overstated, in order to generate an artificial interest in favor of the sellers (the Bertin family), which subsequently was transferred to them for derisive amounts, as agreed in an Off-The-**

---

2 The restitution of the damage caused by the Batista Brothers to JBS is the object of an arbitration request formulated for this purpose by the minority shareholders, observing that partners of the subscriber legal counsel (but not these) represent some of these minority shareholders. This citizen suit seeks the restitution of the damage caused to the Brazilian Treasury and to the BNDES System by the Simulated Operation, so that the objects do not get confused with each other.

Assinado digitalmente por Franziska A. L. Becskehazy Signed digitally by Franziska A. L. Becskehazy                    Página 7 de 82



# FRANZISKA AMALIA LUSTOSA BECSKEHAZY
## SWORN PUBLIC TRANSLATOR & COMMERCIAL INTERPRETER
## ENGLISH LANGUAGE
Member of the Professional Association of Sworn Public Translators and Commercial Interpreter of the State of Rio de Janeiro (ATP-RIO)

TRANSLATION Nº356/2019

**<u>Record Agreement, causing a billionaire loss to the Treasury and to the BNDES System.</u>**

**6**

Case 5089754-29 .2019.4.02.5101 / RJ, Event 1, INIC1, Page 7

*Galdino e Coelho*
**Advogados**

12.   The practical consequence of the operation briefly described above is that the Batista Brothers obtained an unjust enrichment, unlawfully, of an indirect interest in JBS corresponding to 22.56% of its capital, through two payments of US$ 10,000 and R$ 17,000. Schematically:



** Includes BNDESPar, FUNCEF, PETROS, other minority stockholders and treasury stock

Rua Canning 31, Cob01- 22081-040 Rio de Janeiro – cell: (55)(21) 9 87987472
e-mail: fbecskehazy@gmail.com

8



# FRANZISKA AMALIA LUSTOSA BECSKEHAZY
## SWORN PUBLIC TRANSLATOR & COMMERCIAL INTERPRETER
### ENGLISH LANGUAGE
Member of the Professional Association of Sworn Public Translators and Commercial Interpreter of the State of Rio de Janeiro (ATP-RIO)
TRANSLATION Nº356/2019

## THE EXPECTED CONDUCT OF BNDES AND OF BNDESPAR: ACTING ALONGSIDE THE CITIZEN SUIT PLAINTIFF

13.  Among the defendants in this citizen suit are the public institutions harmed by the acts of corruption practiced by the Batista Brothers and by JBS, namely, <u>BNDES</u> and <u>BNDESPar</u>, whose inaction to date is a surprise.

**7**
Case 5089754-29 .2019.4.02.5101 / RJ, Event 1, INIC1, Page 8

*Galdino e Coelho*
**Advogados**

14.  The inclusion of these institutions as defendants is justified on the basis of article 6, head provision, of the Citizen Suit Law,3 not only because they provided public funds into JBS due to the payment of kickbacks to the public officials involved, but mainly due to the fact that they were directly harmed by the Simulated Operation, while minority shareholders of JBS.

15.  However, considering that BNDES and BNDESPar were **victims** of Batista Brothers, the conduct that is expected of these public institutions (and of their new directors) is **that they act alongside the Plaintiff** - and never alongside **confessed criminals**! -, as authorized by § 3, article 6, of the Citizen Suit Law:

> "§ 3 The legal entities governed by public law or private law, whose act is the object of an objection, may abstain from defending the claim, or may act alongside the plaintiff, as long as this is useful to the public interest, in the judgment of their respective legal representative or director." (Our emphasis).

16.  After all, the acts of corruption having become public, **it is inconceivable** that, **now**, after the alterations made in their

---

3 *Article 6. The action will be filed against public or private persons and the entities referred to in article 1, against the authorities, employees or managers that authorized, approved, ratified or practiced the contested act, or that, by omission, provided the opportunity for the harm, and against the direct beneficiaries of the same.*
Rua Canning 31, Cob01- 22081-040 Rio de Janeiro – cell: (55)(21) 9 87987472
e-mail: fbecskehazy@gmail.com
9



# FRANZISKA AMALIA LUSTOSA BECSKEHAZY
## SWORN PUBLIC TRANSLATOR & COMMERCIAL INTERPRETER
### ENGLISH LANGUAGE
Member of the Professional Association of Sworn Public Translators and Commercial Interpreter of the State of Rio de Janeiro (ATP-RIO)
TRANSLATION Nº356/2019

governing bodies by the new Federal Government, BNDES and BNDESPar work alongside the Batista Brothers and JBS in the defense of a clearly simulated legal transaction, which decreased the interest that they should have held in JBS, as well as having harmed the Treasury, the Tax Authority and thousands of other minority shareholders of JBS.

17.   Therefore, the Plaintiff trusts that, as authorized by § 3, article 6, of the Citizen Suit Law, BNDES and BNDESPar state their interest in migrating to the prosecution side in this action and will act alongside the Plaintiff, adopting the necessary acts so that the damage that was caused to them by the Batista Brothers can be finally restituted.

**8**
Case 5089754-29 .2019.4.02.5101 / RJ, Event 1, INIC1, Page 9

*Galdino e Coelho*
**Advogados**

18.   If not, these entities should be treated as Defendants, reserving the Plaintiff the right to amend the complaint to include other legal entities or individuals who, by action or omission, have caused the damage, or were neglectful in their duty to pursue the redress, with the responsibility to explain why the <u>Federal Courts</u>, <u>Federal Revenue Service</u>, <u>PGFN</u> and <u>CARF</u> within their jurisdictions in tax matters have already recognized the occurrence of the simulation, the TCU within its inspection duties has also already recognized the simulation, the Parliament through the Commission of Inquiry has also recognized the simulation... and only the BNDES System insists on remaining (wrongly) inert in relation to the suffered damages.

<u>**SUITABILITY OF THE CITIZEN SUIT:**</u>
<u>**DEMOCRATIC MEANS OF PROTECTION OF THE RES PUBLICA**</u>

19.   As a corollary that the Democratic State Ruled by Law is based on the premise that "all power emanates from the people" (article 1, sole paragraph, of the CRFB), the citizen suit is the instrument

Assinado digitalmente por Franziska A. L. Becskehazy Signed digitally by Franziska A. L. Becskehazy          Página 10 de 82



# FRANZISKA AMALIA LUSTOSA BECSKEHAZY
### SWORN PUBLIC TRANSLATOR & COMMERCIAL INTERPRETER
### ENGLISH LANGUAGE
Member of the Professional Association of Sworn Public Translators and Commercial Interpreter of the State of Rio de Janeiro (ATP-RIO)
TRANSLATION Nº356/2019

that confers effectiveness to the right of every citizen to participate actively in the supervision of the management of the res publica through the Judicial Branch. In simple terms, the citizen suit is an expression of popular sovereignty.

20.   Through the citizen suit, the Plaintiff in question and any citizen can lawfully claim for the exercise of the indispensable prevention and repression of immorality and enable the redress of damages inflicted on public property, which is the object of this action.

21.   The citizen suit is, therefore, a clear instrument to promote democracy (given that it is based on it), by which in cases like the present one, in which there is an insurgence against the endemic corruption of public officials and elected political representatives and the misappropriation of public money, its relevance could not be clearer.

**9**
Case 5089754-29 .2019.4.02.5101 / RJ, Event 1, INIC1, Page 10

*Galdino e Coelho*
**Advogados**

22.   Having demonstrated the pertinence and relevance of this action, we now proceed to expose the immoral and harmful facts to the Treasury that resulted in its filing.

23.   It is disclosed at the outset that these losses caused to the Treasury were not the object of redress within the scope of the plea agreement of the Batista Brothers (also simulated, due to the omissions identified by the PGR4), or in the leniency agreement entered into with J&F Investimentos, especially because the facts narrated here were <u>intentionally</u> omitted in both the agreements.

---

[4] In this regard, note the <u>closing arguments</u> recently presented by the Office of the Federal Attorney General (PGR) before the Federal Supreme Court in the case records of **Complaint 7003**, in which the PGR asks for the ratification of the decisions by which the MPF <u>terminated</u> the plea agreement of the Batista Brothers and others, due to the omission of information and the committing of new unlawful offenses after the signing of the agreements (<u>Doc. 7</u>).

Rua Canning 31, Cob01- 22081-040 Rio de Janeiro – cell: (55)(21) 9 87987472
e-mail: fbecskehazy@gmail.com
11



## FRANZISKA AMALIA LUSTOSA BECSKEHAZY
### SWORN PUBLIC TRANSLATOR & COMMERCIAL INTERPRETER
### ENGLISH LANGUAGE
Member of the Professional Association of Sworn Public Translators and Commercial Interpreter of the State of Rio de Janeiro (ATP-RIO)
TRANSLATION Nº356/2019

### HOW THE SIMULATED OPERATION WAS PRESENTED TO SOCIETY

24.   In this chapter, the Plaintiff narrates, from official documents obtained on the Internet – notably in the websites of investor relations of JBS,[5] CVM and B3 (stock exchange, the former BM&F Bovespa) – how the Simulated Operation was presented by JBS and by the Batista Brothers to Brazilian society and their shareholders, including BNDESPar. For explanatory purposes, these facts will be presented chronologically.

25.   The Plaintiff believes that, by starting the disclosure of the facts as (falsely) portrayed by JBS and by the Batista Brothers, it will be easier, afterwards, to compare the "official" version with the information and documents that later became public in different areas, especially at the CPI of BNDES.

**10**

Case 5089754-29 .2019.4.02.5101 / RJ, Event 1, INIC1, Page 11

*Galdino e Coelho*
**Advogados**

26.   On **September 16, 2009,** JBS S.A. disclosed a Material Fact (**Doc. 4**), whereby it announced that it had entered into, on that date, an agreement of association with Bertin S.A., "*which provides, among others, several transactions in order to enable the unification of the Bertin and JBS operations.*"

27.   According to this Material Fact, the then controlling stockholders of JBS (J&F Participações S.A. and ZMF Fundo de Investimento em Participações), on the one side, and the controlling stockholders of Bertin (i.e., the Bertin Family through the control vehicle of Bracol Holdings Ltda.) would contribute the stocks that they respectively held at JBS and Bertin, to a new company, then called **"New Holding"**, which would become the controlling company of both JBS and Bertin.

28.   The Material Fact proceeds by informing that the "Parties are

---

[5] https://jbss.infoinvest.com.br/.

Rua Canning 31, Cob01- 22081-040 Rio de Janeiro – cell: (55)(21) 9 87987472
e-mail: fbecskehazy@gmail.com
**12**



# FRANZISKA AMALIA LUSTOSA BECSKEHAZY
## SWORN PUBLIC TRANSLATOR & COMMERCIAL INTERPRETER
### ENGLISH LANGUAGE
Member of the Professional Association of Sworn Public Translators and Commercial Interpreter of the State of Rio de Janeiro (ATP-RIO)
TRANSLATION Nº356/2019

assessing the best structure of integration for the Bertin and JBS operations," but that, finally, the interest in the New Holding would be approximately 60% for the Batista Brothers and 40% for the Bertin Family.

29.   The Material Fact concluded by also informing that JBS was in an advanced process of obtaining a capital investment of US$ 2.5 billion from an investor who was not identified at that time, given that this capitalization represented, also according to the same Material Fact, a <u>precondition</u> for the accomplishment of the association with Bertin. 6

11

Case 5089754-29 .2019.4.02.5101 / RJ, Event 1, INIC1, Page 12

<em>Galdino e Coelho</em><br><strong>Advogados</strong>

30.   Finally, JBS informed in the Material Fact that **Banco J.P. Morgan S.A.** was acting as the exclusive financial advisor of JBS.

31.   BNDES, through BNDESPar, held an interest of approximately 13% in JBS and 27% in Bertin at the time of the Simulated Operation. This interest of BNDESPar resulted from a (supposed) policy of the then government to encourage large companies in specific sectors, the so-called "national champions," to compete on a global scale. It is now known that JBS was a national champion forged by a fat

---

[6] As recorded in the Material Fact:

*"2. The Parties are assessing the best structure for the integration of the Bertin and JBS operations. In any case, the operation will follow the necessary legal procedures. It is estimated that the equity value of Bertin and JBS will be in the ratio of approximately 40% -60% (base date of June 30, 2009).*

*3. JBS is in an advanced process of negotiation of a capitalization of US$ 2.5 billion through a private subscription in JBS USA Holdings, Inc. ("JBS USA"). This operation will result in an interest of, at the most, 26.3% of the capital of JBS USA post-capitalization. The obligation of J&F and ZMF to conclude the negotiation established in the Association Agreement is subject to the obtainment of this investment in JBS USA to maintain the leverage of JBS at current levels." (**Doc. 4**).*

Rua Canning 31, Cob01- 22081-040 Rio de Janeiro – cell: (55)(21) 9 87987472<br>e-mail: fbecskehazy@gmail.com

13



# FRANZISKA AMALIA LUSTOSA BECSKEHAZY
## SWORN PUBLIC TRANSLATOR & COMMERCIAL INTERPRETER
## ENGLISH LANGUAGE
Member of the Professional Association of Sworn Public Translators and Commercial Interpreter of the State of Rio de Janeiro (ATP-RIO)
TRANSLATION Nº356/2019

bribe...

32.  The composition of the capital of JBS and Bertin at that time was described by the companies themselves as follows in the <u>Merger</u> submitted to the Brazilian Antitrust Authority - CADE on October 7, 2009 **(Doc. 9**):

**JBS**
The composition of the capital of JBS is presented in the table below:

| Stockholder | Common Stock / Total | |
|---|---|---|
| | Unity | (%) |
| ZMF Fundo de Investimentos em Part. | 87,903,348 | 6.11 |
| J&F Participações S.A. | 632,781,603 | 44.00 |
| BNDES Participações S.A. - BNDESPAR | 186,891,800 | 13.00 |
| PROT. Fundo de Invest. Em Participações | 205,365,101 | 14.28 |
| Treasury stock | 39,156,300 | 2.72 |
| Others | 285,980,774 | 19.89 |
| Total | 1,438,078,926 | 100.00 |

**Bertin**
The composition of the capital of Bertin is presented in the table below:

| Stockholder | Common Stock / Total | |
|---|---|---|
| | Unity | (%) |
| ZMF Fundo de Investimentos em Part. | 20,926,771 | 73.078 |
| BNDES Participações S.A. | 7,709,407 | 26.922 |
| Total | 28,636,178 | 100.00 |

*Source:* Merger submitted to CADE (<u>Doc. 9</u>).

12
Case 5089754-29 .2019.4.02.5101 / RJ, Event 1, INIC1, Page 13

*Galdino e Coelho*
**Advogados**

Rua Canning 31, Cob01- 22081-040 Rio de Janeiro – cell: (55)(21) 9 87987472
e-mail: fbecskehazy@gmail.com
14

Assinado digitalmente por Franziska A. L. Becskehazy Signed digitally by Franziska A. L. Becskehazy



## FRANZISKA AMALIA LUSTOSA BECSKEHAZY
### SWORN PUBLIC TRANSLATOR & COMMERCIAL INTERPRETER
### ENGLISH LANGUAGE
Member of the Professional Association of Sworn Public Translators and Commercial Interpreter of the State of Rio de Janeiro (ATP-RIO)
TRANSLATION Nº356/2019

33.    The composition of the capital of JBS, in accordance with the above Merger, can be illustrated as follows:



Organization chart of JBS on October 7, 2009. **Source**: Merger submitted to CADE (**Doc. 9**).

34.    On the same day, **September 16, 2009,** JBS released a second Material Fact (**Doc. 10**) with respect to the execution, by its subsidiary JBS USA Holdings. Inc. ("JBS USA"), of a Stock Purchase Agreement for the acquisition of 66% of Pilgrim's Pride Corporation ("Pilgrim's Pride"), which was a US company engaged in the breeding, slaughtering, processing and selling of chicken meat.

35.    This same Material Fact informed that JBS was in an advanced process of obtaining a capital investment of US$ 2.5 billion by an investor who was not identified at that time. However, unlike what occurred in relation to the operation with Bertin, the acquisition of Pilgrim's Pride was not conditional upon the obtainment of the aforesaid capital investment.[7]

---

[7] As recorded in the Material Fact:
"6. *The Company is in an advanced process of negotiation of a capitalization of US$ 2.5 billion through a private subscription in JBS USA to maintain the leverage of JBS at current levels. This operation will result in an interest of, at the most, 26.3% of the*

Assinado digitalmente por Franziska A. L. Becskehazy Signed digitally by Franziska A. L. Becskehazy                    Página 15 de 82



# FRANZISKA AMALIA LUSTOSA BECSKEHAZY
## SWORN PUBLIC TRANSLATOR & COMMERCIAL INTERPRETER
### ENGLISH LANGUAGE
Member of the Professional Association of Sworn Public Translators and Commercial Interpreter of the State of Rio de Janeiro (ATP-RIO)
TRANSLATION Nº356/2019

**13**

`Case 5089754-29 .2019.4.02.5101 / RJ, Event 1, INIC1, Page 14`

*Galdino e Coelho*
**Advogados**

36.  On **November 26, 2009,** the Bertin Family established a Private Equity Investment Fund - FIP, then called the "Bertin Fundo de Investimento em Participações - FIP" ("Bertin FIP"), which was registered with the CNPJ under no 11.369.979/0001-96 (**Doc. 11**). This FIP exists today, but is now called the Pinheiros Fundo de Investimento em Participações Multiestratégia ("Pinheiros FIP") and is controlled by the Batista Brothers – the Pinheiros FIP appears as the 5th Defendant in this citizen suit.

37.  On December 11, 2009, the Bertin Family subscribed **1,775,231** (one million, seven hundred and seventy-five thousand, two hundred and thirty-one] membership interests of this fund and paid in by the transfer of all the stocks owned by Bertin S.A., for the amount of **R$ 1,775,231,000.00** (one billion, seven hundred and seventy-five million, two hundred and thirty-one thousand reais), corresponding to 73% of the capital of Bertin (the other 27% also belonged to BNDESPar). This information was taken from the Financial Statements of Bertin FIP on March 31, 2010, obtained from the CVM website (**Doc. 12**):

*4 Bonds and securities*

**(a) Private bonds – stocks**

The Fund has as a main asset the interest in FB Participações S.A., holding 48.52% of the ordinary stock of its capital. The business purpose of FB Participações S.A., consists in the equity interest in other companies, as a

---

*capital of JBS USA post capitalization. However, the acquisition of Pilgrim's Pride is not conditional upon this investment." (**Doc. 10**)*

**Rua Canning 31, Cob01- 22081-040 Rio de Janeiro – cell: (55)(21) 9 87987472**
**e-mail: fbecskehazy@gmail.com**
16



# FRANZISKA AMALIA LUSTOSA BECSKEHAZY
## SWORN PUBLIC TRANSLATOR & COMMERCIAL INTERPRETER
### ENGLISH LANGUAGE
Member of the Professional Association of Sworn Public Translators and Commercial Interpreter of the State
of Rio de Janeiro (ATP-RIO)
TRANSLATION Nº356/2019

member or stockholder (holding) and the administration of
its own assets. FB Participações S.A., was constituted for
the creation of an association between the JBS S.A. and the
Bertin S.A. companies.

On December 11, 2009, the amount of 20,296,764 stocks of
Bertin S.A. was paid into the Bertin Fundo de Investimento
em Participações (Fund), with an amount of R$ 1,775,231,
corresponding to 1,775,231 membership interests. The amount
of the paid in stocks was stipulated based on an accounting
appraisal report of a specialized company.



*Source: Financial Statements of Bertin FIP on March 31, 2010, obtained
from the CVM website (**Doc. 12**)*

38.  On **December 12, 2009,** a Notice was published inviting the
stockholders of JBS to an Special General Meeting to be held on
**December 29, 2009** (**Doc. 13**). during which should be resolved, among
other matters

**14**

Case 5089754-29 .2019.4.02.5101 / RJ, Event 1, INIC1, Page 15


*Galdino e Coelho*
**Advogados**

included in the order of the day, (a) the bond issue by JBS, in the
amount of up to US$ 2 billion; and (b) the merger of the stock
issue of Bertin into the assets of JBS, under the conditions
recorded in the Protocol and Justification, with the consequent
conversion of Bertin into a wholly owned subsidiary of JBS. On the
same date,  the Registration and Justification of the Merger of the
Stock Issue of Bertin S.A. by JBS S.A. ("Protocol of the Merger of
the Bertin Stock" (**Doc.14**) was disclosed to the shareholders and
Appraisal Report of the Bertin Stock to be merged by JBS, prepared
by APSIS Consultoria Empresarial Ltda. ("1ˢᵗ Appraisal Report" -
**Doc. 15**).

Rua Canning 31, Cob01- 22081-040 Rio de Janeiro – cell: (55)(21) 9 87987472
e-mail: fbecskehazy@gmail.com
17



# FRANZISKA AMALIA LUSTOSA BECSKEHAZY

**SWORN PUBLIC TRANSLATOR & COMMERCIAL INTERPRETER**

**ENGLISH LANGUAGE**

Member of the Professional Association of Sworn Public Translators and Commercial Interpreter of the State
of Rio de Janeiro (ATP-RIO)

TRANSLATION Nº356/2019

39. According to the 1st Appraisal Report, the economic value of Bertin was calculated by the criterion of profitability, adopting the methodology of discounted cash flow. According to Apsis, by this methodology, Bertin was worth R$ 13,562,329,000.00 (thirteen billion, five and hundred sixty-two million, three hundred and twenty-nine thousand reais], on the base date of September 30, 2009:

---

**EXECUTIVE SUMMARY**

APSIS CONSULTORIA EMPRESARIAL Ltda. was appointed to appraise the economic value of the BERTIN stock for purposes of the merger of the stocks by JBS under the terms of article 252, of Law 6404, dated December 12, 1976 (Law of the S/A).

The economic value of Bertin was calculated based on the profitability, calculated by the methodology of discounted cash flow. This methodology defines the profitability of the company as being its operational value, equivalent to the discounted value of the future net cash flow. This flow is composed of the net income after taxes, plus non-cash items (amortization and depreciation) and deducted investments in operational assets (working capital, plants, installed capacity etc.).

**DISCOVERED FINAL VALUE**

Based on the presented studies performed by APSIS, on the base date of September 30, 2009, the appraisers concluded the following values for BERTIN:

| ECONOMIC VALUE OF BERTIN S.A. (Thousands of R$) | |
|---|---|
| growth in perpetuity | 3.0% |
| discount rate (per year) | 9.0% |
| OPERATIONAL CASH FLOW | 5,990,956 |
| DISCOUNTED RESIDUAL VALUE | 11,681,140 |
| OPERATIONAL VALUE OF BERTIN S.A. | 17,672,095 |
| NET INDEBTEDNESS | (4,109,766) |
| NON-OPERATIONAL ASSETS | 0,00 |
| ECONOMIC VALUE OF BERTIN S.A. | 13,562,329 |

---

Assinado digitalmente por Franziska A. L. Becskehazy Signed digitally by Franziska A. L. Becskehazy



# FRANZISKA AMALIA LUSTOSA BECSKEHAZY
## SWORN PUBLIC TRANSLATOR & COMMERCIAL INTERPRETER
### ENGLISH LANGUAGE
Member of the Professional Association of Sworn Public Translators and Commercial Interpreter of the State of Rio de Janeiro (ATP-RIO)
TRANSLATION Nº356/2019

---

```
ESTIMATES

From the Net Cash Flow projected for the
next 10 years, based on a conservative
scenario, and on the residual value of
this flow thereafter (considering a
growth rate in perpetuity of 3.0% per
year), we discounted these amounts from
the present value, using the actual
discount rate of 9.0% per year.
```

**Source: 1ˢᵗ** *Appraisal Report, obtained from the website of JBS (**Doc. 15**)*

**15**

**Case 5089754-29 .2019.4.02.5101 / RJ, Event 1, INIC1, Page 16**

*Galdino e Coelho*
**Advogados**

*40.* On **December 14, 2009,** JBS disclosed a new Material Fact (**Doc. 16**), in which it provided clarifications with respect to (a) the capitalization in the amount of US$ 2 billion to be implemented by the bond issue by JBS; and (b) the operation of association between JBS and Bertin.

41.  With respect to the first point, JBS clarified that *"the bonds to be issued by the Company constitute the capitalization instrument that the Company considers appropriate to support its capital structure,* **to the extent that the bonds will never be paid in cash by the Company,** *but will be mandatorily exchangeable for stock issue of JBS USA Holding, Inc. ("JBS USA") or convertible into the stock of the Company, observing that the bonds can only be converted into the stock of the Company if JBS USA does not become*

Rua Canning 31, Cob01- 22081-040 Rio de Janeiro – cell: (55)(21) 9 87987472
e-mail: fbecskehazy@gmail.com
19



# FRANZISKA AMALIA LUSTOSA BECSKEHAZY
## SWORN PUBLIC TRANSLATOR & COMMERCIAL INTERPRETER
### ENGLISH LANGUAGE
Member of the Professional Association of Sworn Public Translators and Commercial Interpreter of the State
of Rio de Janeiro (ATP-RIO)
TRANSLATION Nº356/2019

*a public company with stocks listed on the Stock exchange in the USA"* (**Doc.16**, our emphasis}. It was also clarified that the funds to be obtained would enter into the cash of JBS USA, i.e., would be used a priority for the acquisition of Pilgrim's Pride.

42.   On **December 15, 2009**, JBS published new Notice, this time inviting the stockholders of JBS to a Special General Meeting to be held on **December 31, 2009** (<u>**Doc. 17**</u>), during which should be resolved, among other matters included in the order of the day, the merger of Bertin by JBS, under the conditions recorded in the Registration and Justification, with the consequent dissolution of Bertin (acquired company) by JBS (surviving company). On the same date, the <u>Registration and Justification of the Merger of Bertin S.A. by JBS S.A.</u> ("<u>Protocol of the Merger of Bertin</u>" – **Doc. 18**) and the <u>Appraisal Report of Bertin</u>, also prepared by <u>APSIS Consultoria Empresarial Ltda.</u> ("<u>2nd Appraisal Report</u>" – **Doc. 19**) were disclosed to the shareholders.

43.   According to the 2nd Appraisal Report (prepared by the same Apsis, the consultancy responsible for the previous report), Bertin was appraised at $ **3,773,858,371.68** (three billion, seven hundred and seventy-three million, eight hundred

**16**
**Case 5089754-29 .2019.4.02.5101 / RJ, Event 1, INIC1, Page 17**

*Galdino e Coelho*
**Advogados**

and fifty-eight thousand, three hundred and seventy-one reais and sixty-eight cents), on the base date of September 30, 2009, this time by the <u>accounting criteria</u>:

**5. APPRAISAL OF THE STOCKHOLDERS' EQUITY**

| COMPANY: Bertin S.A. | | |
|---|---|---|
| **BASE DATE: September 09th 2009** | | |
| **RELEVANT ACCOUNTS** | **VALUE (REAIS)** | |
| | **ACCOUNTING** | |

The accounting records of BERTIN were

| | | |
|---|---|---|
| **ASSETS** | *9,640,424,344.20* | |
| CURRENT ASSETS | *3,532,742,838.88* | |

Assinado digitalmente por Franziska A. L. Becskehazy Signed digitally by Franziska A. L. Becskehazy                    Página 20 de 82



# FRANZISKA AMALIA LUSTOSA BECSKEHAZY
## SWORN PUBLIC TRANSLATOR & COMMERCIAL INTERPRETER
### ENGLISH LANGUAGE
Member of the Professional Association of Sworn Public Translators and Commercial Interpreter of the State of Rio de Janeiro (ATP-RIO)
TRANSLATION Nº356/2019

examined and all the other documents required for the preparation of this report.

The experts assessed that the value of the accounting stockholders' equity of BERTIN is R$ 3,773,858,371.68 (three billion, seven hundred and seventy-three million, eight hundred and fifty-eight thousand, three hundred and seventy-one reais and sixty-eight cents), at September 30, 2009, as follows:

|  |  |
|---|---|
|  | **6,107,681,505.32** |
| NON-CURRENT ASSETS |  |
| NON-CURRENT | **484,054,108.29** |
| **RECEIVABLES** | **5,623,627,397.03** |
| INVESTMENTS | **635,243,199.14** |
| FIXED ASSETS | **3,883,290,052.77** |
| INTANGIBLE | **1,071,839,162.17** |
| DIFFERED | **33,254,982.95** |
|  |  |
| **LIABILITIES** | **5,866,565,972.52** |
| CURRENT LIABILITIES | **2,962,245,177.49** |
| NON-CURRENT LIABILITIES | **2,904,320,795.03** |
| LONG TERM LIABILITIES | **2,904,320,795.03** |
| STOCKHOLDERS' EQUITY | **3,773,858,371.68** |

*Source: 2nd Appraisal Report, obtained from the JBS website (**Doc. 19**)*

44. Despite the appraisal reports having essentially the same purpose – to appraise Bertin for the purposes of the merger of its assets by JBS, which was only done in two steps –, without knowing the other facts that are the object of this action, it would be very difficult to understand the reason why JBS adopted methods that resulted in such different appraisals: exactly a difference of R$ **9,788,470,628.32.**

45. Your Honor can appreciate that none of the Material Facts and other corporate documents disclosed at the time by JBS cared to explain the reason why the methodologies were adopted that generated such disparate appraisals. The justification for the

Assinado digitalmente por Franziska A. L. Becskehazy Signed digitally by Franziska A. L. Becskehazy                    Página 21 de 82



# FRANZISKA AMALIA LUSTOSA BECSKEHAZY
### SWORN PUBLIC TRANSLATOR & COMMERCIAL INTERPRETER
### ENGLISH LANGUAGE
Member of the Professional Association of Sworn Public Translators and Commercial Interpreter of the State
of Rio de Janeiro (ATP-RIO)
TRANSLATION Nº356/2019

adoption of these different criteria, it is now known, **was to artificially create an excess of interest of the Bertin Family in JBS, which would later be transferred to the Batista Brothers for a derisive amount...**

**17**

Case 5089754-29 .2019.4.02.5101 / RJ, Event 1, INIC1, Page 18

*Galdino e Coelho*
**Advogados**

46.   On December 23, 2009, JBS issued a new Material Fact (**Doc. 20**), in which it informed that the investor who was in advanced negotiations (in accordance with the Material Facts released on September 16, 2009 and December 14, 2009) was in fact <u>BNDESPar</u>!

47.   As explained in the aforesaid Material Fact, on **December 22, 2009,** the controlling shareholders of JBS and BNDESPar entered into an <u>Investment Agreement</u>,[8] in which BNDESPar would subscribe to the mandatorily convertible bonds, in an amount in reais corresponding to US\$ 2 billion, except only for the bonds possibly subscribed by other shareholders that declare a right of preference.

48.   **The** payment of these bonds[9] (**Doc. 21**) would necessarily be by means of the conversion of the respective credit into stocks, whether stocks of JBS USA (if JBS USA began to trade stocks in the US market, a situation in which the bonds would be exchanged for Brazilian Depositary Receipts – BDRs, i.e., for receipts of stocks of foreign companies traded on the Brazilian stock exchange), or were stocks of the actual Defendant JBS, in the situation of JBS USA not carrying out its initial public offering of stocks ("IPO") in the United States, as in fact it has not carried out up to now.

49.   A brief break will be opened up here with the chronological exhibition that is being made in order to clarify that, according

---

[8]  The Plaintiff could not locate this Investment Agreement, which is believed not to be a public document.

[9]  The Indenture of these bonds is available at: https://jbss.infoinvest.com.br/enu/2133/Escrituradalemissaodedebentures.pdf (access on this date).

Rua Canning 31, Cob01- 22081-040 Rio de Janeiro – cell: (55)(21) 9 87987472
e-mail: fbecskehazy@gmail.com
22



# FRANZISKA AMALIA LUSTOSA BECSKEHAZY

**SWORN PUBLIC TRANSLATOR & COMMERCIAL INTERPRETER**
**ENGLISH LANGUAGE**

Member of the Professional Association of Sworn Public Translators and Commercial Interpreter of the State of Rio de Janeiro (ATP-RIO)

TRANSLATION Nº356/2019

to the information obtained on the website of the BNDES,[10] BNDESPar is still the holder of these bonds of JBS,

**18**

Case 5089754-29 .2019.4.02.5101 / RJ, Event 1, INIC1, Page 19

*Galdino e Coelho*
**Advogados**

paid in by the total amount of R$ **3,477,567,914.00** (then equivalent to US $ 2 billion):

**Unified Consultation**
JBS S.A.
CNPF/CPF: 02916265000160
4 operations Operations of Variable Income found
Survey period 2007 to June 2019
Last update: October 8, 2019
New consultation
Download csv file with additional information
Export csv

Order by most recent    Return

---

10

https://www.bndes.gov.br/SiteBNDES/bndes/bndes pt /Galerias/Convivencia / Consuta operacoes/ consulta unificada.html? cpfcnpj=02916265000160&nome=&operacao=operacao renda variavel (access on this date).

**Rua Canning 31, Cob01- 22081-040 Rio de Janeiro – cell: (55)(21) 9 87987472**
**e-mail: fbecskehazy@gmail.com**

23



# FRANZISKA AMALIA LUSTOSA BECSKEHAZY
### SWORN PUBLIC TRANSLATOR & COMMERCIAL INTERPRETER
### ENGLISH LANGUAGE
Member of the Professional Association of Sworn Public Translators and Commercial Interpreter of the State of Rio de Janeiro (ATP-RIO)
TRANSLATION Nº356/2019

| Year | Type of Asset | Paid in Amount (R$) | Predominant objective | Objective / Purpose of the operation |
|---|---|---|---|---|
| 2010 | BONDS | 1,212,287,421 | INTERNATIONALIZATION | SUBSCRIPTION AND PAYING IN OF BONDS MANDATORILY EXCHANGEABLE IN STOCK CERTIFICATE RECEIPTS ? BDRS ? OF THE CONTROLLED COMPANY JBS USA OR MANDATORILY CONVERTIBLE INTO ORDINARY STOCK OF JBS S.A., WITHIN THE AMBIT OF A PRIVATE OFFER, WITH THE OBJECTIVES OF SUPPORTING: (A) THE ACQUISITION OF PILGRIM'S PRIDE, A COMPANY FROM THE CHICKEN PROTEIN SECTOR, BASED IN THE USA, (B) THE REINFORCEMENT OF THE CONSOLIDATED CAPITAL OF JBS, AFTER THE ACQUISITION OF PILGRIM'S AND THE ASSOCIATION WITH BERTIN S/A, A CATTLE PROTEIN AND LEATHER PROCESSING COMPANY. THIS OPERATION IS PART OF THE TOTAL SUPPORT VIA BONDS OF US$ 2 BILLION. |
| 2009 | BONDS | 2,265,280,493 | INTERNATIONALIZATION | SUBSCRIPTION AND PAYING IN OF BONDS MANDATORILY EXCHANGEABLE IN STOCK CERTIFICATE RECEIPTS ? BDRS ? OF THE CONTROLLED COMPANY JBS USA OR MANDATORILY CONVERTIBLE INTO ORDINARY STOCK OF JBS S.A., WITHIN THE AMBIT OF A PRIVATE OFFER, WITH THE OBJECTIVES OF SUPPORTING: (A) THE ACQUISITION OF PILGRIM'S PRIDE, A COMPANY FROM THE CHICKEN PROTEIN SECTOR, BASED IN THE USA, (B) THE REINFORCEMENT OF THE CONSOLIDATED CAPITAL OF JBS, AFTER THE ACQUISITION OF PILGRIM'S AND THE ASSOCIATION WITH BERTIN S/A, A CATTLE PROTEIN AND LEATHER PROCESSING COMPANY. THIS OPERATION IS PART OF THE TOTAL SUPPORT VIA BONDS OF US$ 2 BILLION. |

*Source:* BNDES website

50.     Together with the Investment Agreement entered into between the controlling shareholders of JBS and BNDESPar, on **December 22, 2009,** the same parties entered

**19**
Case 5089754-29 .2019.4.02.5101 / RJ, Event 1, INIC1, Page 20

*Galdino e Coelho*
**Advogados**

into a **Stockholders Agreement**[11] (**Doc. 22), with the objective of**

---

[11]          Stockholders' Agreement available at:
https://jbss.infoinvest.com.br/ptb/735/Acordo%20de%20Acionistas%2018-12-2009% 20-% 20ASSINATURA.pdf (access on this date).

Rua Canning 31, Cob01- 22081-040 Rio de Janeiro – cell: (55)(21) 9 87987472
e-mail: fbecskehazy@gmail.com

24



# FRANZISKA AMALIA LUSTOSA BECSKEHAZY
## SWORN PUBLIC TRANSLATOR & COMMERCIAL INTERPRETER
### ENGLISH LANGUAGE
Member of the Professional Association of Sworn Public Translators and Commercial Interpreter of the State of Rio de Janeiro (ATP-RIO)
TRANSLATION Nº356/2019

**granting** certain political rights and protections to BNDESPar, as a minority shareholder of JBS. Among those rights, were included (a) the appointment of two (2) board members at JBS while BNDESPar holds over a 20% interest[12]; and (b) the right to veto 15 subject matters, listed in clause 4.2 of the Shareholders Agreement.

51.    As established in its clause 6.1,[13] the Shareholders' Agreement would be effective initially until December 31, 2014, with the parties agreeing its automatic renewal for another 5 (five] years as of December 31, 2014 (therefore, valid until **December 31, 2019**), as long as BNDESPar has at the time of renewal, at least 15% (fifteen per cent] of the capital of JBS – today BNDESPar has 21.316% of the capital of JBS, as can be ascertained from the most recent Reference Form[14] of JBS, obtained on its website.15

20

Case 5089754-29 .2019.4.02.5101 / RJ, Event 1, INIC1, Page 21

*Galdino e Coelho*
**Advogado**

---

[12] *"3.2. Member(s) Appointed by BNDESPAR. During the term of this Shareholders Agreement, and while it continues to be an Eligible Shareholder, the shareholder BNDESPAR will have the right to the election and maintenance of one (1) member of the Board of Directors of JBS ; noted, however, that while BNDESPAR is the holder, directly or indirectly, of stock above 20% (twenty per cent) of the total and voting capital of JBS, the shareholder BNDESPAR will have the right to the election and maintenance of two (2) members of the Board of Directors of JBS. For purposes of the exercise of this right, BNDESPAR will inform the name in question to the other shareholders by the beginning of the respective general meeting, and the shareholders will vote en bloc, in the respective general meeting, in the name so provided."* (**Doc. 22**)

[13] *"6.1. Effectiveness. The effectiveness of this Shareholders Agreement will be conditional on the completion, by BNDESPAR, of the subscription and paying in of all the Bonds arising from the assignment of preference rights by ZMF and J&F and all the unsubscribed stocks to which it has a right, under the terms of the Indenture, and will be valid until December 31, 2014. In addition, the Parties agree that this Shareholders Agreement shall be automatically renewed for one further period of five (5) years (the "Subsequent Period"), counted from December 31, 2014, in case, on this date, BNDESPAR has, directly and indirectly, 15% (fifteen per cent) or more of the total and voting capital of the Company. In any situation, this Shareholders' Agreement shall become ineffective from the date on which BNDESPAR ceases to be an Eligible Stockholder."* (**Doc. 22**)

[14] As is known, the Reference Form is the document by which a company with stocks listed on a stock exchange is presented to the market. It is regulated by CVM Instruction nº 480, whose annex 24 standardizes the structure of the Reference Forms, indicating the obligatory information.

[15] Reference Form available at :
http://jbss.infoinvest.com.br/services.siteri1redirect.asp?grupo=5117&idioma=pt&arquivo=87219.pdf&tipo=arquivo&protocolo atual=
(access on this date).

Rua Canning 31, Cob01- 22081-040 Rio de Janeiro – cell: (55)(21) 9 87987472
e-mail: fbecskehazy@gmail.com

25



## FRANZISKA AMALIA LUSTOSA BECSKEHAZY
**SWORN PUBLIC TRANSLATOR & COMMERCIAL INTERPRETER**
**ENGLISH LANGUAGE**
Member of the Professional Association of Sworn Public Translators and Commercial Interpreter of the State
of Rio de Janeiro (ATP-RIO)
TRANSLATION Nº356/2019

The Plaintiff asks Your Honor to record this information: <u>the existing Shareholders'Agreement between BNDESPar and the corporate control vehicles of the Batista Brothers will only be effective until **December 31, 2019**</u>.

52.   On December 29, 2009, the Special General Meeting of JBS was held (**<u>Doc. 23</u>**), called on December 12, 2009 (**<u>Doc. 13</u>**). This was an opportunity in which were approved, among other matters, (a) the issue of bonds to raise the total amount of R$ 3,479,600,000.00 (three billion, four hundred and seventy-nine million, and six hundred thousand reais], then corresponding US$ 2 billion, (b) the acquisition of Pilgrim's Pride for the amount of US$ 800,000,000.00 (eight hundred million US dollars] in cash; (c) the Registration of the Merger of the Bertin Stocks and of the 1st Appraisal Report; and, finally, as a consequence of the immediately preceding item, (d] a capital increase amounting to **R$ 11,987,963,196.14** (eleven billion, nine hundred and eighty-seven million, nine hundred and sixty-three thousand, one hundred and ninety-six reais and fourteen cents), through the issue of **929,392,550** (nine hundred and twenty-nine million, three hundred and ninety-two thousand, five hundred and fifty) new stocks, which were attributed to the Bertin shareholders (Bertin family and BNDESPar).

53.   On **December 31, 2009** (exactly: **December 31, 2009**), a new Special General Meeting of JBS was held (**<u>Doc. 24</u>**) called on December 15, 2009 (**<u>Doc. 17</u>**). This was an opportunity in which were approved, among other items, (a) Registration of the Merger of Bertin and the 2nd Appraisal Report; and, as a consequence, (b) the merger and the dissolution of Bertin (acquired company) by JBS (surviving company).

**21**
Case 5089754-29 .2019.4.02.5101 / RJ, Event 1, INIC1, Page 22

*Galdino e Coelho*
**Advogado**

54.   On the same date (31.12.2009], JBS announced a Material Fact (Doc. 251 to inform about the approval of the merger of Bertin and JBS completion of the acquisition, through its subsidiary JBS

Rua Canning 31, Cob01- 22081-040 Rio de Janeiro – cell: (55)(21) 9 87987472
e-mail: fbecskehazy@gmail.com
26



# FRANZISKA AMALIA LUSTOSA BECSKEHAZY
## SWORN PUBLIC TRANSLATOR & COMMERCIAL INTERPRETER
### ENGLISH LANGUAGE
Member of the Professional Association of Sworn Public Translators and Commercial Interpreter of the State of Rio de Janeiro (ATP-RIO)
TRANSLATION Nº356/2019

USA, Pilgrim's Pride control, the amount of US $ 800 million US dollars, paid in cash.

55.        It is important to emphasize that, in the manner it has been structured by the Batista Brothers and by J.P. Morgan, the merger of Bertin by JBS generated a multibillion premium, arising from the difference between (i) the amount **R$ 11,987,963,196.14** invested by JBS for the acquisition of Bertin (which corresponds to the amount of the capital increase approved on December 29, 2009, which resulted in the issue **929,392,550** new stocks delivered to the Bertin Family and BNDESPar), minus (ii) the amount of **R$ 2,527,354,000.00**, which corresponds to the value of the stockholders' equity of Bertin on December 31, 2009.

**56.**    Again in JBS own words, which recorded this goodwill in its <u>Financial Statements for the 2009 accounting period</u> (**Doc. 26**):

"The value of the deal, which led to the merger of Bertin by the Company was performed for the amount of R$ 11,987,963, corresponding to merger of 100% of the stockholders' equity of the acquired company. The amount paid is based on the economic value of Bertin on the date of the operation, and the total premium (excess) generated was R$ 9,460,609, as follows in the table below:

Summary of the operation of allocation of premium – R$ '000

| | |
|---|---|
| Amount invested in Bertin | 11,987,963 |
| Stockholders' equity of Bertin at December 31, 2009 | 2,527,354 |
| ------------------------------------------------------------------------------------- | |
| Premium generated in the operation | 9,460,609" |

***Source:*** *Financial Statements of JBS for the 2009 accounting period, obtained from the JBS website* (**Doc. 26**).

57.        Your Honor, this premium of **R$ 9,460,609,000.00** – until now recorded in the accounts by JBS – is very close to the corresponding difference between the amounts of the evaluation of

Rua Canning 31, Cob01– 22081-040 Rio de Janeiro – cell: (55)(21) 9 87987472
e-mail: fbecskehazy@gmail.com

Assinado digitalmente por Franziska A. L. Becskehazy Signed digitally by Franziska A. L. Becskehazy                                    Página 27 de 82



# FRANZISKA AMALIA LUSTOSA BECSKEHAZY
## SWORN PUBLIC TRANSLATOR & COMMERCIAL INTERPRETER
## ENGLISH LANGUAGE
Member of the Professional Association of Sworn Public Translators and Commercial Interpreter of the State of Rio de Janeiro (ATP-RIO)
TRANSLATION Nº356/2019

Bertin according to the 1st Appraisal Report and the 2nd Appraisal Report, according to which Bertin would be valued at R$ 13,562,329,000.00 by the profitability method and R$ 3,773,858,371.68 by the accounting criteria, resulting in a difference of **R$ 9,788,470,628.32.**

58.      This has a fairly obvious consequence: this goodwill would be substantially less significant if the Batista Brothers, while controllers of JBS, had adopted <u>only</u> the accounting criteria for the purposes of the appraisal of Bertin and, consequently, approved the increase of capital of JBS not on the stratospheric amount of R$ 11,987,963,196.14 (object of the 1st Appraisal Report), but based on the amount of R$ 3,773,858,371.68 (object of the 2nd Appraisal Report).

**22**
Case 5089754-29 .2019.4.02.5101 / RJ, Event 1, INIC1, Page 23

*Galdino e Coelho*
**Advogado**

59.      In any case, with the conclusion of the merger of Bertin by JBS, approved at the SGM dated December 31, 2009, the corporate composition of JBS became the following, according to the Reference Form delivered to the CVM by JBS on September 22, 2010.[16] (**Doc. 27**):

---

[16]      This corporate composition is also portrayed in the 2010 Reference Form, V12, available at: https://jbss.infoinvest.com.br/ptb/37/1362052284 fox336.pdf (accessed on this date).

**Rua Canning 31, Cob01- 22081-040 Rio de Janeiro – cell: (55)(21) 9 87987472**
**e-mail: fbecskehazy@gmail.com**
28



# FRANZISKA AMALIA LUSTOSA BECSKEHAZY
## SWORN PUBLIC TRANSLATOR & COMMERCIAL INTERPRETER
### ENGLISH LANGUAGE
Member of the Professional Association of Sworn Public Translators and Commercial Interpreter of the State of Rio de Janeiro (ATP-RIO)
TRANSLATION Nº356/2019



*Organization chart of the corporate composition of JBS on September 22, 2010.*
***Sources:*** *Reference Formula delivered to the CVM on September 22, 2010 (**Doc. 27**); and the 2010 Reference Formula, v12 (available at:* http://jbss.infoinvest.com.br/ptb/37/1362052284_fox336.pdf)

**23**

Case 5089754-29 .2019.4.02.5101 / RJ, Event 1, INIC1, Page 24

*Galdino e Coelho*
**Advogados**

60.        In the above organization chart, Bracol Holdings Ltda. ("Bracol Holdings", currently called Tinto Holding Ltda.) appears as the holder of 34.20% of Bertin FIP (now called Pinheiros FIP). As stated above, Bertin FIP was created on **November 26, 2009,** by the Bertin Family, to receive all the stocks of Bertin held by the family, corresponding to 73% of the capital of that company, for the amount of R$ 1,775,231,541.38. Bracol Holdings has always

Assinado digitalmente por Franziska A. L. Becskehazy Signed digitally by Franziska A. L. Becskehazy          Página 29 de 82



# FRANZISKA AMALIA LUSTOSA BECSKEHAZY
## SWORN PUBLIC TRANSLATOR & COMMERCIAL INTERPRETER
### ENGLISH LANGUAGE
Member of the Professional Association of Sworn Public Translators and Commercial Interpreter of the State of Rio de Janeiro (ATP-RIO)
TRANSLATION Nº356/2019

belonged – and still belongs – to the Bertin family (see, once more, the interests indicated in the Merger referred to in **item 32** above).

61.     The remaining 65.79% interest of Bertin FIP was held by an entity called Blessed Holdings, based in <u>Delaware</u>, in the United States, whose investor(s), at that time, was/were unknown. By simple arithmetic, it is possible to ascertain that Bracol Holdings and Blessed Holdings owned, respectively, 9.05% and 17.40% of the capital of JBS:

**Bracol:** 34.20% x 48.52% x 54.52% = 9.05% of the capital of JBS

**Blessed:** 65.79% x 48.52% x 54.52% = 17.40% of the capital JBS

62.     According to the JBS Financial Statements for the 2009 accounting period (**Doc. 26**), the amount of stockholders' equity of JBS at December 31, 2009, corresponded to R$ 19,150,521,000.00, resulting in that the interests of Bracol Holdings and of Blessed were valued at R$ 1,733,122,150.50 and R$ 3,332,190,654.00, respectively:

| Interest in the capital of JBS | | Value of the interest, considering the amount of stockholders' equity on December 31, 2009 (R$ 19,150,521,000.00) |
|---|---|---|
| **Blessed** | **17.40%** | **R$ 3,332,190,654.00** |
| **Bracol** | **9.05%** | **R$ 1,733,122,150.50** |

**24**

Case 5089754-29 .2019.4.02.5101 / RJ, Event 1, INIC1, Page 25

*Galdino e Coelho*
**Advogados**

Rua Canning 31, Cob01- 22081-040 Rio de Janeiro – cell: (55)(21) 9 87987472
e-mail: fbecskehazy@gmail.com
30



## FRANZISKA AMALIA LUSTOSA BECSKEHAZY
### SWORN PUBLIC TRANSLATOR & COMMERCIAL INTERPRETER
### ENGLISH LANGUAGE
Member of the Professional Association of Sworn Public Translators and Commercial Interpreter of the State of Rio de Janeiro (ATP-RIO)
TRANSLATION Nº356/2019

63.       However, in the end, who was behind Blessed, then holder of **17.40%** of the capital of JBS, corresponding at that time to over **R$ 3 billion reais**? At first, it was believed that Blessed belonged to the Bertin Family, because it had received membership interests from the Bertin FIP, which, originally belonged to the Bertin Family. The truth, however, appears gradually.
<u>AND THE TRUTH BEGINS TO SURFACE...</u>

64.       The actual forms of the Simulated Operation began to be unraveled by the diligent work of the <u>Brazilian Federal Revenue Service</u> - RFB and the <u>Office of the General Counsel for the National Treasury - PGFN</u>, which adopted administrative and judicial measures due to the need for income tax to be charged, on the grounds of the evident capital gain arising from the schedule of the exchange of stocks established between Bertin and JBS. After all, by the schedule of exchange established between the companies, the assets of Bertin were recorded at an amount well below that paid by JBS to acquire them, through the mergers described in the previous chapter.

65.       In this context, the Federal Government, through the PGFN, filed action nº 0006234-84.2015.403.6100 against Tinto Holding Ltda., (the current name of Bracol Holdings), Blessed Holdings and Pinheiros FIP (the current name of Bertin FIP), in progress before the 1st Federal Court of the Judicial District of the State of São Paulo, with the objective to obtain the return of the membership interests of Bertin FIP transmitted to Blessed, so that this asset can respond to the charge of taxation (hereinafter, this action will be referred to as the "<u>Tax Action</u>").

66.       Despite the Tax Action taking place *in camera* proceeding, it was possible to have access to the decision that ordered the freezing of the membership interests of Bertin FIP (**Doc. 28**) and the entire judgment issued these case records, published in the Official Gazette on February 2, 2018 (**Doc. 29**).

25

*Galdino e Coelho*
**Advogados**

Rua Canning 31, Cob01- 22081-040 Rio de Janeiro – cell: (55)(21) 9 87987472
e-mail: fbecskehazy@gmail.com
31

Assinado digitalmente por Franziska A. L. Becskehazy Signed digitally by Franziska A. L. Becskehazy



## FRANZISKA AMALIA LUSTOSA BECSKEHAZY
### SWORN PUBLIC TRANSLATOR & COMMERCIAL INTERPRETER
### ENGLISH LANGUAGE
Member of the Professional Association of Sworn Public Translators and Commercial Interpreter of the State
of Rio de Janeiro (ATP-RIO)
TRANSLATION Nº356/2019

67.      By analyzing this judgment, it was discovered that Bracol
Holdings (currently named Tinto Holding] entered into <u>2 (two)</u>
<u>instruments of assignment and transfer of membership interests with</u>
<u>Blessed</u>, on **December 24, 2009**, and **November 11, 2010,**[17] through
which, according to that recorded in the judgment, Tinto
transferred approximately 85% of the membership interests of Bertin
FIP to Blessed for the amounts of US$ 10,000.00 (ten thousand US
dollars] and R$ 17,000.00 (seventeen thousand reais].

68.      Despite the Tax Action taking place *in camera* proceeding,
it was possible to obtain the copies of these assignment
instruments in the case records of nº 1036979-81.2013.8.26.0100 and
nº 1046806-19.2013.8.26.0100 – also referred to in the judgment in
the Tax Action –, which consist of an action for a provisional
remedy and a declaratory judgement action that were processed, as
electronic processes, before the 5th Civil Court of São Paulo/SP.
The actions were filed by Tinto Holding (the current name of Bracol
Holdings] against Blessed in order to question the authenticity of
the assignment instrument dated November 11, 2010. In the course of
these actions, an <u>agreement</u> was entered into between the parties,
without any information of the economic content, according to which
Bracol/Tinto renounced the right that founded the action, a
renunciation that was duly ratified by judgment (**Doc. 30**).

69.      According to the assignment instrument of membership
interests, dated **December 24, 2009** ("1st Assignment Instrument" –
**Doc. 31**) Bracol/Tinto assigned to Blessed, 1,174,351.62425
membership interests (of a total of 1,785,000 membership

---

[17] As recorded in the judgment: "*169. Tinto Holding assigned and transferred <u>fraudulently</u> almost all their membership interests of Bertin FIP to Blessed. Even if these assignments had been made with suitable prices – which is only admitted as a hypothesis to reinforce what we want to confirm – , it would have configured the most obvious lack of intention of Tinto to maintain Bertin FIP. The assignments to Blessed, as shown in the agreements of assignment and transfer of the membership interests, were made on December 24, 2009, and January 11, 2010 [sic]. In less than 1 year, therefore, Tinto had disposed of 86% of the fund that it was said had been constituted to represent a new condition of investor of FB. <u>A flagrant lie,</u> moreover fully brought to perfection with the third transfer of the final 253,249 membership interests (see Table 3 – Movement of the membership interests of Bertin FIP) to J&F Investimentos, a company of the JBS group, on June 25, 2014 (doc. 39). Tinto had completely disposed of the fund.*" (**Doc. 29**, our emphasis)

Assinado digitalmente por Franziska A. L. Becskehazy Signed digitally by Franziska A. L. Becskehazy                    Página 32 de 82



# FRANZISKA AMALIA LUSTOSA BECSKEHAZY
## SWORN PUBLIC TRANSLATOR & COMMERCIAL INTERPRETER
### ENGLISH LANGUAGE
Member of the Professional Association of Sworn Public Translators and Commercial Interpreter of the State of Rio de Janeiro (ATP-RIO)
TRANSLATION Nº356/2019

interests), for the amount of **US\$ 10,000.00** (ten thousand US dollars).

**26**

Case 5089754-29 .2019.4.02.5101 / RJ, Event 1, INIC1, Page 27

*Galdino e Coelho*
**Advogados**

According to the assignment instrument of membership interests dated November 11, 2010 ("2nd Assignment Instrument" – **Doc. 32**), Bracol/Tinto assigned to Blessed another 348,317 membership interests, this time for the amount of **R\$ 17,000.00** (seventeen thousand reais).

70.    It is important to also emphasize that the judgment issued in the Tax Action mentions that Blessed belonged to two insurance companies: U.S. Commonwealth Life A.I., an insurer located in Puerto Rico, and Lighthouse Capital Insurance Company, an insurer located in the Cayman Islands. This information could be confirmed by the Plaintiff by the analysis of the organizational documents of Blessed attached to the actions filed against it by Tinto Holding (**Doc. 33**) – as well as having been confessed by Mr. Joesley Batista, sometime later, in the testimony given to the Federal Police on June 21, 2017, highlighted at the beginning of this complaint (**Doc. 34**).

71.    In the Tax Action, the National Treasury affirmed and proved, as can be inferred by the passages of the judgment transcribed below, that Bertin FIP was fraudulently conceived in order to (i) prevent the Bertin Family from participating in the governance of JBS and (ii) to remove artificially the incidence of the income tax on a billionaire capital gain:

"108. Bertin FIP was born crooked. The essence of what happened demonstrates that the JBS stocks were never held by the fund because the former controllers of JBS (the Batista family) never even admitted the idea that Bertin would participate directly from the capital of JBS. Even indirectly, through FB, Bertin never participated in the

Assinado digitalmente por Franziska A. L. Becskehazy Signed digitally by Franziska A. L. Becskehazy                    Página 33 de 82



# FRANZISKA AMALIA LUSTOSA BECSKEHAZY
### SWORN PUBLIC TRANSLATOR & COMMERCIAL INTERPRETER
### ENGLISH LANGUAGE
Member of the Professional Association of Sworn Public Translators and Commercial Interpreter of the State of Rio de Janeiro (ATP-RIO)
TRANSLATION Nº356/2019

decisions that involved JBS. (...)

110. The unlawful use of the FIP is noted. The gain of R$ 3.1 billion belonging, in fact, to Tinto Holding was not enough. The fund and JBS also tried to make believe that the stocks of JBS were issued to the FIP for R$ 8.8 billion and paid in by it in the capital of FB for R$ 4.9 billion. <u>This is the most explicit fraud combined between the two groups</u>. JBS already knew that the new stocks issued in the merger of the stocks of Bertin were agreed to remain stay in the hands of FB,

27

Case 5089754-29 .2019.4.02.5101 / RJ, Event 1, INIC1, Page 28

*Galdino e Coelho*
**Advogados**

its controller. It was already known that the JBS stocks would be paid in for R$ 4.9 billion, even though this situation characterizes **a** logically absurd total, of a corporate, business, taxation, or any other order. (...)

112. However, the misrepresentation of Bertin FIP does not stop there. The membership interests of the fund were the result of simulated transfers that do not leave the slightest doubt that Tinto Holding never had the intention to keep its investment in FB Participações or even to have an equity investment fund. This is what will now be detailed.

Assignments of the membership interests from FIP to Blessed.

113. The absolute certainty in affirming that Tinto Holding did not intended to be either a member of the Bertin FIP or an investor of FB is in the fact that, even before the merger of the stocks of Bertin by JBS was approved by the meetings of the two companies, Tinto Holding had already entered into an assignment agreement of 66% of its membership interests to Blessed (agreement

Rua Canning 31, Cob01- 22081-040 Rio de Janeiro – cell: (55)(21) 9 87987472
e-mail: fbecskehazy@gmail.com

34



## FRANZISKA AMALIA LUSTOSA BECSKEHAZY
### SWORN PUBLIC TRANSLATOR & COMMERCIAL INTERPRETER
### ENGLISH LANGUAGE
Member of the Professional Association of Sworn Public Translators and Commercial Interpreter of the State of Rio de Janeiro (ATP-RIO)
TRANSLATION Nº356/2019

on the last page of doc. 58 and on the first page of doc. 59), in a limited liability company (LLC) established in the US state of Delaware. <u>The taxation and confidentiality advantages of an LLC in Delaware are quite similar to those offered by any tax haven, to the point of Normative Instruction RFB 1.037/2010 considering it with a state subject to the tax rules applicable to jurisdictions that adopt a favored taxation</u> or privileged tax regime.

114.   The transfer of the ownership of investment funds is not easy information to obtain. Unlike a legal entity, which provides various tax and corporate information (corporate structure, due taxes, and financial statements, etc.,), an investment fund, by being a co-ownership, makes a significantly reduced quantity of information available (the funds do not declare income, because they are not a legal entity). In the case of a closed fund, as is the case of Bertin FIP, the amount of information is even less. <u>It was also for this reason why Bertin FIP was constituted: to give the least possible amount of information about its members, transfers of membership interests, value of the trades of the membership interests, and assets traded, etc.</u> (...)

**28**
Case 5089754-29 .2019.4.02.5101 / RJ, Event 1, INIC1, Page 29

*Galdino e Coelho*
**Advogados**

118.   The transfers highlighted in the above table, whose manner and amount of paying in have the expression, as explained by the fund manager:

Item 3: Bracol, on behalf of a private operation (outside the fund) without any participation of the fund manager, assigns part of two membership interests in Bertin FIP, to Blessed (CNPJ nº 11.441.489/0001-53), with this operation

Rua Canning 31, Cob01- 22081-040 Rio de Janeiro – cell: (55)(21) 9 87987472
e-mail: fbecskehazy@gmail.com
35



## FRANZISKA AMALIA LUSTOSA BECSKEHAZY
### SWORN PUBLIC TRANSLATOR & COMMERCIAL INTERPRETER
### ENGLISH LANGUAGE
Member of the Professional Association of Sworn Public Translators and Commercial Interpreter of the State of Rio de Janeiro (ATP-RIO)
TRANSLATION Nº356/2019

having been registered at CETIP. After this operation, Bracol now had 601,274.50461 membership interests of the fund and Blessed now had 1,174,351.62425.

Item 4: Bracol, on behalf of a private operation (outside the fund) without any participation of the fund manager, assigns part of its membership interests in Bertin FIP, to Blessed, in an operation registered with CETIP. After this operation, Bracol now had 252,957.50461 membership interests of the fund and Blessed now had 1,522,668.62425.

119.   The above table shows that, only 3 months after the constitution of the fund, Tinto Holding assigns 66% of its membership interests to Blessed, an LLC domiciled in Delaware. And, after another meager nine months, transfers another 20% of its initial investment to the same Blessed (or 50% of what it had in its hands). In less than one year, therefore, Tinto Holding transferred 86% of its membership interests of FIP Bertin abroad.

120.   Also, with respect to the response of the manager of the FIP, the two assignments made by Tinto Holding to Blessed are without the information of how they were paid and for what amount. (...)

121.   The lack of transparency was deliberate. The idea of Tinto Holding was to transfer most of its membership interests abroad, without informing anything to the Federal Revenue Service. We can affirm this with tranquility, because the facts that will be narrated are sufficiently crushing to confirm that the FIP was nothing but a large fraud. (...)

168.   However, it was not only the transfers in themselves that demonstrated the total calamity in relation to the

Assinado digitalmente por Franziska A. L. Becskehazy Signed digitally by Franziska A. L. Becskehazy



# FRANZISKA AMALIA LUSTOSA BECSKEHAZY
## SWORN PUBLIC TRANSLATOR & COMMERCIAL INTERPRETER
### ENGLISH LANGUAGE
Member of the Professional Association of Sworn Public Translators and Commercial Interpreter of the State of Rio de Janeiro (ATP-RIO)
TRANSLATION Nº356/2019

fund. By desisting and renouncing the right in which the action was founded, Tinto Holding admits that it assigned membership interests that were worth R$ 1 billion for a mere R$ 17,000. And by not filing another action in order to discuss the first assignment, even more valuable, of over

**29**

Case 5089754-29 .2019.4.02.5101 / RJ, Event 1, INIC1, Page 30

*Galdino e Coelho*
**Advogados**

R$ 3 billion, for an even more degrading price (US$ 10,000), Tinto confessedly practiced a legal transaction without any legitimate business reason and that was suggestive of simulation, as has been accused during the action for a provisional remedy and the principal action. And, it is repeated, due to its relevance, that nothing more received for the two assignments (paragraph 155) corroborates that the desistance of the action and the absence of the filing of another in order to question the first transfer of membership interests were an acceptance of the amounts falsely agreed in the two assignment instruments of membership interests to Blessed.

169. <u>Tinto Holding assigned and transferred fraudulently almost all their membership interests of Bertin FIP to Blessed</u>. Even if these assignments had been made with suitable prices – which is only admitted as a hypothesis to reinforce what we want to confirm – , it would have configured the most obvious lack of intention of Tinto to maintain Bertin FIP. The assignments to Blessed, as shown in the agreements of assignment and transfer of the membership interests, were made on December 24, 2009, and January 11, 2010 [sic]. In less than 1 year, therefore, Tinto had disposed of 86% of the fund that it was said had been constituted to represent a new condition of investor of FB. <u>A flagrant lie</u>, moreover fully brought to perfection with the third transfer of the final 253,249

Rua Canning 31, Cob01- 22081-040 Rio de Janeiro – cell: (55)(21) 9 87987472
e-mail: fbecskehazy@gmail.com
37



# FRANZISKA AMALIA LUSTOSA BECSKEHAZY
## SWORN PUBLIC TRANSLATOR & COMMERCIAL INTERPRETER
### ENGLISH LANGUAGE
Member of the Professional Association of Sworn Public Translators and Commercial Interpreter of the State of Rio de Janeiro (ATP-RIO)
TRANSLATION Nº356/2019

membership interests (see Table 3 – Movement of the membership interests of Bertin FIP) to J&F Investimentos, a company of the JBS group, on June 25, 2014 (doc. 39). Tinto had completely disposed of the fund.

170. All this relates to this fund being riddled with bad faith. It is important to emphasize that Tinto affirmed in the judicial action, without proof, that Blessed was the controller of JBS. The facts, however, allow three hypotheses, because it is not reasonable to suppose that very high value assets could have been practically donated: (i) Blessed belongs to JBS (ii) Blessed belongs to Tinto Holding, or (iii) Blessed belongs to both. The Estado de S. Paulo [a Brazilian newspaper] reported news that listed some coincidences that gave indications that Blessed was part of the JBS group. However, such was the fraud behind the assignments of the membership interests to Blessed that it is unimportant who owns the offshore company in Delaware. (...]

172. As seen, the intention of Tinto was not to demand a fair price. The price was simulated, derisive and cheap. The sale was not worthwhile. The prices paid

**30**

Case 5089754-29 .2019.4.02.5101 / RJ, Event 1, INIC1, Page 31

*Galdino e Coelho*
**Advogados**

for the membership interests were so insignificant that Tinto simply made a liberality, which in practice amounted to a donation. (...)

174. The cheap price accepted by Tinto in the two assignments of membership interests that were     worth over R$ 4 billion only demonstrates that the FIP was worth nothing to it." (**Doc. 29**)

72.     After recognizing that the simulation occurred, the Court of the 1st Federal Court of the Judicial District of the State of São Paulo granted the request formulated in the Fiscal Action, confirming the block previously decreed on the membership interests of Bertin FIP (**Docs. 28/29**).

Assinado digitalmente por Franziska A. L. Becskehazy Signed digitally by Franziska A. L. Becskehazy          Página 38 de 82



## FRANZISKA AMALIA LUSTOSA BECSKEHAZY
### SWORN PUBLIC TRANSLATOR & COMMERCIAL INTERPRETER
### ENGLISH LANGUAGE
Member of the Professional Association of Sworn Public Translators and Commercial Interpreter of the State of Rio de Janeiro (ATP-RIO)
TRANSLATION Nº356/2019

73.      Still with respect to the fiscal aspect of the Simulated Operation, the fact should be emphasized that on April 11, 2017, the Administrative Board of Tax Appeals – CARF denied the voluntary appeals filed by Tinto Holding and by those with joint and several liability identified therein, in order to confirm a billionaire tax deficiency notice applied by the tax authority (Appellate Decision nº 1201001.640 – **Doc 35**).

74.      Thanks to the diligent work of the Brazilian Federal Revenue Service - RFB and the Office of the General Counsel for the National Treasury - PGFN, certain aspects have been revealed of the Simulated Operation. However, there is still one last piece of the jigsaw missing, without which it is not possible to answer two fundamental questions:

(i)      after all, why did the Batista Brothers, while controllers of JBS, adopted different criteria for the appraisal of the assets of Bertin, generating a billionaire premium?

(ii)     Why did the Bertin Family agree to participate in this swindle and expose itself to a billionaire tax deficiency notice – at the end confirmed by CARF –, creating Bertin FIP that served as a vehicle for the Simulated Operation, to then transfer its membership interests for derisive amounts?

**31**
Case 5089754-29 .2019.4.02.5101 / RJ, Event 1, INIC1, Page 32

*Galdino e Coelho*
**Advogados**

75. The last piece in this complex puzzle was made public on May 14, 2019, in the statement provided by Mário Celso Lopes ("Mário Celso") under the BNDES CPI: the existence of the off-the-record contract.

### THE MISSING PIECE: "THE OFF-THE-RECORD CONTRACT"

Rua Canning 31, Cob01- 22081-040 Rio de Janeiro – cell: (55)(21) 9 87987472
e-mail: fbecskehazy@gmail.com
39



# FRANZISKA AMALIA LUSTOSA BECSKEHAZY
### SWORN PUBLIC TRANSLATOR & COMMERCIAL INTERPRETER
### ENGLISH LANGUAGE
Member of the Professional Association of Sworn Public Translators and Commercial Interpreter of the State of Rio de Janeiro (ATP-RIO)
TRANSLATION Nº356/2019

76. On May 14, 2019, Mário Celso made a statement at the BNDES CPI, whose transcript is attached herein (Doc. 36). It is worth remembering that Mário Celso signed the off-the-record contract as a witness, and participated intensely in the negotiations that preceded the signature of these instruments.

77. When specifically asked about the operation related to the "Bertin meat processing company", Mário Celso provided valuable information. As stated by the deponent, the alleged "association" between the companies was actually a buy and sell in which Bertin was overvalued by JBS, as described below:

**CONGRESSMAN ALTINEU CÔRTES (PR-RJ)** - The issue of the Bertin meat processing company opearation: You participated in the merger of the Bertin meat processing company with JBS in 2009 as a witness, as stated in the contract signed at the time. Investigations claim that BNDESPAR suffered a loss in the deal due to artificial dilution caused by fraud in Bertin purchase price via Blessed Holdings. Did you follow this whole merger process between JBS and Bertin? Could you describe how the operation was carried out involving the US company Blessed that caused losses to BNDES?

**MÁRIO CELSO LOPES** - As you said, I was witness to this operation of a purchase and sale agreement, where the JBS Group bought the Bertin company. It happened in August 2009. I did witness this buyout. From then on, I did not participate in the structuring of the operation they made to incorporate the Bertin Group, I was not supposed to, because I was never part of JBS. And the structuring culminated in the merger, which I also followed through the press. Then has been widely publicized -Joesley himself, in the plea deposition, states that the issue of Blessed

32

Case 5089754-29 .2019.4.02.5101 / RJ, Event 1, INIC1, Page 33

*Galdino e Coelho*
**Advogados**

Rua Canning 31, Cob01- 22081-040 Rio de Janeiro – cell: (55)(21) 9 87987472
e-mail: fbecskehazy@gmail.com
40

Assinado digitalmente por Franziska A. L. Becskehazy Signed digitally by Franziska A. L. Becskehazy



# FRANZISKA AMALIA LUSTOSA BECSKEHAZY
## SWORN PUBLIC TRANSLATOR & COMMERCIAL INTERPRETER
### ENGLISH LANGUAGE
Member of the Professional Association of Sworn Public Translators and Commercial Interpreter of the State of Rio de Janeiro (ATP-RIO)
TRANSLATION Nº356/2019

was a company that belonged to them and that they used to take a portion of the company's stock, for the overvaluation that they operated. This is even part of his plea agreement."

"**CONGRESSMAN ALTINEU CÔRTES (PR-RJ)-** Going back to the issue of Bertin, obviously, I would like to hear from you ... And I think that you are making available, as you have made this set of documents available, this will be very important. Just going back to the Bertin case, "after this operation between the two meat processing companies, the Bertins went to court and accused the Batistas of stealing their shares in the company by using a phony document and a forged signature. Based on this document, the Bertins claimed that the shares were transferred to the offshore company Blessed, as says' ... This is in the Joesley's plea agreement. 'In the lawsuit, the Bertins said that Blessed was created by the Batistas and they claimed a refund of $ 1 billion for their shares in the business. Interestingly, JBS told the market that Bertin meat processing company was worth 12 billion.' You followed this very closely. What do you think about that?
**MÁRIO CELSO LOPES** - At the time the transaction ... You have the original negotiation contract. It is a different amount. It is there. You must have a copy of the contract. Because it was the contract in which I appear as a witness.
**CONGRESSMAN ALTINEU CÔRTES (PR-RJ)-** yes.
**MÁRIO CELSO LOPES -** The operation has another amount. This is public information as well. This contract is in the plea agreements. That contract, it was ... The negotiation was a purchase, a real purchase, the amount was 750 million reais to be paid out to the Bertin family, because they were Bertin shareholders, plus 10% of the shares of the new JBS, after the incorporation of Bertin assets. Naturally, JBS would take on Bertin's liabilities, which was approximately 4 billion reais. That was the instrument I witnessed. That was the operation I participated in, that I got to know, where I was present as we are here now. Bertin sold to pocket 750 million reais, for JBS to take on the liabilities of their company and then, they would keep 10% of the new JBS in stock. After that, we saw in the press, the material fact reporting that JBS was in the process of merging with the Bertin Group. At the end of the year, in December 2009, the

Assinado digitalmente por Franziska A. L. Becskehazy Signed digitally by Franziska A. L. Becskehazy                    Página 41 de 82



# FRANZISKA AMALIA LUSTOSA BECSKEHAZY
## SWORN PUBLIC TRANSLATOR & COMMERCIAL INTERPRETER
### ENGLISH LANGUAGE
Member of the Professional Association of Sworn Public Translators and Commercial Interpreter of the State of Rio de Janeiro (ATP-RIO)
TRANSLATION Nº356/2019

merger was finally closed with the assessments of the two companies because any merger, corporate consolidation... Everyone knows that merged or consolidation companies have to

**33**

Case 5089754-29 .2019.4.02.5101 / RJ, Event 1, INIC1, Page 34

*Galdino e Coelho*
**Advogados**

undergo assessments, for the equity interests on each side. JBS was already considered a publicly traded company because it had already gone public in 2007. Therefore, it was a company that was, is and continues to be accountable to shareholders, not only to shareholders which are public entities and investment funds, but also to minority shareholders, individual shareholders, to those individuals who bet their savings on publicly traded stocks. A company that goes public, especially under the *novo mercado* regime that regulates transparency, this company has more than the duty, more than the obligation, more than the responsibility to do things with highest rigor and transparency. And in this case, it is widely known that this did not happen. There was an overestimation of both to meet their internal interests, obviously causing losses to investors such as BNDESPAR, such as other investment funds, such as the minority investors who placed their trust in the stocks. So, that was clear at the time, with the overvaluations and the merger, a phony merger therein, but actually it consisted of a purchase and sale. It is right there in the contract. I believe all this has been reported in the plea agreements they entered into - I believe."

**CONGRESSMAN ALTINEU CÔRTES (PR-RJ)–** Can you tell you tell if Wesley or Joesley Batista created Blessed in the United States to cheat taxes and gain business advantage over minority shareholders, including BNDES?

**MÁRIO CELSO LOPES -** It is clear that it was created to cover up JBS shareholding in the overvaluation, thereby jeopardizing minority and public shareholders.

**CONGRESSMAN ALTINEU CÔRTES (PR-RJ) –** and BNDES.

**MÁRIO CELSO LOPES -** And BNDES, which was a major shareholder. This is very clear! This was very clear, it was a way of diverting a portion of JBS's stake to a foreign offshore, which they then had to surrender and report that the offshore belonged to them. They

Rua Canning 31, Cob01- 22081-040 Rio de Janeiro – cell: (55)(21) 9 87987472
e-mail: fbecskehazy@gmail.com
42



# FRANZISKA AMALIA LUSTOSA BECSKEHAZY
## SWORN PUBLIC TRANSLATOR & COMMERCIAL INTERPRETER
### ENGLISH LANGUAGE
Member of the Professional Association of Sworn Public Translators and Commercial Interpreter of the State of Rio de Janeiro (ATP-RIO)
TRANSLATION Nº356/2019

kept denying it. They denied it until Bertin sued them for equity interests and then they settled with the Bertin Group under the lawsuit and then with the plea agreement they started to talk about the infamous Blessed. "(Doc. 36)

**34**

`Case 5089754-29 .2019.4.02.5101 / RJ, Event 1, INIC1, Page 35`

*Galdino e Coelho*
**Advogados**

78. As can be inferred from the above transcripts, Mário Celso participated in negotiations between the Bertin Family and the Batista Brothers regarding the acquisition of Bertin by JBS, whose set price was: R$ 750 million for the Bertin Family plus a 10% stake in the new JBS (i.e. JBS after merger of Bertin assets).

79. Once this exchange arraangement was agreed between the parties, on August 12 2009, the off-the-record contract was signed. The contract was submitted by Mário Celso to the BNDES CPI and became Annex 3 to the BNDES CPI Report (Docs. 5/6 and 7).

80. As provided under clause 2 of the off-the-record contract, copied below, (i) the merger would be made by incorporating the shares held by the Bertin Family and BNDESPar in Bertin (item "a"); (ii) the Bertin Family and the Batista Brothers would keep at least 51% of the capital stock of JBS following the merger (item "b"); and (iii) as payment for the sale of its stake in Bertin, the Bertin Family would receive R$ 750 million, plus an X amount of shares in Nova JBS (after the merger) " at the same price valid for the shares exchanged with shareholder BNDESPar"(item" c "):

> CLAUSE TWO – The SELLER and the BUYER agree that the price owed for this purchase will be paid as follows:
>
> Item a) The BUYER agrees to increase its capital by issuing new stock in sufficient volume to exchange and absorb the stock held by the SELLER and by shareholder BNDESPAR, i.e., the BUYER shall absorb the full COMPANY stock.
>
> Item b) After the new stock is issued, the PARENT and the SELLER

Assinado digitalmente por Franziska A. L. Becskehazy Signed digitally by Franziska A. L. Becskehazy



# FRANZISKA AMALIA LUSTOSA BECSKEHAZY
### SWORN PUBLIC TRANSLATOR & COMMERCIAL INTERPRETER
### ENGLISH LANGUAGE
Member of the Professional Association of Sworn Public Translators and Commercial Interpreter of the State of Rio de Janeiro (ATP-RIO)
TRANSLATION Nº356/2019

> will jointly hold no less than fifty-one percent (51%) of COMPANY stock.
>
> Item c) The BUYER shall pay the SELLER the full price for the latter's COMPANY stock as follows: seven hundred and fifty million reais (R$ 750,000,000) in cash and the remaining portion of the price in BUYER shares at the same price valid for the shares exchanged with shareholder BNDESPAR.

Source: Annex 3 of the BNDES CPI Report **(Doc.5).**

**35**

Case 5089754-29 .2019.4.02.5101 / RJ, Event 1, INIC1, Page 36

*Galdino e Coelho*
**Advogados**

81. The most interesting fact was that on the same date, August 12, 2009, an Amendment to the off-the-record contract was signed, the sole purpose of which was to insert a fourth item in clause 2 - the fateful item "d", which was intended precisely to lock Bertin Family's equity interest in the new JBS at 10%, forcing them to transfer any excess stake above the 10% to the Batista Brothers for $ 1.00 (one real), as described below:

> Through this instrument of amendment to the Commitment to Sell Stock and Other Covenants entered into by HEBER PARTICIPAÇÕES S.A. and JBS S/A on August 12, 2009, the parties decide to amend the following:
>
> CLAUSE TWO
>
> Item d) Once the new stock issued by the BUYER is subscribed and the exchanges are completed, the SELLER's shareholding interest will be equivalent to ten percent (10%) of the BUYER's full stock. But if in the new ownership structure the seller's shareholding interest exceeds the ten-percent (10%) limit stipulated in complement to the final price payment, the excess stock will be subject to a call option exercisable by PARENT J&F PARTICIPAÇÕES S/A for a total and token amount of one real (R$1.00).

Assinado digitalmente por Franziska A. L. Becskehazy Signed digitally by Franziska A. L. Becskehazy



## FRANZISKA AMALIA LUSTOSA BECSKEHAZY
### SWORN PUBLIC TRANSLATOR & COMMERCIAL INTERPRETER
### ENGLISH LANGUAGE
Member of the Professional Association of Sworn Public Translators and Commercial Interpreter of the State
of Rio de Janeiro (ATP-RIO)
TRANSLATION Nº356/2019

> The parties ratify and confirm the validity of all clauses and
> conditions in the original instrument.
>
> São Paulo, August 12, 2009.
>
> Source: Annex 3 of the BNDES CPI Report **(Doc.6).**

82. According to item "d" above, the Bertin Family's participation in
the new JBS should correspond to 10%. However, if, for whatever
reason, the final stake was greater than 10%, then the Bertin
Family should transfer the surplus interest for R$ 1 real,
regardless of its actual value.

83. Obviously, that prediction makes no sense. In a regular operation,
if the Bertin Family received a stake greater than 10%, it was
because the asset they "exchanged" with the Batista Brothers was
worth a stake greater than 10%, period. In a regular operation,

36

*Galdino e Coelho*
**Advogados**

returning this additional stake for R$ 1.00 would be legally and
economically unjustifiable, unless it was intended as a liberality
- or, legally speaking, a donation. However, the dispute that later
broke out between the Bertin Family and the Batista Brothers,
referred to in paragraph 68 of this complaint, allows us to state
with certainty that this was definitely not a donation[18].

**84.** That´s it. The mechanism allowing the Batista Brothers to
overestimate Bertin at their own free will was in place, as,
regardless of the scenario, any stake exceeding 10% received by the
Bertin Family due to this overvaluation should be transferred to them
for R$ 1,00.

---

[18] Obviously, when entering the judgment, the honorable court in charge of the Tax Legal Action did not have any knowledge of
the fact that the Batista Brothers had created a mechanism (the off-the-record contract) forcing the Bertin Family to transfer their
equity stake beyond the 10% in the new JBS for next to nothing.

Rua Canning 31, Cob01- 22081-040 Rio de Janeiro – cell: (55)(21) 9 87987472
e-mail: fbecskehazy@gmail.com

45



# FRANZISKA AMALIA LUSTOSA BECSKEHAZY
## SWORN PUBLIC TRANSLATOR & COMMERCIAL INTERPRETER
### ENGLISH LANGUAGE
Member of the Professional Association of Sworn Public Translators and Commercial Interpreter of the State
of Rio de Janeiro (ATP-RIO)
TRANSLATION Nº356/2019

85. This is the unquestionable explanation for Bracol/Tinto assignment on December 24, 2009 and November 11, 2010, of approximately 85% of Bertin FIP's shares for US $ 10,000.00 and R$ 17,000.00 pursuant to the 1st and 2nd Assignment Instruments (Does. 31/32).

Assignment Agreement (Docs.31/32).

86. The BNDES CPI Report summarized the misappropriation of JBS assets perpetrated by the Batista Brothers and the resulting losses:

"If that return benefits only one shareholder under a hidden contract, then you have misappropriation of company assets, because the assets (stock) were used to pay for another asset whose value was lower than the price paid and the assets used to pay the unrealistic price ended up with the Batista family to the detriment of the company and especially to the detriment of the minority shareholders including BNDES itself, the largest minority shareholder in JBS, and the pension funds which were investors in PROT FIP.

By omitting this key piece of information from the stock market, from investors and from minority shareholders in particular, the Batistas

**37**
Case 5089754-29 .2019.4.02.5101 / RJ, Event 1, INIC1, Page 38

*Galdino e Coelho*
**Advogados**

increased their shareholding interest in JBS, strengthening its control over the company, by defrauding the stock market and the Brazilian Treasury on a grand scale".[Doc.7, emphasis from the original]

87. The real contours of the Deceiving Operation would never have been revealed had it not been for the testimony of Mário Celso and the intensification of the numerous investigations against the Batista Brothers.

Rua Canning 31, Cob01- 22081-040 Rio de Janeiro – cell: (55)(21) 9 87987472
e-mail: fbecskehazy@gmail.com
46



# FRANZISKA AMALIA LUSTOSA BECSKEHAZY
## SWORN PUBLIC TRANSLATOR & COMMERCIAL INTERPRETER
### ENGLISH LANGUAGE
Member of the Professional Association of Sworn Public Translators and Commercial Interpreter of the State of Rio de Janeiro (ATP-RIO)
TRANSLATION Nº356/2019

88. In this context, it is worth stressing <u>the confession</u> made by Joesley Batista to the Federal Police on July 21st 2017 (Doc. 34), in the sense that Blessed was conceived by **Fabio Pegas** of **J.P. Morgan Bank of New York**, with the purpose of <u>"making sure that the BATISTA Family would remain the controlling shareholder of JBS after the merger with BERTIN "</u> in order to <u>"further reduce the possibility that the BERTIN FAMILY would have any form of controlling interest in JBS"</u>:

"THAT Natalino Bertin approached the Deponent for the merger (December 2008), and they did not want to sell, so the Deponent did not realize that the meat processing company was in a difficult financial situation; THAT, when the deal was closed, however, the situation of the meat processing company tuned out to be very bad and, therefore, the negotiating terms were quite unfavorable for BERTIN; THAT the negotiations were advised by J.P. Morgan on the JBS side, and by Santander (Valadão, as the Deponent recalls) on the BERTIN side; THAT at the time of the negotiations, the market was already talking about huge debts accumulated by BERTIN; THAT, as for the incorporation of Blessed, the Deponent explains that it was conceived by FABIO PEGAS of JP Morgan of NY: THAT the creation of this offshore company was designed to make sure that the BATISTA Family would remain the controlling shareholder after the merger with BERTIN: The deponent does not know much about the structure, but knows that GILBERTO BIOJONE is the legal representative of LightHouse and US Common Wealthy insurance companies; That these insurance companies are in the name of JAMES[19] and COLLINS[20], introduced to the Deponent by FABIO; THAT the Deponent

**38**
Case 5089754-29 .2019.4.02.5101 / RJ, Event 1, INIC1, Page 39

*Galdino e Coelho*
**Advogados**

does not recall values, but states that both were paid to make these companies appear as members of the Fund; THAT the Deponent claims not to have enough knowledge to describe the structure, because it was entirely

---

[19] James A.Walker, Jr
[20] Colin K. Murdoch-Muirhead.

Rua Canning 31, Cob01- 22081-040 Rio de Janeiro – cell: (55)(21) 9 87987472
e-mail: fbecskehazy@gmail.com
47



# FRANZISKA AMALIA LUSTOSA BECSKEHAZY
## SWORN PUBLIC TRANSLATOR & COMMERCIAL INTERPRETER
### ENGLISH LANGUAGE
Member of the Professional Association of Sworn Public Translators and Commercial Interpreter of the State of Rio de Janeiro (ATP-RIO)
TRANSLATION Nº356/2019

conceived by FABIO, but informs that this strategy was used to further reduce the possibility that the BERTIN FAMILY would have any form of controlling interest in JBS." (**Doc. 34**)

89. As stated above, J.P. Morgan was JBS financial advisor on everything related to the acquisition of Bertin. This was informed by JBS in the aforementioned Material Fact disclosed on September 16, 2009 (Doc. 4).

90. The relationship between JBS and J.P. Morgan started long before.
J.P. Morgan investment bank was also advisor for Friboi on the acquisition of Swift Armor S.A. Argentina, in addition to JBS IPO in the stock exchange[21]. JP Morgan's main officer in the relationship with the Batista Brothers was Patrícia Moraes, daughter of former Minister of Agriculture, Marcus Vinicius Pratini de Moraes, who, in turn, was a member of the JBS Board of Directors at the time of the acquisition of the Bertin by JBS[22].

39

*Galdino e Coelho*
**Advogados**

91. It should be noted that the JBS Board of Directors at the time consisted of Joesley, Wesley, Jose Batista Junior (brother of the first two), Jose Batista Sobrinho (father of the first three), Marcus Vinicius Pratini de Moraes (father of JP Morgan

---

[21] https://www.valor.com.br/especial/jbs

[22] "Why Not: Como os irmãos Joesley e Wesley, da JBS, transformaram um açougue em Goiás na maior empresa de carnes do mundo" [Why Not: How JBS Brothers Joesley and Wesley turned a Goiás butcher shop into the largest meat processing company in the world], (Ed. Intrínseca, 2019)  journalist RAQUEL LANDIM outlined the relationship between JP Morgan Patricia Moraes and JBS: "Banker Patrícia Moraes, then at JPMorgan, was an early supporter of Friboi going public. The daughter of former minister of Agriculture Marcus Vinicius Pratini de Moraes, she led the mergers, acquisitions and stock issuance department of the Brazilian affiliate of the US bank. A bright woman, she had easy access to Jamie Dimon, one of JP Morgan's founders, to whom she eventually introduced Joesley. Patrícia and Joesley shared at least three characteristics: an entrepreneurial drive, business aggressiveness and a high tolerance to risk. Some of the Batistas' major international business coups stemmed from their collaboration and they had no qualms about doing what had to be done to close a deal. Patrícia was so close to Joesley's companies that she was known in the market as the "JBS banker". When Joesley and Wesley turned state's evidence and confessed to their crimes in May 2017, JPMorgan opened an internal investigation on their transactions with the Batistas and transferred Patrícia to New York. She left the bank nine months after the JBS scandal, having worked there for twenty-five years. She officially left in pursuit of new challenges but in the opinion of individuals close to JPMorgan, her connection to the Batistas had become too close and toxic for the bank's reputation".

Rua Canning 31, Cob01- 22081-040 Rio de Janeiro – cell: (55)(21) 9 87987472
e-mail: fbecskehazy@gmail.com
48



# FRANZISKA AMALIA LUSTOSA BECSKEHAZY

**SWORN PUBLIC TRANSLATOR & COMMERCIAL INTERPRETER**
**ENGLISH LANGUAGE**

Member of the Professional Association of Sworn Public Translators and Commercial Interpreter of the State
of Rio de Janeiro (ATP-RIO)
TRANSLATION Nº356/2019

Patricia Moraes,) and Wagner Pinheiro de Oliveira (Doc. 37). That is, JBS Board of Directors that approved the overvalued acquisition of Bertin had 6 (six) members as described below:

- 4 (four) members were from the Batista Family and therefore with direct interest in the overvalued acquisition of Bertin (Joesley, Wesley, Jose Batista Junior and Jose Batista Sobrinho (father of the first three);
- The 5th member was Marcus Vinicius Pratini de Moraes, father of JP Morgan executive that was financially advising JBS on the acquisition of Bertin and, simultaneously structuring Blessed - an operation that would yield (as it certainly did) his daughter and the bank where she worked as an Officer a multimillion-dollar commission[23]; and
- the 6th member was the notorious Wagner Pinheiro de Oliveira, former president of Correios and Petros, charged with misconduct in public office in various lawsuits and

**40**
Case 5089754-29 .2019.4.02.5101 / RJ, Event 1, INIC1, Page 41

*Galdino e Coelho*
**Advogados**

in various investigations conducted by Car Wash Operation[24], Greenfield Operation[25] and Rhizome Operation[26] task forces.

---

[23] The BNDES CPI Report also shed light on another non-Republican act by Banco J.P. Morgan and JBS:"(…) after Joesley and Wesley Batista turned state's evidence, documents came to light showing that the same JP Morgan whose executive was the daughter of a JBS director and that had conceived and organized Blessed Holdings had earlier, at the request of JBS controlling shareholders, organized two Bahamas offshore companies – Formentera Holdings and Mustique Enterprises – that held a checking account with JP Morgan in New York. The JBS controlling shareholders used that account to pay kickbacks to the Workers' Party, especially to minister Guido Mantega, as a "quid pro quo" for support in funding JBS' expansion plan. Joesley Batista confessed that, at one point, the account held US\$ 150 million". [Doc.7]

[24]http://www.mpf.mp.br/pr/sala-de-imprensa/noticias-pr/forca-tarefa-lava-jato-denuncia-42-pessoas-envolvidas-em-esquema-criminoso-na-construcao-da-sede-da-petrobras-na-bahia

[25]http://www.mpf.mp.br/df/sala-de-imprensa/noticias-df/ft-greenfield-denuncia-13-por-fraudes-com-recursos-do-fundo-de-pensao-petros: http:/ /www.mpf.mp. br /df /sala-de-imprensa/noticias-df /forca-tarefa-da-greenfield-denuncia-gestores-da-funcef-e-petros-por-gestao-fraudulenta:     e     http://www.mpf.mp.br

Rua Canning 31, Cob01- 22081-040 Rio de Janeiro – cell: (55)(21) 9 87987472
e-mail: fbecskehazy@gmail.com

49



# FRANZISKA AMALIA LUSTOSA BECSKEHAZY
## SWORN PUBLIC TRANSLATOR & COMMERCIAL INTERPRETER
### ENGLISH LANGUAGE
Member of the Professional Association of Sworn Public Translators and Commercial Interpreter of the State of Rio de Janeiro (ATP-RIO)
TRANSLATION Nº356/2019

92. During the BNDES CPI, brothers Natalino Bertin and Silmar Bertin confirmed that Blessed was brought into the operation by Joesley Batista, who reported that it would represent a "foreign investor" at JBS. Only a long time later, when the facts now narrated came to light, did they discover that Blessed actually belonged to the Batista Brothers themselves (**Docs 38/39**):

**CONGRESSMAN ALTINEU CÔRTES (PR-RJ)-** Now, Sir, you may figure ... getting it off my chest here now, Mr. Natalino. We see you here answering the questions with respect. I see candor in your words. Joesley, after having done everything he did, he is living the high life, he has deceived this entire country, he has deceived the minority shareholders. I ask you, Sir: investigation are reporting that BNDES suffered a loss with the deal as a result of the artificial dilution caused by the fraud in the purchase price of Bertin via Blessed. Were you a partner at Blessed?
**NATALINO BERTIN —** This company, Blessed ... When he came and said ... When he spoke to us, when he came, the first time he spoke, he said Blessed was a foreign investor. He said it was a foreign investor, and that... and he went on and on, always saying that. And I came to find out - I came to find out? - I came to know that Blessed was his from the press now, less than a year ago, from the press I found out that Blessed actually belonged to him. "(Doc. 38)
**41**
Case 5089754-29 .2019.4.02.5101 / RJ, Event 1, INIC1, Page 42

*Galdino e Coelho*
**Advogados**

**"CONGRESSMAN ALTINEU CÔRTES (PR-RJ)-** Businessman Mário Celso Lopes stated here at the CPI that Blessed was created to cover up JBS shareholding in the overvaluation deal to the detriment of minority shareholders and BNDES, which was a major shareholder. Is it true that Blessed was created just days before your merger with JBS?

---

/df/sala-de-imprensa/noticias-df/ft-greenfield-apresenta-denuncia-por-fraudes-em-fundos-de-pensao-envolvendo-empresas-de-joesley-batista
[26]http://www.mpf.mp.br/rj/sala-de-imprensa/noticias-rj/mpf-rj-denuncia-16-pessoas-investigadas-na-operacao-rizoma

Rua Canning 31, Cob01- 22081-040 Rio de Janeiro – cell: (55)(21) 9 87987472
e-mail: fbecskehazy@gmail.com
50



# FRANZISKA AMALIA LUSTOSA BECSKEHAZY
## SWORN PUBLIC TRANSLATOR & COMMERCIAL INTERPRETER
### ENGLISH LANGUAGE
Member of the Professional Association of Sworn Public Translators and Commercial Interpreter of the State of Rio de Janeiro (ATP-RIO)
TRANSLATION Nº356/2019

**SILMAR ROBERTO BERTIN –** It was the Batista Family who brought Blessed in and into the operation - Joesley introduced Blessed as a foreign investor. Within a configuration in which he wanted to remain the controlling shareholder of the companies, he brought Blessed as an investor.
**"CONGRESSMAN ALTINEU CÔRTES (PR-RJ)** - So, you didn't find out until later? Weren't you aware of this strategy of Joesley's before?
**SILMAR ROBERTO BERTIN -** I didn't know, I didn't know. "(Doc. 39)

93. It is worth remembering that, with the completion of the acquisition of Bertin by JBS, approved at the Special General Meeting of December 31, 2009, JBS adopted the corporate structure informed by JBS in the Reference Form submitted to CVM (Brazilian Securities and Exchange Commission) on September 22, 2010[27] (Doc. 27). From simple arithmetic calculation, it can be seen that Bracol Holdings and Blessed Holdings respectively owned 9.05% and 17.40% of JBS:

42

Case 5089754-29 .2019.4.02.5101 / RJ, Event 1, INIC1, Page 43

*Galdino e Coelho*
**Advogados**

---

[27] The stock ownership is also described in the 2010 Reference Form, v12, available at https://jbss.infoinvest.com.br/ptb/37/1362052284fox336.pdf (accessed on this date).

Rua Canning 31, Cob01- 22081-040 Rio de Janeiro – cell: (55)(21) 9 87987472
e-mail: fbecskehazy@gmail.com
51



## FRANZISKA AMALIA LUSTOSA BECSKEHAZY
### SWORN PUBLIC TRANSLATOR & COMMERCIAL INTERPRETER
### ENGLISH LANGUAGE
Member of the Professional Association of Sworn Public Translators and Commercial Interpreter of the State of Rio de Janeiro (ATP-RIO)
TRANSLATION Nº356/2019



Organizational chart showing JBS stock ownership on September 22, 2010. Source: Reference Form delivered to CVM on September 22, 2010 (Doc. 27); and 2010 Reference Form, v12 (available at https://jbss.infoinvest.com.br/ptb/37/1362052284fox336.pdf}

    94.As stated, according to JBS Financial Statements for 2009 (Doc. 26), JBS net worth on December 31, 2009 reached R$ 19,150,521,000.00, with Bracol Holdings and Blessed owning R$ 1,733,122,150.50 and R$ 3,332,190,654.00 respectively:

|         | Stake in JBS | Stock ownership in BR$ considering JBS net worth on 12/31/2009 of (R$ 19,150,521,000.00) |
|---------|--------------|------------------------------------------------------------------------------------------|
| **Blessed** | 17.40%       | R$ 3,332,190,654.00                                                                      |
| **Bracol**  | 9.05%        | R$ 1,733,122,150.50                                                                      |

Assinado digitalmente por Franziska A. L. Becskehazy Signed digitally by Franziska A. L. Becskehazy



# FRANZISKA AMALIA LUSTOSA BECSKEHAZY
## SWORN PUBLIC TRANSLATOR & COMMERCIAL INTERPRETER
### ENGLISH LANGUAGE
Member of the Professional Association of Sworn Public Translators and Commercial Interpreter of the State
of Rio de Janeiro (ATP-RIO)
TRANSLATION Nº356/2019

95. It was precisely the Bertin FIP shares, valued at a few billion
reais, which were transferred by Bracol Holdings (now Tinto
Holding), on December 24th, 2009 and November 11th, 2010, for
US$ 10,000.00 and R$ 17,000.00 under the 1st and 2nd Assignment
Instruments (Docs. 31/32).

**43**

Case 5089754-29 .2019.4.02.5101 / RJ, Event 1, INIC1, Page 44

*Galdino e Coelho*
**Advogados**

96. **As it has become clear at this point, the acquisition of Bertin
by JBS was designed to artificially create a surplus of the
Bertin Family's stake in JBS that would later be - as it
actually ended up being! - transferred to the Batista Brothers
for next to nothing. After all, as a result of the overvaluation
of Bertin, an artificial amount of shares was created in the new
JBS corresponding to the premium paid above the actual value of
Bertin's assets incorporated by JBS was transfered to the
Batista Brothers without for no real consideration**.

97. **Through this exercise, together, the Batista Brothers obtained
two conniving objectives: not only did they keep control of JBS
by illegally diluting minority shareholders - BNDESPar being the
main one — but also took over an artificial stake of 17.4% in
JBS - which was worth R$ 2,911,274,402.00 on December 31, 2009
considering the JBS net worth at that time.**

THE KICKBACKS, AS EXPECTED...

98. Considering that this Citizen Lawsuit involves the Batista
Brothers, it should come as no surprise that kickbacks were paid
to government officials for the purpose of obtaining the enough
funds to accomplish the Deceiving Operation.

99. The funds, as explained in the chapter describing how the
Deceiving Operation was introduced to the company, consisted in

Rua Canning 31, Cob01- 22081-040 Rio de Janeiro – cell: (55)(21) 9 87987472
e-mail: fbecskehazy@gmail.com
53



# FRANZISKA AMALIA LUSTOSA BECSKEHAZY
## SWORN PUBLIC TRANSLATOR & COMMERCIAL INTERPRETER
### ENGLISH LANGUAGE
Member of the Professional Association of Sworn Public Translators and Commercial Interpreter of the State of Rio de Janeiro (ATP-RIO)
TRANSLATION Nº356/2019

the subscription, by BNDESPar, of bonds issued by JBS, compulsorily convertible into equity interest, in an amount in BR$ corresponding to US$ 2 Billion.
**44**

Case 5089754-29 .2019.4.02.5101 / RJ, Event 1, INIC1, Page 45

*Galdino e Coelho*
**Advogados**

100. Under his plea agreement, Joesley comfessed the payment of US$ 50 million in kickbacks to former Minister Guida Mantega in return for BNDESPar's commitment to subscribe to the bonds issued to fund the acquisition of Pilgrim's Pride in the US:

"THAT in 2009, the deponent realized that he was close enough to Guido Mantega to get rid of Vic's intermediation; THAT the deponent managed to schedule a meeting directly with Guido Mantega and during this meeting he explained that he would prefer, for personal reasons, not to rely on Vic's intermediation. THAT Still at the same meeting, they had a conversation and the deponent remembers having asked Guido Mantega how to get the bribe payments right, to which Guido Mantega allegedly replied: "you decide, I trust you"; THAT then the deponent asked what percentage, saying that when negotiations were carried out through Vic, they agreed on the "right amount" to which Guido Mantega replied "Let's see case by case"; THAT the deponent understood that he was to discuss kickbacks in every deal that Guido Mantega intervened in his favor and that he would hold the amounts himself; THAT, at that point, the deponent understood that he was paying kickbacks to Guido Mantega himself; THAT this format was used for two BNDES operations; THAT the first was the acquisition, in December 2009, by BNDES of JBS bonds convertible into shares in the amount of US$ 2 billion to support the expansion plan of 2009; THAT in this deal, Guido Mantega intervened with Luciano Coutinho, including during meetings where the deponent was present, so that the deal would be closed, always arguing the objections of the president of the bank; THAT, although the operation negotiations had been quite tough, the deals were closed without breaches and without causing harm to the financial institution; THAT on several occasions, the deponent noticed Luciano Coutinho's surprise and discomfort with his presence; THAT the declarant recorded in favor of Guido Mantega, on account of this deal, a credit of US$ 50 million and opened a bank

Assinado digitalmente por Franziska A. L. Becskehazy Signed digitally by Franziska A. L. Becskehazy                                        Página 54 de 82



# FRANZISKA AMALIA LUSTOSA BECSKEHAZY
## SWORN PUBLIC TRANSLATOR & COMMERCIAL INTERPRETER
## ENGLISH LANGUAGE
Member of the Professional Association of Sworn Public Translators and Commercial Interpreter of the State
of Rio de Janeiro (ATP-RIO)
TRANSLATION Nº356/2019

account abroad, in the name of an offshore company controlled by him, in which he deposited the amount; [Joesley Batista Plea Agreement Instrument N° 1– **Doc.40**]

**45**

Case 5089754-29 .2019.4.02.5101 / RJ, Event 1, INIC1, Page 46

*Galdino e Coelho*
**Advogados**

101. It is worth pointing out that, according to the Material Fact disclosed by JBS on September 16, 2009 (Doc. 4), the capitalization was a precondition for the accomplishment of the association with Bertin[28].

102. In short: kickbacks were paid out to a State Minister so that the Brazilian Treasury (via BNDES) invested money into a deceiving operation ... It gets worse: the kickbacks also came from the taxpayers money ... A DISGRACEFUL ACCOMPLISHMENT

BREACHES AND OTHER DAMAGES TO BNDES AND BNDESPAR UNCOVERED BY TCU — THE FEDERAL COURT OF ACCOUNTS

"117. The facts described above seem to lead to the understanding that the structure of the deal made public does not reflect what actually occurred, and that the simulated sale of Bertin FIP Fund shares to JBS controlling shareholders in fact consisted in a price reduction through the return of part of the amount paid. However, the return, or price rebate, was not brought back into the company - as one would

---

[28] As stated in the Material Fact:
"2. The Parties are assessing the best structure for Bertin and JBS operations integration. In any event, the operation shall comply with the necessary legal procedures. It is estimated that the equity value of Bertin and JBS should be approximately 40% - 60% (base date 06.30.2009).
3. JBS is at an advanced stage for negotiating a US$ 2.5 billion capitalization through JBS USA Holdings, Inc. ("JBS USA") private subscription. This operation will result in a maximum JBS USA stake of 26.3% post-capitalization. The obligation of J&F and ZMF to complete the deal as provided in the Association Agreement is subject to obtaining this capital contribution into JBS USA to maintain JBS leverage at current levels."(Doc. 4)

Rua Canning 31, Cob01- 22081-040 Rio de Janeiro – cell: (55)(21) 9 87987472
e-mail: fbecskehazy@gmail.com
55



# FRANZISKA AMALIA LUSTOSA BECSKEHAZY
## SWORN PUBLIC TRANSLATOR & COMMERCIAL INTERPRETER
### ENGLISH LANGUAGE
Member of the Professional Association of Sworn Public Translators and Commercial Interpreter of the State of Rio de Janeiro (ATP-RIO)
TRANSLATION Nº356/2019

reasonably expect, considering that, as the issuer of the shares used for payment, it was actually the one making the acquisition - nor was it prorated among all shareholders of the company, which would be equivalent. And this is where the breach lies. (...)

123. Regardless of the reasons that led Bertin majority shareholders to agree to such return of the paid amount, the fact remains that it was confirmed in the investigation conducted by the Brazilian IRS that the transfer of shares from the Bertin FIP Fund to Blessed LLC actually took place, and the proximity of dates confirms

**46**

Case 5089754-29 .2019.4.02.5101 / RJ, Event 1, INIC1, Page 47

*Galdino e Coelho*
**Advogados**

that the transfer was part of the terms negotiated between the controlling shareholders of both companies. In addition, it has been demonstrated that the return of the amount did not benefit all shareholders, **which would be compulsory, but it only benefited the majority shareholders of JBS**. "

Excerpt from TCU Plenary Decision No. 2154/2018
(Doc. 42)

103. It is perfectly clear that the admission to the payment of kickbacks in consideration for approval of the operation constitutes sufficient evidence for nullity. However, the confession is further substantiated by the various breaches identified with proper discretion by the **Federal Court of Accounts - TCU** especially in the capitalization operation to finance the acquisition of Pilgrim's Pride. Such breaches are described in **Decision No. 3011/2015** (Doc. 41), as follows:

**The breaches:**

(i) On November 23, 2009, JBS sent an application letter to BNDES requesting support for this operation, which was fully treated by BNDES on the following day and subsequently approved by the BNDES

Rua Canning 31, Cob01- 22081-040 Rio de Janeiro – cell: (55)(21) 9 87987472
e-mail: fbecskehazy@gmail.com

Assinado digitalmente por Franziska A. L. Becskehazy Signed digitally by Franziska A. L. Becskehazy     Página 56 de 82



# FRANZISKA AMALIA LUSTOSA BECSKEHAZY
## SWORN PUBLIC TRANSLATOR & COMMERCIAL INTERPRETER
## ENGLISH LANGUAGE
Member of the Professional Association of Sworn Public Translators and Commercial Interpreter of the State
of Rio de Janeiro (ATP-RIO)
TRANSLATION Nº356/2019

Board of Directors on December 22, 2009. The entire process of assessment and approval of the operation, despite its complexity and sheer size, was completed within just <u>twenty business days</u>.

(ii) The destination of the funds from the bonds issue operation was JBS USA, a company with headquarters in the United States, as it was JBS USA which was going to acquire Pilgrim's Pride[29]. Thus,

**47**

**Case 5089754-29 .2019.4.02.5101 / RJ, Event 1, INIC1, Page 48**

*Galdino e Coelho*
**Advogados**

BNDESPar agreed to buy equity interest in a foreign company, which is precluded under its bylaws.

(iii) Despite the significant amounts involved, in the scope of the investigation carried out by TCU, there are no records showing that BNDES or BNDESPar performed effective monitoring of the transfer of funds to JBS USA, or if eventually the funds got lost in JBS, a Defendant herein.

**The Losses:**

(iv) The Bond Indenture clearly stated that, if the JBS USA IPO did not occur, the bonds would then be converted into issuer shares – Defendant JBS shares -, applying the conversion price calculated based on the price of the last 60 (sixty) trading sessions and limited between R$ 6.50 and R$ 12.50. However, when it became clear that the IPO was not going to happen, JBS proposed and BNDESPar

---

[29] Later, it became known that in the acquisition of Pilgrims' Pride, JBS only used US$ 800 million of the total US$ 2 billion raised through the issuance of the BNDESPar subscribed bonds, with a remaining balance of US$ 1.2 billion not used for the purpose described in the Bond Indenture. Bearing in mind that JBS or JBS USA subsequently acquired, either directly or indirectly, several other companies (or assets) worldwide (for example, Arizona-based McElhaney Cattle Co. Inc.; Wisconsin-based Link Snacks, Inc.; Alberta-based XL Foods; Delaware-based Provemex Holdings LLC, chicken division of Tyson Foods Inc., also headquartered in Delaware; additional stake in Pilgrim's Pride owned by Tyson Foods Inc.; pork operations of Delaware-based Cargill Meat Solutions Corp. Minnesota-based JFC LLC; Delaware-based Plumrose USA, Inc.; Moy Park Holdings Europe Limited. based in England; Transbotics Corporation. headquartered in Delaware; and Tulip Limited based in England). There are strong indications that funds were raised in excess of what was needed to fulfill the purpose stated in the Bond Indenture to fund JBS international expansion, which may have caused additional damage to the Brazilian Treasury and the BNDES system.

Rua Canning 31, Cob01- 22081-040 Rio de Janeiro – cell: (55)(21) 9 87987472
e-mail: fbecskehazy@gmail.com
57



# FRANZISKA AMALIA LUSTOSA BECSKEHAZY
## SWORN PUBLIC TRANSLATOR & COMMERCIAL INTERPRETER
### ENGLISH LANGUAGE
Member of the Professional Association of Sworn Public Translators and Commercial Interpreter of the State
of Rio de Janeiro (ATP-RIO)
TRANSLATION Nº356/2019

accepted, an outright unacceptable liberality, to change the previous rule and set the price based on the last 100 trading sessions. <u>This caused the conversion price to change from the previously set minimum of R$ 6.50 (as the previous calculation resulted in R$ 5.87 per share) to R$ 7.04, producing an unjustified premium benefitting JBS and resulting in a loss estimated at R$ 290.5 million to BNDESPar in historical values.</u>

(v) The Bond Indenture expressly provided that, in the event that the JBS USA IPO did not materialize, the conversion of bonds into defendant JBS shares would be subject to a 10% premium. However, BNDESPar simply waived this right and, at the time of the conversion, did not demand the defendant JBS to transfer the shares corresponding to this 10% provided in the Bond Indenture. <u>Thereby BNDESPar incurred in losses of R$ 350 million in historical values.</u>

**48**
Case 5089754-29 .2019.4.02.5101 / RJ, Event 1, INIC1, Page 49

*Galdino e Coelho*
**Advogados**

104. Subsequently, at a plenary session held on September 12, 2018, the TCU issued Decision No. 2154/2018 (Doc. 42), in which it acknowledged **"<u>that the simulated sale</u>** of Bertin FIP shares to JBS controlling shareholders effectively meant a reduction of the price through the return of part of the amount paid, "but" the return of the amount did not benefit all shareholders, <u>which would be compulsory, but it only benefited the majority shareholders of JBS</u>":

"117. The facts described above seem to lead to the understanding that the structure of the deal made public does not reflect what actually occurred, and that the simulated sale of Bertin FIP Fund shares to JBS controlling shareholders in fact consisted in a price reduction through the return of part of the amount paid. However, the return, or price rebate, was not brought back into the company - as one would reasonably expect, considering that, as the issuer of the shares used for payment, it was actually the one making the acquisition - nor

Assinado digitalmente por Franziska A. L. Becskehazy Signed digitally by Franziska A. L. Becskehazy          Página 58 de 82



# FRANZISKA AMALIA LUSTOSA BECSKEHAZY

**SWORN PUBLIC TRANSLATOR & COMMERCIAL INTERPRETER**

**ENGLISH LANGUAGE**

Member of the Professional Association of Sworn Public Translators and Commercial Interpreter of the State of Rio de Janeiro (ATP-RIO)

TRANSLATION Nº356/2019

was it prorated among all shareholders of the company, which would be equivalent. And this is where the breach lies. (...)

123. Regardless of the reasons that led Bertin majority shareholders to agree to such return of the paid amount, the fact remains that it was confirmed in the investigation conducted by the Brazilian Federal Revenue Service that the transfer of shares from the Bertin FIP Fund to Blessed LLC actually took place, and the proximity of dates confirms that the transfer was part of the terms negotiated between the controlling shareholders of both companies. <u>In addition, it has been demonstrated that the return of the amount did not benefit all shareholders, which would be compulsory,</u> **but it only benefited the majority shareholders of JBS**."(Doc 42)

105. It is important to emphasize that, in that same judgment, the TCU acknowledged that although BNDESPar had closely monitored the public part of the transaction - that is, that portion disclosed by JBS and its controlling shareholders to the market - BNDES / BNDESPar was not aware of the secret part of the operation, so the TCU understood that "only they [the JBS and Bertin controlling shareholders] shall be liable for any such damage to BNDES". And that is precisely why it

49

Case 5089754-29 .2019.4.02.5101 / RJ, Event 1, INIC1, Page 50

<em>Galdino e Coelho</em><br>**Advogados**

it is stated that the **BNDES System was a VICTIM**[30] of the Batista Brothers, and remedy as well as reparation of the damages caused by this action are of utmost importance.

106. Below is the transcript of TCU Decision 2154/2018:

---

[30] And this is exactly why the Plaintiff once again <u>urges</u> BNDES and BNDESPar, especially due to the changes operated in its governing bodies by the new Federal Government, to express their interest <u>in migrating to the Plaintiff side of this claim</u> and start acting in as claimant as authorized by § 3 of art. 6 of the Citizen Lawsuit Act, instead of acting alongside the confessed criminals defending an operation that included the confessed payments of kickbacks and which has already been recognized as deceiving by the <u>Federal Justice System</u>, the <u>Federal Revenue Service</u>, the <u>PGFN</u>, the <u>CARF</u>, the <u>TCU</u> and the Brazilian <u>Parliament</u>.

**Rua Canning 31, Cob01- 22081-040 Rio de Janeiro – cell: (55)(21) 9 87987472**<br>**e-mail: fbecskehazy@gmail.com**<br>59



# FRANZISKA AMALIA LUSTOSA BECSKEHAZY
## SWORN PUBLIC TRANSLATOR & COMMERCIAL INTERPRETER
### ENGLISH LANGUAGE
Member of the Professional Association of Sworn Public Translators and Commercial Interpreter of the State
of Rio de Janeiro (ATP-RIO)
TRANSLATION Nº356/2019

"122. There is circumstantial evidence in the records that BNDESPar closely followed the entire business structuring and actively participated in it, including providing financial support to JBS to bear the burden of the transaction, but there is no evidence in the records that the bank was aware of this transfer of shares from Bertin's controlling shareholders to JBS controlling shareholders. Considering that the transaction was not made public at the time, it seems that it was in the interest of the parties directly involved to keep it secret. In the absence of evidence of participation by the bank or the bank's employees and managers, such a transfer may have been a condition imposed by JBS controlling shareholders on Bertin controlling shareholders to close the deal. As this was an issue only decided and implemented by them, only they shall be liable for any such damage to BNDES."**(Doc. 42)**

107. The losses identified by TCU in Decision No. 3011/2015 – namely, the alteration of the Bond Indenture to change JBS share exchange relationship with BNDES and the waiver of the 10% premium in the event of JBS USA IPO not materializing – are a far cry from being the only losses caused to the BNDES System and the Brazilian Treasury by the Batista Brothers.
50

Case 5089754-29 .2019.4.02.5101 / RJ, Event 1, INIC1, Page 5

*Galdino e Coelho*
**Advogados**

108. In addition, there is the enormous harm resulting from Bertin overestimation directly affecting BNDESPar and the FUNCEF and PETROS pension funds, which, alongside BNDESPar, were the main members of PROT FIP, which held 14.28 % of JBS capital stock prior to the Deceiving Operation (as identified in the table and organization chart under **items 32 and 33** of this complaint).

109. This is because, as we have seen, the off-the-record contract provided for the return of a surplus to the Batista Brothers for a symbolic value. If Bertin assets had been valued correctly, there simply would not be a surplus to be returned to the controlling shareholders, much less in consideration for very little payment.

Rua Canning 31, Cob01- 22081-040 Rio de Janeiro – cell: (55)(21) 9 87987472
e-mail: fbecskehazy@gmail.com
60



# FRANZISKA AMALIA LUSTOSA BECSKEHAZY
## SWORN PUBLIC TRANSLATOR & COMMERCIAL INTERPRETER
### ENGLISH LANGUAGE
Member of the Professional Association of Sworn Public Translators and Commercial Interpreter of the State of Rio de Janeiro (ATP-RIO)
TRANSLATION Nº356/2019

110. Although after the deal was closed there might be eventually a need to make a positive adjustment in favor of the JBS controlling shareholders, this positive balance should have served all shareholders in proportion to their respective interests. Thus, there was a clear misappropriation of JBS, as assets were acquired by the company at a substantially overpriced amount. Worse even, in the end, the capital stake corresponding to the overpriced shares ended up in the hands of the Batista Brothers.

111. In addition, there is a clear loss to the Brazilian Treasury consisting in the undue reduction in federal tax base.

112. As explained above, the overvaluation of Bertin assets generated premium of R$ 9,460,609,000.00 - which has been "carried" on JBS balance sheet to date - as recorded in the 2009 Financial Statements (**Doc. 26**):

51

Case 5089754-29 .2019.4.02.5101 / RJ, Event 1, INIC1, Page 52

*Galdino e Coelho*
**Advogados**

The amount of the deal, which led to the incorporation of Bertin by the Company, was closed in the amount of R$ 11,987,963.00 corresponding to the incorporation of 100% of the merged company net equity. The amount paid is based on Bertin's economic value on the transaction date, and the total premium (excess) generated was R$ 9,460,609.00 as follows:

Summary of premium allocation operation – thousand R$

| | |
|---|---|
| Amount invested in Bertin | 11,987,963 |
| Bertin Shareholders' Equity on 12/31/2009 | 2,527,354 |
| Premium generated in the operation | 9,460,609 |

Source: 2009 JBS Financial Statements, obtained from JBS website (Doc.26)

113. This artificial premium resulting from the overvaluation of Bertin's assets reduces the basis of JBS's taxable income by causing the company to be paying less taxes than otherwise.

Assinado digitalmente por Franziska A. L. Becskehazy Signed digitally by Franziska A. L. Becskehazy                    Página 61 de 82



# FRANZISKA AMALIA LUSTOSA BECSKEHAZY
## SWORN PUBLIC TRANSLATOR & COMMERCIAL INTERPRETER
### ENGLISH LANGUAGE
Member of the Professional Association of Sworn Public Translators and Commercial Interpreter of the State of Rio de Janeiro (ATP-RIO)
TRANSLATION Nº356/2019

114. These losses were correctly identified in the BNDES CPI Report, as shown below:

This whole side of the BERTIN merger was entirely concealed from the market and was never made public. <u>The intricate structure the Batista family erected is the living proof that the BERTIN merger, as it was implemented, always aimed at obtaining illegal gains to the detriment of the treasury and of minority shareholders, including BNDES and pension funds, which were unduly diluted as a consequence of this fraudulent scheme.</u>

The transaction obviously also caused major losses to JBS to the extent that JBS was forced to pay R$ 11.9 bn (in stock) for an asset worth between R$ 1.775 billion (value the Bertin family ascribed to its stock when organizing FIP BERTIN) and R$ 3.7 billion (value Apsis attributed to BERTIN in the valuation report used in the merger of December 31st, 2009).

<u>The loss and the R$ 9.5 billion BERTIN premium that JBS entered in the Balance Sheet in expectation of future profits allowed JBS to reduce its tax base pursuant to Law no. 9,532 of 1997. The illegal use of a fake premium</u>

52

`Case 5089754-29 .2019.4.02.5101 / RJ, Event 1, INIC1, Page 53`

*Galdino e Coelho*
**Advogados**

<u>will cause JBS to pay the tax improperly saved back plus all applicable penalties, which can go as high as 150% of the tax amount owed."</u> **(Doc.7)**

115. In its conclusion, the aforementioned report points out that the frauds identified during the CPI investigation resulted in "serious losses to the stock market, to JBS minority shareholders (including BNDES and pension funds, PROT FIP fund members) and in particular to the Brazilian treasury". As described below:

Rua Canning 31, Cob01- 22081-040 Rio de Janeiro – cell: (55)(21) 9 87987472
e-mail: fbecskehazy@gmail.com
62



# FRANZISKA AMALIA LUSTOSA BECSKEHAZY
## SWORN PUBLIC TRANSLATOR & COMMERCIAL INTERPRETER
### ENGLISH LANGUAGE
Member of the Professional Association of Sworn Public Translators and Commercial Interpreter of the State of Rio de Janeiro (ATP-RIO)
TRANSLATION Nº356/2019

"The combination of the four frauds caused serious harm to the stock market, to JBS minority shareholders (including BNDES, pension funds and investors in the PROT FIP fund) and particularly to the Treasury, as it meant an approximate premium of R$9.46 billion paid for the Bertin acquisition. This value has been entered as premium into JBS balance sheet since 2009 and therefore, it seems, has been used to reduce the calculation base for income tax and CSLL. This means JBS has been unlawfully paying less taxes than owed for at least 10 years." (**Doc.7**)

116. Faced with the number of illegal acts, it is high time to make the wrongdoers bear the civil consequences of their actions, compensating the huge losses caused to BNDES, BNDESPar and the Treasury - which is precisely the object of this Citizen Lawsuit.

### EVIDENT NULLITY OF THE DECEIVING OPERATION

117. The Deceiving Operation, as it is clear at this point, was carried out by entering into simulated legal transactions, clearly devoid of economic substance and business purpose.

118. Everything that was actually disclosed was intended to deceive the authorities, the securities market, investors and minority shareholders - and all backed by public money obtained through (confessed) kickbacks. The is a classic case of an entirely void deal which, in the case at hand,

**53**

Case 5089754-29 .2019.4.02.5101 / RJ, Event 1, INIC1, Page 54

*Galdino e Coelho*
**Advogados**

must be resolved through establishing and compensating the losses and damages, given the material impossibility of returning to the previously existing state of affairs.

Rua Canning 31, Cob01- 22081-040 Rio de Janeiro – cell: (55)(21) 9 87987472
e-mail: fbecskehazy@gmail.com

Assinado digitalmente por Franziska A. L. Becskehazy Signed digitally by Franziska A. L. Becskehazy



# FRANZISKA AMALIA LUSTOSA BECSKEHAZY
## SWORN PUBLIC TRANSLATOR & COMMERCIAL INTERPRETER
### ENGLISH LANGUAGE
Member of the Professional Association of Sworn Public Translators and Commercial Interpreter of the State of Rio de Janeiro (ATP-RIO)
TRANSLATION Nº356/2019

119. As it is widely known, simulation can be defined as "a misleading statement of will aimed at producing effects different from those ostensibly indicated. Someone, through a false appearance, conceals the true features of the deal[31]" This is why art. 167 of the Civil Code ("CC") provides for the nullity of the a simulated deal:

> Art. 167, CC. A simulated business deal is null, but what has been concealed shall survive, if valid in substance and form.
> Paragraph 1. There is simulation in a business deal when:
> I - appear to confer or impart rights to persons other than those to whom they actually confer, or impart;
> II - contain untrue statement, confession, condition or clause;
> III - private instruments are predated, or postdated.
> Paragraph 2 The rights of bona fide third parties are emphasized in the face of the parties to the simulated business deal.

120. Simulation is present when there is (i) contradictory expression of will in relation to the statement issued by the parties, or between the apparent business deal and the intended effects, (ii) a simulation agreement between the parties and (iii) the intention to deceive third parties[32].

**54**

---

[31] In the lecture of Silvio de Salvo Venosa: An essential feature of a simulated deal is the intentional gap between will and statement. There is, in fact, opposition between what is intended and what is declared. The parties desire the mere appearance of the deal and create an illusion of existence. The parties to the contract intend to create the appearance of an act, so that it may appear attractive in the eyes of others. "(VENOSA, Silvio de Salvo. Código Civil Interpretado 2nd ed. São Paulo: Atlas, 2011, p. 186) ".

[32] It is important to mention that if it is intended to harm third parties, there will be a malicious simulation, while in its absence there will be an innocent simulation: "The purpose of deceiving a third party does not imply intent to harm or violate the law. If this also occurs, the malicious simulation is present. It is the case of a sale that simulates a price higher than the price actually paid to harm a preference, or a lower price to harm the tax authorities. "(TEPEDINO, Gustavo; MORAES, Maria Celina Bodin de; BARBOZA, Heloisa Helena. Código Civil interpretado conforme a Constituição da República. 2nd ed. Rio de Janeiro: Renovar, 2007, p. 318-319).

Rua Canning 31, Cob01- 22081-040 Rio de Janeiro – cell: (55)(21) 9 87987472
e-mail: fbecskehazy@gmail.com



# FRANZISKA AMALIA LUSTOSA BECSKEHAZY
## SWORN PUBLIC TRANSLATOR & COMMERCIAL INTERPRETER
### ENGLISH LANGUAGE
Member of the Professional Association of Sworn Public Translators and Commercial Interpreter of the State of Rio de Janeiro (ATP-RIO)
TRANSLATION Nº356/2019

Case 5089754-29 .2019.4.02.5101 / RJ, Event 1, INIC1, Page 55

*Galdino e Coelho*
**Advogados**

121. The facts narrated above are subsumed, as academic examples, in the hypotheses of simulation provided for in items I and II of § 1 of article 168 of the CC. The entire Bertin acquisition transaction was carried out by means of corporate instruments containing clauses that did not correspond to the truth of the facts - starting with the valuation values of Bertin assets incorporated by JBS - and having a purpose other than that officially stated: allowing the Batista Brothers to get benefits by illegally obtaining a stake in JBS.

122. Indeed, as TCU rightly acknowledged, "the *simulated sale* of Bertin FIP Fund shares to JBS controlling shareholders effectively represented a reduction in the price by returning part of the amount paid," but "the refund of the amount" did not benefit all shareholders, as should necessarily be the case. I only benefited  JBS majority shareholders "(Doc. 42).

123. The simulation in this case is unequivocal in so far as the statement of willingness reported by JBS regarding the valuation of JBS assets was contaminated by the controlling shareholders – the Batista Brothers - with the disguised purpose of obtaining gains to the detriment of BNDESPar, PROT FIP as well as the other shareholders.

124. As it is well known, in the blatant simulation, the business deal must be declared entirely null and void. No part of it can be used[33]. Moreover, since the unequivocal total nullity falls upon the simulated business deal, it means that it not subject

---

[33] "The doctrine of simulation, understood in a broad sense, includes two types: of an absolute and relative nature. In the first, the very essence of the business deal is simulated, so that the action must be annulled [according to CC / 16]. ) or declared void (in accordance with CC / 02) in its entirety with the return of the parties to the previously existing state of affairs."(STJ, REsp Nº. 918,643 / RS, Opinion Rapporteur Justice Nancy Andrighi, 3rd Panel, j. On April 26th 2011)

Rua Canning 31, Cob01- 22081-040 Rio de Janeiro – cell: (55)(21) 9 87987472
e-mail: fbecskehazy@gmail.com

65



# FRANZISKA AMALIA LUSTOSA BECSKEHAZY
### SWORN PUBLIC TRANSLATOR & COMMERCIAL INTERPRETER
### ENGLISH LANGUAGE
Member of the Professional Association of Sworn Public Translators and Commercial Interpreter of the State of Rio de Janeiro (ATP-RIO)
TRANSLATION Nº356/2019

to validation. Any objections as to its validity are not subject to statute of limitations or peremption of right[34].

**55**

Case 5089754-29 .2019.4.02.5101 / RJ, Event 1, INIC1, Page 56

*Galdino e Coelho*
**Advogados**

125. However, so many years after the accomplishment of the acquisition of Bertin by JBS, it is simply no longer possible to return to the previously existing state of affairs - the claimant in the present citizen lawsuit acknowledges that going back to the situation before the deal is objectively impossible at this point. As it is not possible to return to the situation as before the Bertin acquisition operation, logically, the obligation to undo the simulated business deal should be converted into damages.

126. Art. 11 of the Citizen Lawsuit Act establishes that "judgment that has granted grounds to the citizen lawsuit by deciding for the nullity of the perpetrated act shall sentence the perpetrators as well as the beneficiaries of such illegal act whenever they are liable, exception made to third-party claims against the employees causing the damages."

127. Thus, having been unquestionably proven that the simulation occurred and the losses caused, the Batista Brothers and the companies controlled by them, the Defendants in the present citizen lawsuit, must be found guilty, as liable and final beneficiaries of the Deceiving Operation, being sentenced to compensate for the losses caused to BNDES, BNDESPar and the Treasury, in an amount which shall be determined in the course of the present citizen lawsuit, as provided for in art. 14 of the Citizen lawsuit Act.

---

[34] 4. Simulation generates total nullity of the simulated business deal, therefore, not susceptible to statute of limitation or peremption of right, pursuant to articles 167 and 169 of the CC / 2002 [case law]." (STJ, EDcl in the AgRg in Ag Nº. 1,268,297 / RS, Opinion Rapporteur Justice Antonio Carlos Ferreira, 4th Panel, j. On May 28th 2019)

**Rua Canning 31, Cob01- 22081-040 Rio de Janeiro – cell: (55)(21) 9 87987472**
**e-mail: fbecskehazy@gmail.com**
66



# FRANZISKA AMALIA LUSTOSA BECSKEHAZY
## SWORN PUBLIC TRANSLATOR & COMMERCIAL INTERPRETER
### ENGLISH LANGUAGE
Member of the Professional Association of Sworn Public Translators and Commercial Interpreter of the State of Rio de Janeiro (ATP-RIO)
TRANSLATION Nº356/2019

<u>PETITION OF URGENT RELIEF</u>

128. It has become a matter of urgency, as it is high time to prevent the Batista Brothers from continuing to benefit from the effects of the Deceiving Operation.

129. In the case at hand, and without prejudice to the subsequent compensation for the losses caused to BNDES, BNDESPar and the Treasury, the request for urgent relief filed herein aims to **(i)** <u>freeze the shareholding stake held directly or</u>

**56**
Case 5089754-29 .2019.4.02.5101 / RJ, Event 1, INIC1, Page 57

*Galdino e Coelho*
**Advogados**

<u>indirectly by the Batista Brothers as a result of the overestimation of Bertin assets: and as consequences of the previous request, **(ii)** suspend the corporate rights emanating from such equity interest obtained illegally; and **(iii)** to rule that dividends and other earnings arising from the illegally obtained equity interest be deposited in court.</u> All the above intended to ensure compensation for those harmed and to prevent further losses.

### A) *Presumption of Sufficient Legal Basis*

130. The likelihood of the right whose protection is sought by the present citizen lawsuit is clear, especially considering that all facts constituting such right have been extensively proven by documentation.

131. As it is now clear, this citizen lawsuit objects to a fraudulent corporate transaction, which could only be carried out on account of the payment - confessed by Joesley Batista! - of kickbacks to a particular public official, causing serious and blatant losses to BNDESPar, JBS main minority shareholder.

132. In addition to being extensively proven by documentary evidence, the facts supporting the request for urgent relief

Rua Canning 31, Cob01- 22081-040 Rio de Janeiro – cell: (55)(21) 9 87987472
e-mail: fbecskehazy@gmail.com
67



# FRANZISKA AMALIA LUSTOSA BECSKEHAZY
**SWORN PUBLIC TRANSLATOR & COMMERCIAL INTERPRETER**
**ENGLISH LANGUAGE**
Member of the Professional Association of Sworn Public Translators and Commercial Interpreter of the State of Rio de Janeiro (ATP-RIO)
TRANSLATION Nº356/2019

were confessed by those involved in the true financial ambush surrounding JBS:

- The off-the-record contract made public under BNDES CPI and the testimony of Mário Celso (who signed the instrument as a witness) revealed the real intentions, terms and conditions of the Bertin asset acquisition operation;

57

Case 5089754-29 .2019.4.02.5101 / RJ, Event 1, INIC1, Page 58

*Galdino e Coelho*
**Advogados**

- Joesley Batista confessed in a statement to the Federal Police that Blessed was conceived by Fabio Pegas of the JP Morgan Bank of New York (who advised JBS on the operation and whose main executive, Patricia Moraes, was the daughter of one of JBS board members, Marcus Vinicius Pratini de Moraes), in order to "_to make sure that the BATISTA family would remain the controlling shareholder of JBS after the merger with BERTIN_" in order to "_further reduce the possibility that the BERTIN FAMILY would have any form of controlling interest in JBS.;_ (**Doc. 34**) and

- Joesley Batista confessed to paying US$ 50 million in kickbacks to secure "the December 2009 acquisition by BNDES of US$ 2 billion worth of JBS bonds converted into shares to support the 2009 expansion plan "(**Doc. 40**), this capital contribution being a precondition for the acquisition of Bertin (**Doc. 4**).

133. The simulation and immoral nature permeating the entire Deceiving Operation were fully acknowledged by the Federal Revenue Service, the PGFN, the 1st Federal Court of the Judiciary Section of the State of São Paulo in the Tax Lawsuit[35], CARF[36], TCU[37] and the BNDES[38] CPI.

---

[35] Refer to Freeze ruling and granting of grounds (Docs. 28/29)
[36] Refer to Decision No. 1201001.640 (Doc. 35)
[37] Refer to Decisions 3011/2015 and 2154/2018 (Docs. 41/42)
[38] Refer to BNDES CPI Report (Doc. 7).

**Rua Canning 31, Cob01- 22081-040 Rio de Janeiro – cell: (55)(21) 9 87987472**
**e-mail: fbecskehazy@gmail.com**
68



# FRANZISKA AMALIA LUSTOSA BECSKEHAZY
## SWORN PUBLIC TRANSLATOR & COMMERCIAL INTERPRETER
### ENGLISH LANGUAGE
Member of the Professional Association of Sworn Public Translators and Commercial Interpreter of the State of Rio de Janeiro (ATP-RIO)
TRANSLATION Nº356/2019

134. In this context, any equity interest acquired illegally by the Baptist Brothers through Blessed pursuant to the Assignment Instruments (**Docs. 31/32**) must be immediately frozen, with the suspension of corporate and economic rights related to this equity interest. This measure essentially aims at attaining three objectives:

**58**

Case 5089754-29 .2019.4.02.5101 / RJ, Event 1, INIC1, Page 59

*Galdino e Coelho*
**Advogados**

(i)      Preventing the Batista Brothers from transfering such shares to third parties - which is all the more necessary when it is pointed out that Blessed Holdings LLC is headquartered in the State of Delaware, USA, under another company - Blessed Holdings Cayman - headquartered in the Cayman Islands (see org chart under item 142 below);

(ii)     Preventing the Batista Brothers from causing further losses to the Treasury and the BNDES System, which turns out to be urgent given that the Shareholders Agreement that today minimally protects the BNDESPar System as a minority shareholder of JBS will only be effective until December 31st 2019 (Doc. 22): and

(iii) ensuring compensation for losses caused to the Treasury and the BNDES System.

135. In fact, freezing the shares is not only intended to prevent the circulation / transfer of the shares to third parties: it must also extend to the corporate and economic rights arising therefrom so as to prevent the Batista Brothers from continuing to vote based on this indirect stake and receiving dividends and other earnings - in this connection, the plaintiff belives that any dividends and other earnings must be deposited in court to ensure comprehensive compensation for the losses to be calculated in the course of the present citizen lawsuit.

## B) *Risk of imminent and irreparable damage*

Rua Canning 31, Cob01- 22081-040 Rio de Janeiro – cell: (55)(21) 9 87987472
e-mail: fbecskehazy@gmail.com
69



# FRANZISKA AMALIA LUSTOSA BECSKEHAZY
## SWORN PUBLIC TRANSLATOR & COMMERCIAL INTERPRETER
### ENGLISH LANGUAGE
Member of the Professional Association of Sworn Public Translators and Commercial Interpreter of the State of Rio de Janeiro (ATP-RIO)
TRANSLATION Nº356/2019

136. The risk of serious damage and difficult reparation stems not only from the possibility for the Batista Brothers to transfer their stake to third parties, but also from the fact that, as previously warned, BNDESPar is about to lose the

59

Case 5089754-29.2019.4.02.5101 / RJ, Event 1, INIC1, Page 60

*Galdino e Coelho*
**Advogados**

Shareholders' agreement with JBS (Doc 22): more precisely it is effective only until December 31st 2019[39].

137. As stated, the Shareholders Agreement was entered into between the controlling shareholders of JBS and BNDESPar on December 22nd 2009, in the context of the Association Agreement that formalized the rules by which BNDESPar would subscribe the bonds convertible into shares by obligation, to be issued by JBS to raise UD$ 2 billion from BNDES to fund the acquisition of Pilgrim's Pride. According to information obtained on the BNDES[40] website, to date, BNDESPar holds JBS bonds totaling the amount of **R$ 3,477,567,914.00.**

138. Like any agreement of this nature between the controlling shareholder and a minority shareholder (s), the Shareholders Agreement was entered into with the purpose of conferring certain political rights and protections to BNDESPar, as a minority shareholder of JBS. Such rights include: (a) the appointment of 2 (two) JBS board members while BNDESPar holds

---

[39] 6.1. Term. The term of this Shareholders Agreement shall be subject to the accomplishment by BNDESPAR of the subscription and payment of all bonds arising from the assignment of preemptive rights by ZMF and J&F and all the remaining shares to which it is entitled, pursuant to the Bond Indenture, and shall be effective until December 31, 2014. In addition, the Parties agree that this Shareholders Agreement will be automatically renewed for a single period of five (5) years (the "Subsequent Period") as of December 31, 2014. 2014, if, on such date, BNDESPAR owns, directly and indirectly, fifteen percent (15%) or more of the total and voting capital of the Company. In any event, this Shareholders Agreement will cease to be effective automatically as of the date BNDESPAR ceases to be an Eligible Shareholder."(Doc. 22)

[40] https://www.bndes.gov.br/SiteBNDES/bndes/bndespt/Galerias/Convivencia/Consulta operacoes/consultaunificada.html?cpfcnpj=0291 6265000160&nome=&operacao=operaca o renda variavel (acess on this date).

Rua Canning 31, Cob01- 22081-040 Rio de Janeiro – cell: (55)(21) 9 87987472
e-mail: fbecskehazy@gmail.com

70



# FRANZISKA AMALIA LUSTOSA BECSKEHAZY
## SWORN PUBLIC TRANSLATOR & COMMERCIAL INTERPRETER
### ENGLISH LANGUAGE
Member of the Professional Association of Sworn Public Translators and Commercial Interpreter of the State of Rio de Janeiro (ATP-RIO)
TRANSLATION Nº356/2019

more than 20% equity interest[41]; and (b) the right <u>to veto</u> 15 matters, listed in clause 4.2 of the Shareholders Agreement.
**60**

Case 5089754-29.2019.4.02.5101 / RJ, Event 1, INIC1, Page 61

*Galdino e Coelho*
**Advogados**

139. <u>Note, your Honor that it was precisely based on this right of veto that BNDES **prevented the transfer of JBS headquarters to Ireland**, which the Batista Brothers tried to achieve in 2017[42] as a way to help hide their billionaire scams and evade the Brazilian tax authorities.</u>

140. Pursuant to clause 6.1, the Shareholders Agreement would initially be in effect until December 31st, 2014, and the parties agreed to its automatic renewal for a further five (5) years as of December 31st, 2014. Accordingly, the Shareholders Agreement will only be effective until December 31st, 2019. <u>**As of January 1st, 2020, BNDESPar will lose 2 (two) seats on the Board of Directors in addition to the current veto rights.**</u>

141. However, in order for losses resulting from the loss of the Shareholder Agreement to be fully assimilated, it is necessary to understand JBS's current governance.

---

[41] 3.2 Member (s) Appointed by BNDESPAR. During the term of this Shareholders Agreement, and while remaining an Eligible Shareholder, the BNDESPAR shareholder shall be entitled to elect and retain one (1) member of the JBS Board of Directors. Note, however, that while BNDESPAR holds, directly or indirectly, a stake above 20% (twenty percent) of the total and voting capital of JBS, the shareholder BNDESPAR shall be entitled to the election and maintenance of 2 (two) members of the Board. For the purpose of exercising such right, BNDESPAR shall inform the other Shareholders of the name in question by the beginning of the respective shareholders meeting, and the Shareholders shall vote as a whole at the respective shareholders meeting in the name provided."(Doc. 22).

[42] http://gl.globo.com/economia/noticia/2016/1O/reorganizacao-iria-desnacionalizar-jbs-e-nao-e-melhor-opcao-diz-bndes.html
https:// economia.estadao.com. br /noticias /geral.jbs-cancela-plano-internacional-apos- veto-do-bndes.1 0000084487: https://www.valor.com.br /especial/jbs

**Rua Canning 31, Cob01- 22081-040 Rio de Janeiro – cell: (55)(21) 9 87987472**
**e-mail: fbecskehazy@gmail.com**
71



# FRANZISKA AMALIA LUSTOSA BECSKEHAZY
## SWORN PUBLIC TRANSLATOR & COMMERCIAL INTERPRETER
## ENGLISH LANGUAGE
Member of the Professional Association of Sworn Public Translators and Commercial Interpreter of the State of Rio de Janeiro (ATP-RIO)
TRANSLATION Nº356/2019

142. At present, this is JBS shareholding structure, according to the company's latest Reference Form, obtained from its website[43]:

**61**
Case 5089754-29.2019.4.02.5101 / RJ, Event 1, INIC1, Page 62

*Galdino e Coelho*
**Advogados**



Source: Latest JBS Reference Form (available at http: // jbss.infoinvest.com.br/services/siteri-1/redirect.asp?Group=5117&idioma=ptb&arquivo = 87219.pdf&tipo=arquivo&protocol atual =)

143. As shown, the Batista Brothers control JBS through an intricate corporate chain, owning about **40 percent of the voting stock.** The remaining shares are held by minority shareholders,

---

[43] Reference Form available at http: /jbss.infoinvest.eom.br/services/siteri-1/redirect.asp? Group = S1 1 7 & language = enb & file = 8721 9.pdf & type = file & protocol at current = (Accessed on this date).

**Rua Canning 31, Cob01- 22081-040 Rio de Janeiro – cell: (55)(21) 9 87987472**
**e-mail: fbecskehazy@gmail.com**
72



# FRANZISKA AMALIA LUSTOSA BECSKEHAZY
## SWORN PUBLIC TRANSLATOR & COMMERCIAL INTERPRETER
## ENGLISH LANGUAGE
Member of the Professional Association of Sworn Public Translators and Commercial Interpreter of the State of Rio de Janeiro (ATP-RIO)
TRANSLATION Nº356/2019

```
        the main one being BNDESPar, with a 21.3% stake. This structure
        is more simply shown on the JBS website⁴⁴:
```
**62**

```
Case 5089754-29.2019.4.02.5101 / RJ, Event 1, INIC1, Page 63
```

*Galdino e Coelho*
**Advogados**

CORPORATE ORGANIZATION AND STOCK OWNERSHIP

Corporate Information | Corporate Organization and Stockownership

| Shareholders | Number Shares | % |
|---|---|---|
| Controlling Group (J&F Investimentos S.A. and Formosa | 1,091,211,207 | 39.99% |
| Treasury stock | 63,706,683 | 2.33% |
| Outstanding Shares | | |
| BNDES Participações S.A - BNDESPAR | 581,661,101 | 21.32% |
| Minority Shareholders | 992,168,421 | 36.36% |
| Total outstanding shares | 1,573,829,522 | 57.68% |
| TOTAL | 2,728,747,412 | 100.00% |

Last updated on October 22nd, 2019 2:48 PM

```
Source:    JBS    website    (https:I/jbss.infoinvest.com.br/static/ptb/composicao-acionaria-e-
societaria.asp?idioma=ptb)
```

```
        144. However, a substantial portion of the shares held today by the
            Batista  Brothers  were  acquired  from  the  Bertin  Family  for
            derisory values, pursuant to clause 2, item "d" of the off-the-
            record  contract,  whereby  the  Bertin  Family  was  forced  to
            transfer the surplus above 10% of the new JBS for R$ 1.00 (one
            real).

        145. As stated above, the Bertin Family made a capital contribution
            into Bertin FIP (currently Pinheiros FIP) of all the shares it
```

---

⁴⁴ https://jbss.infoinvest.com.br /static/ptb/composicao-acionaria-e-  societaria.asp?idioma=ptb (Access on this date).

**Rua Canning 31, Cob01- 22081-040 Rio de Janeiro – cell: (55)(21) 9 87987472**
**e-mail: fbecskehazy@gmail.com**
**73**



# FRANZISKA AMALIA LUSTOSA BECSKEHAZY
## SWORN PUBLIC TRANSLATOR & COMMERCIAL INTERPRETER
### ENGLISH LANGUAGE
Member of the Professional Association of Sworn Public Translators and Commercial Interpreter of the State
of Rio de Janeiro (ATP-RIO)
TRANSLATION Nº356/2019

owned in Bertin, subscribing and thus paying out a total of **1,775,231** (one million, seven hundred seventy-five thousand, two hundred and thirty one) shares of the fund then created, for the amount of R$ **1,775,231,000.00.** These figures are undisputable as they are found in Bertin FIP Financial Statements for March 31, 2010, obtained from the Brazilian Securities Commission - CVM website (**Doc 12**).

146. Subsequently, on December 24, 2009, Bracol / Tinto assigned to Blessed 1,174,351,62425 shares (out of a total of 1,785,000 shares), for the amount of US$ 10,000, as shown in the 1st Assignment Instrument. (Doc. 31). Shortly

**63**
**Case 5089754-29.2019.4.02.5101 / RJ, Event 1, INIC1, Page 64**

*Galdino e Coelho*
**Advogados**

after, on **November 11th, 2010,** Bracol / Tinto assigned another 348,317 shares, this time for the amount of **R$ 17,000.00,** pursuant to the 2nd Assignment Instrument (**Doc. 32**).

147. This means that, due to the 2 Assignment Instruments, Bracol / Tinto assigned to Blessed a total of 1,522,668,62425 shares, representing 85.3% of Bertin FIP (1,522,668,62425 / 1,785,000 = 0.85304 = 85.3%). These transfers were not only acknoeledged in the ruling of the Tax Lawsuit, but are also found in the records of CETIP - Central Securities Custody and Financial Settlement, currently B3 S.A. In this regard, the statement submitted by CETIP (Doc. 43) to the records of action No. 1046806 - 19.2013.8.26.0100, filed by Bracol / Tinto against Blessed, referred to in item 68 above (that same claim in which Bracol / Tinto waived its right to continue challenging the Assignment Instruments):

Assinado digitalmente por Franziska A. L. Becskehazy Signed digitally by Franziska A. L. Becskehazy



# FRANZISKA AMALIA LUSTOSA BECSKEHAZY

**SWORN PUBLIC TRANSLATOR & COMMERCIAL INTERPRETER**

**ENGLISH LANGUAGE**

Member of the Professional Association of Sworn Public Translators and Commercial Interpreter of the State of Rio de Janeiro (ATP-RIO)

TRANSLATION Nº356/2019

Cetip S.A.- Mercados Organizados responding to the request for foreign investment custody position statement, please find below the following asset positions:

| Financial Instrument | 0966909BER |
|---|---|
| ISNI Code | BRBEATCTF002 |
| Type | Shares in closed-ended fund |
| Issued by | BERTIN FUNDO DE INVESTIMENTO EM PARTICIPAÇÕES |
| Issuing Date | December 11th 2009 |
| Maturity date | December 11th 2019 |

| Custody position date | Cetip Account | Holder corporate tax number | Holder trade number | Number of shares |
|---|---|---|---|---|
| March 26th,2010 | -------- | -------- | -------- | ------- |
| March 29th,2010 | 7399020-2 | 11.441.489/0001-53 | BLESSED HOLDING LLC | 1,174,351,624250 |
| December 31st,2010 | 7399020-2 | 11.441.489/0001-53 | BLESSED HOLDING LLC | 1,174,351,624250 |
| January 3rd,2011 | 7399020-2 | 11.441.489/0001-53 | BLESSED HOLDING LLC | 1,522,668,624250 |
| December 30th,2011 | 1288410-4 | 11.441.489/0001-53 | BLESSED HOLDING LLC | 1,522,668,624250 |
| October 8th,2012 | 1288410-4 | 11.441.489/0001-53 | BLESSED HOLDING LLC | 1,522,668,624250 |
| October 9th,2012 | 1288410-4 | 11.441.489/0001-53 | BLESSED HOLDING LLC | 1,522,668,624250 |
| | | 97.539050/0001-83 | BLESSED HOLDING LLC | 1,000,000000 |
| December 31st,2012 | 1288410-4 | 11.441.489/0001-53 | BLESSED HOLDING LLC | 1,522,668,624250 |
| | | 97.539050/0001-83 | BLESSED HOLDING LLC | 1,000,000000 |
| August 29th,2013 | 1288410-4 | 11.441.489/0001-53 | BLESSED HOLDING LLC | 1,522,668,624250 |
| | | 97.539050/0001-83 | BLESSED HOLDING LLC | 1,000,000000 |

Source: Statement submitte by CETIP to the records of lawsuit number 1046806-19.2013.8.26.0100 (**Doc. 43**)

**64**

**Case 5089754-29.2019.4.02.5101 / RJ, Event 1, INIC1, Page 65**

*Galdino e Coelho*
**Advogados**

148. At that time, according to the corporate chart under **items 59 and 63,** Bertin FIP owned 48.52% of the capital stock of FB Participações, which in turn owned 54.52% of JBS. <u>Consequently, Bertin FIP indirectly owned **26.45%** of JBS share capital</u> (48.52% x 54.52% = 26.45%).

149. As a result, considering that (i) Bertin FIP owned at that time, indirectly, **26.45%** of the capital stock of JBS and (ii) Bracol / Tinto transferred **85.3%** of its shares in Bertin FIP to Blessed on under the Assignment Instruments (**Docs. 31/32**), Blessed fraudulently and unlawfully acquired an indirect interest in JBS corresponding to **22.56%** of its share capital:

Assinado digitalmente por Franziska A. L. Becskehazy Signed digitally by Franziska A. L. Becskehazy          Página 75 de 82



# FRANZISKA AMALIA LUSTOSA BECSKEHAZY
## SWORN PUBLIC TRANSLATOR & COMMERCIAL INTERPRETER
### ENGLISH LANGUAGE
Member of the Professional Association of Sworn Public Translators and Commercial Interpreter of the State of Rio de Janeiro (ATP-RIO)
TRANSLATION Nº356/2019

---

$$26,45\%\,^{1}X\,85,3\%\,^{2} = \mathbf{22,56\%}\,^{3}$$

Where:
1 corresponds to Bertin FIP's indirect interest in JBS
2 corresponds to the percentage of Bertin FIP shares transferred to Blessed
3 corresponds to the participation in JBS acquired illegally by the Batista Brothers

---

150. <u>The conclusion, your Honor, is **astonishing**: today the Batista Brothers are the controlling shareholders of JBS, the largest producer of animal protein in the world, as a result of an illegally acquired stake obtained to the detriment of BNDESPar and other minority shareholders, among which are Brazilian Pension Funds</u>.

151. Now, not even the Shareholders Agreement currently in force prevented the Batista Brothers from perpetrating all sorts of illegal acts as JBS controlling shareholders, causing major harm to the Brazilian Treasury and the BNDES System – including attempting to transfer the company headquarters to Ireland, which was only prevented by BNDES thanks to the Shareholders Agreement – you may imagine, your Honor, what they will be free to do when

**65**
Case 5089754-29.2019.4.02.5101 / RJ, Event 1, INIC1, Page 66

*Galdino e Coelho*
**Advogados**

BNDES loses 2 (two) Board of Directors members and the current rights to veto ...

152. Excepting issues involving the protection of the health and interests of disabled persons, it is difficult to think of such a clear case of ***periculum in mora (risk of imminent and***

Rua Canning 31, Cob01- 22081-040 Rio de Janeiro – cell: (55)(21) 9 87987472
e-mail: fbecskehazy@gmail.com
76



# FRANZISKA AMALIA LUSTOSA BECSKEHAZY
## SWORN PUBLIC TRANSLATOR & COMMERCIAL INTERPRETER
### ENGLISH LANGUAGE
Member of the Professional Association of Sworn Public Translators and Commercial Interpreter of the State of Rio de Janeiro (ATP-RIO)
TRANSLATION Nº356/2019

*irreparable damage)*. And it is for all these reasons that the Plaintiff trusts that your honor, aware of the <u>extreme gravity of the situation,</u> and grant grounds to the request for urgent relief formulated herein.

<u>FINAL REMARKS AND CLAIMS</u>

153. Given what has been revealed, the Plaintiff requests granting grounds to the request for incidental urgent relief with ex parte injunction seeking:

(i)   immediate freezing of such shares as issued by JBS S.A. and owned by J&F Investimentos S.A. to make up the equivalent to **22.56%** (twenty-two point fifty-six percent) of JBS stock capital;

(ii)  as a consequence of the above request (i) suspension of the J&F Investimentos S.A. rights in respect of the shares corresponding to **22.56%** (twenty-two point fifty-six per cent) of JBS capital stock; and

(iii) as a consequence of request (i) above, court ruling so that henceforth, all dividends and other earnings related to the shares corresponding to **22.56%** (twenty two point fifty six percent) of JBS capital stock be deposited in court into an account linked to this legal action, so as to ensure compensation of the losses caused in favor of the Treasury and the BNDES System, all until the final judgment

66

Case 5089754-29.2019.4.02.5101 / RJ, Event 1, INIC1, Page 67

*Galdino e Coelho*
**Advogados**

to be issued by this Honorable Court, non-compliance thereof being subject to a fine and charges of crime of contempt.

154. As final remarks, Plaintiff requests:

Assinado digitalmente por Franziska A. L. Becskehazy Signed digitally by Franziska A. L. Becskehazy



# FRANZISKA AMALIA LUSTOSA BECSKEHAZY
## SWORN PUBLIC TRANSLATOR & COMMERCIAL INTERPRETER
### ENGLISH LANGUAGE
Member of the Professional Association of Sworn Public Translators and Commercial Interpreter of the State of Rio de Janeiro (ATP-RIO)
TRANSLATION Nº356/2019

(i)    confirmation of the decision which, as expected, will fully grant the urgency relief pleaded above, so as to render final the remedies requested on a temporary basis;

(ii)    acknowledgment of nullity of the Deceiving Operation against all Defendants;

(iii)   sentencing the Batista Brothers and the companies controlled by them appearing as defendants in the present citizen lawsuit to jointly reimburse the losses caused to the Treasury, BNDES and BNDESPar, pursuant to art. 11 of the Citizen Lawsuit Act, the amount of which shall be determined during the course of the present suit, pursuant to art. 14 of the Citizen Lawsuit Act; and

(iv)    sentencing the Batista Brothers and the companies controlled by them appearing as defendants in the present citizen lawsuit to jointly pay for legal costs (under the provisions of article 10 of the Citizen Lawsuit Act) and attorney's fees as a result of loss of suit, to be established based on art. 85 of the CPC. Code of Civil Procedure.

155. Additionally, the Plaintiff requests:

(i)    service of process upon the Batista Brothers and the companies controlled by them appearing as defendants in the present citizen lawsuit

67

Case 5089754-29.2019.4.02.5101 / RJ, Event 1, INIC1, Page 68

*Galdino e Coelho*
**Advogados**

Notifying them of the ruling which, is expected, shall grant urgent relief under the terms above and, if willing, to present their defense;

(ii)    notifying the Federal Prosecution Office to participate in the present citizen lawsuit as provided for in art. 6, § 4, of the Citizen Lawsuit Act, given the presence of public interest which calls for state prosecution in the case; and

(iii)   notifying BNDES and BNDESPar on the ruling for urgent remedy pleaded above and service of process, should they agree, express

Rua Canning 31, Cob01- 22081-040 Rio de Janeiro – cell: (55)(21) 9 87987472
e-mail: fbecskehazy@gmail.com
78



# FRANZISKA AMALIA LUSTOSA BECSKEHAZY
### SWORN PUBLIC TRANSLATOR & COMMERCIAL INTERPRETER
### ENGLISH LANGUAGE
Member of the Professional Association of Sworn Public Translators and Commercial Interpreter of the State of Rio de Janeiro (ATP-RIO)
TRANSLATION Nº356/2019

their interest in becoming Plantiffs in the present citizen lawsuit, as provided under art. 6, §3, of the Citizen Lawsuit Act.

156. The plaintiff does not have any interest in holding a preliminary or mediation hearing as settlement in not an option in the case at hand.

157. Pledging to submit all means of proof admitted by law, especially (but not exclusively) by requesting documents held by third parties (cf. art. 7, inc. 1, item "b", of the Citizen Lawsuit Act), by entering new documents in the docket, producing expert evidence, witness testimonies and personal depositions. The Plaintiff also points out to the possibility of requesting proofs and evidence in other jurisdictions that may in any way contribute to this citizen lawsuit and which may beof in the possession and / or knowledge to persons, companies or bodies located abroad. (whether or not such persons, companies or bodies have been mentioned in the present complaint), in accordance with the law applicable in such jurisdictions.

**68**

Case 5089754-29.2019.4.02.5101 / RJ, Event 1, INIC1, Page 69

*Galdino e Coelho*
**Advogados**

158. Finally, it is requested that all notices published in the official gazettes or by electronic means be made simultaneously, under penalty of nullity, on behalf of lawyers Flavio Galdino, Brazilian Bar Association Member Nº. 94,605, and Gustavo Salgueiro, Brazilian Bar Association Member Nº. 135.064, both with offices in this city, at Av. Rio Branco, Nº. 138, 11º andar, Centro, CEP 20040-002.

159. The present action has been given the value of is **R$ 4,320,357,537.60** (four billion, three hundred and twenty million, three hundred and fifty seven thousand, five hundred and thirty seven reais and sixty cents), which corresponds to

Assinado digitalmente por Franziska A. L. Becskehazy Signed digitally by Franziska A. L. Becskehazy                    Página 79 de 82



# FRANZISKA AMALIA LUSTOSA BECSKEHAZY

**SWORN PUBLIC TRANSLATOR & COMMERCIAL INTERPRETER**

**ENGLISH LANGUAGE**

Member of the Professional Association of Sworn Public Translators and Commercial Interpreter of the State of Rio de Janeiro (ATP-RIO)

TRANSLATION Nº356/2019

22.56 % of JBS net worth on December 31, 2009[45] when the Deceiving Operation was approved and completed.

Terms wherein, granting is requested
Rio de Janeiro, November 14th 2019.


*Signature*                    *Signature*
**FLAVIO GALDINO**             **GUSTAVO SALGUEIRO**
**OAB/RJ #94605**             **OAB/RJ #135.064**


*Signature*                    *Signature*
**MAURO TEIXEIRA DE FARIA**   **WALLACE DE ALMEIDA CORBO**
**OAB/RJ #161.530**           **OAB/RJ #186.442**


*Signature*
**LUAN GOMES PEIXOTO**
**OAB/RJ # 189.791**

---

[45] As per 2009 JBS Financial Statements, obtained from the JBS website (Doc. 26).

**Rua Canning 31, Cob01- 22081-040 Rio de Janeiro – cell: (55)(21) 9 87987472**

**e-mail: fbecskehazy@gmail.com**

80



# FRANZISKA AMALIA LUSTOSA BECSKEHAZY
## SWORN PUBLIC TRANSLATOR & COMMERCIAL INTERPRETER
### ENGLISH LANGUAGE
Member of the Professional Association of Sworn Public Translators and Commercial Interpreter of the State
of Rio de Janeiro (ATP-RIO)
TRANSLATION Nº356/2019

**Case 5089754-29.2019.4.02.5101 / RJ, Event 1, INIC1, Page 70**
**List of Documents:**

| | |
|---|---|
| **Doc.1** | Plaintiff Documents |
| **Doc.2** | Power of Attorney |
| **Doc.3** | Defendants Corporate Taxpayer Registration Number Cards |
| **Doc.4** | Material Fact disclosed by JBS on September 16, 2009 regarding the association with Bertin |
| **Doc.5** | Off-the-Record contract (Private Instrument of Commitment to Sell Stock and Other Covenants) of August 12th, 2009. |
| **Doc.6** | Off-the-Record contract Amendment of August 12th, 2009. |
| **Doc.7** | PARLIAMENTARY INQUIRY COMMITTEE (CPI) - BRAZILIAN SOCIAL AND ECONOMIC DEVELOPMENT BANK (BNDES)REPORT |
| **Doc.8** | Final Remarks by PGR in Complaint 7003 |
| **Doc.9** | Merger Application submitted to CADE on October 7, 2009 |
| **Doc.10** | Material Fact disclosed by JBS on September 16, 2009 regarding the acquisition of Pilgrim's Pride |
| **Doc.11** | FIP Bertin Articles of Incorporation |
| **Doc.12** | Bertin FIP Financial Statements as of March 31, 2010 |
| **Doc.13** | Call for of JBS SGM to be held on December 29, 2009 |
| **Doc.14** | Bertin Share Merger Registration |
| **Doc.15** | Appraisal Report of Bertin Shares to be incorporated by JBS (1st Appraisal Report) |
| **Doc.16** | Material Fact disclosed by JBS on December 14, 2009 containing details on the issuance of bonds and the association with Bertin |
| **Doc.17** | Call for JBS SGM to be held on December 31, 2009 |
| **Doc.18** | Bertin Merger Registration |
| **Doc.19** | Bertin Appraisal Report (2nd Appraisal Report) |
| **Doc.20** | Material Fact disclosed by JBS on December 23, 2009 stating that BNDESPar would invest US$ 2 billion as the bonds underwriter |
| **Doc.21** | 1st issue JBS Bond Indenture |
| **Doc.22** | Shareholders Agreement between JBS Controlling Shareholders and BNDESPar |
| **Doc.23** | Minutes of JBS SGM held on December 29, 2009 |
| **Doc.24** | Minutes of JBS SGM held on December 31, 2009 |
| **Doc.25** | Material Fact disclosed by JBS on December 31, 2009 regarding the approval of the acquisition of Bertin by JBS and the completion of the acquisition of the Controlling stake in Pilgrim's Pride |

Rua Canning 31, Cob01- 22081-040 Rio de Janeiro – cell: (55)(21) 9 87987472
e-mail: fbecskehazy@gmail.com
81



# FRANZISKA AMALIA LUSTOSA BECSKEHAZY
## SWORN PUBLIC TRANSLATOR & COMMERCIAL INTERPRETER
### ENGLISH LANGUAGE
Member of the Professional Association of Sworn Public Translators and Commercial Interpreter of the State of Rio de Janeiro (ATP-RIO)
TRANSLATION Nº356/2019

| | |
|---|---|
| **Doc.26** | 2009 JBS Financial Statements |
| **Doc.27** | Reference Form submitted by JBS to CVM on September 22, 2010 (information on capital stock structure only). The full version of the 2010 Reference Form, v12, can be obtained at https//jbss.infoinvest.com.br/ptb13711362052284fox336.pdf |
| **Doc.28** | Decision granting the freezing of Bertin FIP shares under the Tax Action |
| **Doc.29** | Judgment rendered in the Tax Action |
| **Doc.30** | Provisional Remedy and Main Action Complaints filed by Tinto Holding against Blessed, settlement waiving the right on which the action is based and judgment of ratification |
| **Doc.31** | Instrument of transfer and transfer of shares between Bracol / Tinto and Blessed on 24.12.2009 |
| **Doc.32** | Instrument of assignment and transfer of shares between Bracol / Tinto and Blessed on 11.11.2010 |
| **Doc.33** | Articles of Incorporation of Blessed Holdings |
| **Doc.34** | Deposition given by Joesley Batista to the Federal Police on 21.06.2017 |
| **Doc.35** | CARF Decision number 1201001.640 |
| **Doc.36** | Testimony given by Mário Celso at CPI BNDES |
| **Doc.37** | Minutes of JBS Board of Directors Meeting of September 16, 2009 |
| **Doc.38** | Testimony given by Natalino Bertin at CPI BNDES |
| **Doc.39** | Testimony given by Silmar Bertin at CPI BNDES |
| **Doc.40** | Joesley Batista Plea of Agreement # 1 |
| **Doc.41** | TCU Decision number 3011/2015 |
| **Doc.42** | TCU Decision number 2154/2018 |
| **Doc.43** | Statment submitted by CETIP regarding the ownership of shares of Bertin FIP / Pinheiros FIP |

**Case 5089754-29.2019.4.02.5101 / RJ, Event 1, INIC1, Page 71**
**Case 5089754-29.2019.4.02.5101 / RJ, Event 1, INIC1, Page 72**
**THIS was the full text of said document, the true translation whereof I hereby ATTEST.**

Given at Rio de Janeiro, this December 04th, 2019.

**FRANZISKA AMALIA LUSTOSA BECSKEHAZY**

Obs: The certified translator does not confirm the authenticity of underlying document.
Number of characters: 107.617
Number of pages: 108
Fees: R$ 20.304,00 - 02 Urgent

**Rua Canning 31, Cob01- 22081-040 Rio de Janeiro – cell: (55)(21) 9 87987472
e-mail: fbecskehazy@gmail.com**
82

Assinado digitalmente por Franziska A. L. Becskehazy Signed digitally by Franziska A. L. Becskehazy



# PROTOCOLO DE ASSINATURA(S)

Assinado digitalmente por Franziska A. L. Becskehazy Signed digitally by Franziska A. L. Becskehazy

## Código para verificação: 576B-F2CD-4709-49CE



**Hash do Documento**

C826EA7FB0B4978E263E8CF064E35F2B15659F8BA3751D3CFE973611E94265B2

O(s) nome(s) indicado(s) para assinatura, bem como seu(s) status em 04/12/2019 é(são) :

☑ Franziska Amalia Lustosa Becskehazy (Signatário) - 735.052.187-15 em 04/12/2019 17:51 UTC-03:00
  **Tipo:** Certificado Digital

