**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| IN RE: APPLICATION OF MAURICIO MOTA FOR ORDER TO TAKE DISCOVERY FOR USE IN FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. §1782. | ) Misc. Case No. 19-mc-573 ) ) ) ) |

**DECLARATION OF THE HONORABLE EROS ROBERTO GRAU**

I, Eros Roberto Grau, pursuant to 28 U.S.C. §1746 hereby declare under penalty of perjury under the laws of the United States, as follows:

1.  I submit this declaration in support of Wesley Mendonça Batista, Joesley Mendonça Batista, J&F Investimentos S.A., JBS S.A. and Pinheiros FIP ("Intervenors")'s Motion to Quash the Subpoenas and Vacate the Order (the "Intervenors' Motion").

2.  Unless otherwise indicated, all facts set forth in this declaration are based upon: (a) my personal knowledge; (b) my review of relevant documents, including the proposed subpoenas; and (c) information supplied by me by Intervenors or professionals retained by Intervenors.

I.  **QUALIFICATIONS**

3.  I was admitted to the Brazilian Bar Association ("Ordem dos Advogados do Brazil") in 1963 and I practised as a lawyer for more than 40 years until my appointment to the Brazilian Supreme Court ("Supremo Tribunal Federal"), which is the equivalent to the U.S. Supreme Court, i.e., the final and highest court in the country.

4.  I sat as a Justice of the Supreme Court for more than 6 years and I heard cases and delivered judgments related to public and private matters regulated by the Brazilian Constitution, including "popular actions" ("ação popular").  I retired from the Supreme Court in 2010 and since then I have practised as a legal expert and an arbitrator (*ad hoc* arbitrations and institutional arbitrations, including cases administered by the *International Chamber of Commerce*).

5.  I was Full Professor at the University of São Paulo from 1990 to 2009, the institution from where I also hold my PhD in Law.  I was awarded an *Honorary Doctorate Degree* ("Doutor Honoris Causa") by the Université Cergy-Pontoise (France), Université du Havre (France), Universidad Siglo 21 (Argentina), Unisinos – Universidade do Vale do Rio dos Sinos (Brazil) and Universidade Presbiteriana Mackenzie (Brazil).

6. I have published twelve books on Brazilian law, some of which were also published in French, Spanish and Italian. I have been constantly invited to deliver speeches in Brazil and in other countries.

7. I consider that I have a very high level of expertise in Brazilian public and private law. I believe I can gauge with a high degree of accuracy a Brazilian court's response to given combinations of law and fact.

## II. FACTUAL BACKGROUND AND PRELIMINARY OBSERVATIONS

8. The facts contained in this Section II are wholly based on the factual declaration of Walfrido Warde Jr., from the law firm Warde Advogados and the filings made in the Popular Action, which I reviewed when preparation this declaration.

9. In 2019, Rio de Janeiro State University Professor and State Prosecutor of Rio de Janeiro, Prof. Mota, filed a popular action against JBS and its controlling company, the holding company J&F Investimentos, and the Batista brothers ("Popular Action"),[1] as well as two actions for the production of evidence in the USA, including one in Delaware and one in New York, against Blessed Holdings and JP Morgan Bank, and two individuals ("Section 1782 Discovery Actions").

10. In the Popular Action, Prof. Mota alleges that the incorporation of Bertin by JBS , among other  and financial transaction ("JBS-Bertin Merger"), benefited J&F Investimentos and undermined the other minority shareholders, including BNDESPar (constituting, according to Prof. Mota, the public interest that provides the grounds for the filing of Popular Action).[2] The Popular Action seeks to annul these operations and to attribute joint and several liability to the

---

[1] The consultation I have been asked to opine on is Popular Action 5089754-29.2019.4.02.5101 before the 22nd Civil Federal Courts of Rio de Janeiro.

[2] However, contrary to Prof. Mota's allegations, on January 28, 2020, BNDESPar filed a brief in the Popular Action confirming that it **did not suffer any harm or losses** as a result of the acts alleged by Prof. Mota e.g. the JBS-Bertin Merger.

Batista brothers and all the corporations controlled by them (including JBS) in order to indemnify BNDES.  In the Section 1782 Discovery Actions, Prof. Mota seeks to obtain several documents purportedly to support the Popular Action.

11.     Rather than acting for the public interest (as required under Brazilian Law), there is strong evidence that Prof. Mota was acting in collusion with and for the benefit of funds and associations of minority shareholders, which had previously filed two arbitration proceedings against and J&F Investimentos in order to question the validity of these corporate and financial operations ("Arbitration Proceedings"). The law firm representing Prof. Mota in the Popular Action is the same firm that represented the plaintiffs of the Arbitration Proceedings.  The aforementioned firm delegated the powers of representation of the plaintiffs in the Arbitration Proceedings to another firm *on the date that the Popular Action was filed* by Prof. Mota.

12.     Furthermore, this same law firm (which is representing Prof. Mota in the Popular Action) has very close ties with the litigation funding firm that finances the Proceedings.

13.     Prof. Mota somehow obtained defendants' confidential documents that the plaintiffs in the Arbitration Proceedings had been trying to obtain for some time.  Soon after the Popular Action was filed, in which Prof. Mota impermissibly publicized the defendants' confidential documents, the arbitration plaintiffs used those documents (that Prof. Mota made public in the Popular Action) in the Arbitration Proceedings.  This all leads me to believe that one of the objectives of the Popular Action was to regularize evidence unlawfully or improperly gathered by Prof. Mota, in order to support the legal arguments the plaintiffs advanced in the Arbitration Proceedings. In other words, the Popular Action would serve to provide information to and influence the private Arbitration Proceedings.

### III.    LEGAL OPINION

14.     Questions to be addressed:

3

(i) What are the requirements for filing a popular action under Brazilian law?

(ii) Is the Popular Action filed by Prof. Mota time barred?

(iii) Is the Popular Action filed by Prof. Mota legitimate, in light of the Brazilian legal framework?

(iv) In this case, is it possible to ascertain any lack of public interest to substantiate the filing of the Popular Action?

(v) If abuse of conduct on the part of the plaintiff of the Popular Action were established, meaning that the alleged public interest was, in fact, a wholly private interest, would that justify dismissal of the case?

(vi) In the event of evidence that the plaintiff of the Popular Action has acted in his own personal economic interest, what legal measures should be taken?

(vii) In the event that an action for anticipated production of evidence was filed, prior to briefing of substantive arguments in the Popular Action, in order to demonstrate the selfish interests of the plaintiff of the Popular Action, should the latter be suspended until the action of anticipated production of evidence is concluded?

15. As an initial matter, I have always taken the view that these types of cases do not require an interpretation of the *rules*.[3] That is because the *rules* are the result of interpretations. Moreover, interpretation of the law is an interpretation of texts and reality, and the legal framework must conform to reality.

16. That is why *shaping the rules*, according to Kelsen's metaphor[4], is the shaping of the *text,* but not only the text itself. It is, at the same time, the shaping of the *text* and *reality*. The interpreter, when undertaking the practical production of law, understands and learns, in addition to the *texts*, the *reality* --- at the historical moment in which the interpretation operates --- in the context in which they will be applied.

---

[3] Refer to my work entitled *Why I am afraid of judges* (9th edition, Malheiros Editores, São Paulo, 2018), *Pourquoi j'ai peur des juges* (Éditions Kimé, Paris, 2014) and *Das Verhältnis der Richterschaft zum Recht* (trans. Volkhart Hanewald, Nomos, Baden-Baden, 2019).
[4] Pure theory of law, 4th edition, trans. by João Baptista Machado. Coimbra, Arménio Amado Editor, 1979.

4

17. The careful reading of Article 1 of Law 4,717/65 (the Brazilian Law on Popular Action) provides that *any citizen may be a legitimate party to plead for the annulment or declaration of nullification of <u>acts harmful to public property</u>*.[5]

18. The popular action is a procedural instrument intended to "annul <u>harmful acts</u> to public property or that of entities in which the State is a participant, to administrative morality, to the environment and historical and cultural heritage"[6] [my emphasis].

19. Pursuant to Article 2 of Law 4,717/65, the damage occurs in cases of incompetence, defect of form, illegality of the purpose, groundlessness and deviation of purpose.

20. The harmfulness of the act is a requisite for the filing of a popular action. Furthermore, pursuant to paragraphs 3 to 7 of Article 1 of Law 4,717/65, proof of citizenship and the addition of certificates and information provided by the defendants to the case files are also required for this purpose.

21. Considering the content of items *c*, *d* and *e* of the questions above, it is important to note that there is no possibility of payment of compensation to the plaintiff of a popular action under Brazilian law.

22. As the popular action claims only to ensure preservation of the public interest, everything leads me to believe that – in this case – the Popular Action was filed in order to regularize evidence improperly obtained via the Popular Action for the benefit of plaintiffs of the Arbitration Proceedings in which JBS and J&F Investimentos are defendants.

23. Moreover, Article 21 of Law 4,717/65 stipulates that "*[the] action provided for in this law is time-barred in five (5) years*."

---

[5] A true and correct copy of the relevant excerpts of Law 4,717/65 and its constitutional provisions is attached herein as **Exhibit 1**. A certified translation of Exhibit 1 is attached herein as **Exhibit 2**.
[6] Article 5, LXXIII of the Brazilian Constitution and Article 1 of Law 4,717/65.

5

24. This means five years from the act deemed to be harmful. That is why this statute of limitations, in this case, needs to be counted from the date of perpetration of the *acts alleged* to have been harmful to public property.

25. According to Pontes de Miranda, the statute of limitations[7]"*starts at the moment that the grounds for the claim are ascertained.*"

26. The Popular Action questions the JBS operation to incorporate Bertin, consummated on December 31, **2009**.

27. It is evident, therefore, that the correct interpretation of article 21 of Law 4,717/65 results in the conclusion that the Popular Action referred to in the lines above cannot prevail and are time barred, as the Popular Action was filed in November 2019. The right to file this suit was **barred by the statute of limitations in December 2014 at the very latest**.

28. Furthermore, it is also evident that the assumption that both measures for the production of evidence ongoing in the United States (the Discovery Actions) would not result in an extension of the statute of limitations defined by our positive right, article 21 of law 4,717/65.

29. The third question I have been asked to opine is whether the Popular Action filed by Prof. Mota is legitimate, in light of the Brazilian legal framework. The next question requires me to opine on whether it is possible, in this case, to ascertain the lack of any public interest capable of substantiating the filing of popular action, while the fifth addresses whether the abuse plaintiff's attempt to mask what is really a 'private interest' as a 'public interest' would be grounds for the dismissal of the proceedings.

30. In this case, considering that the right to file the Popular Action referred to in the consultation is time-barred by the statute of limitations, these questions are moot. Nevertheless, I shall consider them.

---

7 Treatise of Private Law, vol. VI, Editora Borsoi, Rio de Janeiro, 1955, p. 148.

31. The illegitimacy of the Popular Action filed by Prof. Mota (considered the word "legitimacy" in its broadest sense) is evident. Firstly because (and allow me to repeat myself) the right to file them was barred by the statute of limitations in December 2014.

32. Secondly because, as I have observed above, everything leads me to believe that they were filed in order to regularize evidence obtained improperly in the Popular Action for use by the plaintiffs of Arbitration Proceedings in which JBS and J&F Investimentos are adverse parties.

33. Pursuant to Article 1 of Law 4,717/65, the purpose of the popular action is the annulment or declaration of nullification of acts that are harmful to public property.

34. As set forth in Article 5, LXXIII of our Constitution, "*any citizen may legitimately file a popular action with the intention of redressing damages to public property or entities in which the State has a stake, administrative morality, the environment and historical and cultural heritage, wherein the plaintiff will be exempt of any court costs or expenses owed by the losing party, except if the latter proves to be a vexatious litigant.*"

35. It turns out that, as I stated above, the right to file in the cases concerning the consultation I was asked to provide were time-barred by the statute of limitations December 2014. All the available evidence indicates the lack of any public interest capable of substantiating the filing of these suits.

36. Here, I shall also make the distinction between public interest *in general* and a *procedurally sustainable* public interest i.e. sustainable in a lawsuit.

37. In the Popular Action, the *procedurally sustainable public interest* is legally non-existent. Thus, I repeat that all the available evidence indicates the lack of any public interest capable of substantiating the filing of the Popular Action.

38. Article 2 of Law 4,717/65 stipulates that "*[h]armful acts perpetrated against the property of the entities mentioned in the previous article are null and void, in the event of: a) incompetence; b) defect of form; c) illegality of the purpose; d) groundlessness; e) deviation of purpose.*"

39. The specification of explicit acts harmful to public property constitutes a necessary requirement to support a Popular Action.  However, contrary to Prof. Mota's allegations, on January 28, 2020, BNDESPar filed a brief in the Popular Action confirming that it **did not suffer any harm or losses** as a result of the acts alleged by Prof. Mota e.g. the JBS-Bertin Merger.  Therefore there can be no harm to public property whatsoever.

40. Without a shadow of doubt, Prof. Mota's attempt to cloak an eminently private interest as a public interest is grounds for dismissal of the proceedings.

41. It is also asked what legal measures should be adopted in the event of evidence that the plaintiff of the Popular Action has acted in his own personal economic interest.

42. The consultation that I was asked to provide and the accompanying documents I have reviewed mention evidence that the Popular Action is not intended to protect the public interest, but to uphold private interests.

43. Further, the Popular Action seeks to annul or challenge an entirely *private act* (i.e. the JBS-Bertin Merger and private transactions related thereto), and for that reason alone, the Popular Action must fail.

44. As a result, I permit myself to remember court rulings are (as they should be) expressions of *prudence*, and they are to be implemented based on this ideal. From the *Phronesis* explained by Aristotle in the Nicomachean Ethics[8]: Prudence is a virtue, a disposition [capacity], accompanied by reason, capable of acting in the sphere of what is good or bad for a human

---

8 Éthique à Nicomaque, 7ª tir., trans. by J. Tricot, Paris, J. Vrin, 1990.

being. Or, in other words, capable of acting in the sphere of human good. Prudence is, therefore, an intuitive reason that does not discern the exact, but the correct --- it is not pure knowledge, separate from being.

45. Judges, as authentic interpreters, *produce* legal norms from normative texts and reality, they practice the *prudent juris,* not *juris scientia*.

46. And, moreover, a lesson by Carlos Maximilian[9] is truly exquisite, here fitting like a glove: "THE LAW MUST BE INTERPRETED **INTELLIGENTLY:** not in a manner that the legal framework involves an **absurdity**, inconveniences, inconsistent or impossible conclusions" (emphasis in the original).

47. This leads me to assume that, in the Popular Action the existence of proof that Prof. Mota acts in favor of personal economic interests would lead the Brazilian court to dismiss the Popular Action.

48. Please also note the provisions of Article 13 of Law 4,717/65: "*The sentence which, appreciating the legal basis of the request, declares the dispute to be manifestly reckless, will condemn the plaintiff to the payment of ten times the costs*."

49. Moreover, although the plaintiff of the Popular Action is exempt from the judicial costs and costs awarded to the prevailing party, Article 5, LXXIII of our Constitution is clear when it explains that this is the case "*unless bad faith is proven*."

50. What is apparent from the evidence is that, if it is proven that Prof. Mota acted in bad faith regarding the Popular Action filed against JBS and its controller, the law provides that he be ordered to pay ten times the costs of the lawsuit.

51. Further, I've been asked whether a Brazilian court can stay the proceeding pending the filing of an evidence production (i.e. discovery) action in Brazil seeking to

---

9 Hermeneutics and application of the law, sixth edition, Livraria Freitas Bastos, Rio de Janeiro, 1957, p. 210.

9

demonstrate the selfish interests of the plaintiff of the Popular Action. The question is whether the Popular Action should be suspended until this evidence production action in Brazil is concluded.

52. Article 313, V, b of the Code of Civil Procedure states "*The process is suspended (...) when the judgment of merit (...) has been handed down only after a certain fact is ascertained or a certain piece of evidence is produced, requested by another court*."

53. The provisions of Article 5, LV of our Constitution are clear and comprehensive: "*litigants, in judicial or administrative processes, as well as defendants in general are ensured of the adversary system and a fair hearing, with the means and resources inherent to it*."

54. In the event that an action for anticipated production of evidence is filed, prior to briefing of the substantive arguments, in order to demonstrate the selfish interests of the plaintiff of the Popular Action, the Popular Action should be suspended (i.e. stayed) until the action of early production of evidence is concluded.

55. Returning to what I initially stated, it should be remembered that the interpretation of the law is an interpretation of texts and reality, and the legal framework conforms to reality. The interpreter, when undertaking the practical production of law, understands and learns, in addition to the *texts*, the *reality* at the historical moment in which the interpretation operates in the context in which they will be applied.

56. This is prudently considered in the context of what is discussed above in this opinion. The questions proposed for consultation will thus be answered:

(i) the damage caused by the act that is the subject of the popular action is an objective requirement for it to be filed, pursuant to Article 2 of Law 4,717/65, in cases of incompetence, defect of form, illegality of the purpose, groundlessness and deviation of

purpose; furthermore, pursuant to paragraphs 3 to 7 of Article 1 of Law 4,717/65, proof of citizenship and the inclusion of certificates and information provided by the defense in the case files are also requirements for filing.

    (ii)  as the right to file the Popular Action was time-barred by the statute of limitations in December 2014, the Popular Action cannot stand; in other words, observing the terms of the consultation, they are illegitimate under the Brazilian legal framework.  Moreover, it is unreasonable to suggest that of the two measures for production of evidence ongoing in the United States (the <u>Discovery Actions</u>) would result in any extension to the statute of limitations defined under our positive law, the article 21 law 4,717/65;

    (iii)  the illegitimacy of the Popular Action filed by Prof. Mota (considering the word "legitimacy" in the broadest sense and as I have said above) is evident;

    (iv)  **yes;** in this case, it is possible to conclude that there is a lack of public interest capable of substantiating the filing of Popular Action;

    (v)  **yes;** the Popular Action shall be dismissed if it is established that the plaintiff attempted to mask a 'private interest' as a 'public interest';

    (vi)  in the event that there is evidence that the plaintiff of the Popular Action has acted out of personal economic interests, the consequence will be the dismissal of the proceedings; if it is proven that the plaintiff acted in bad faith, he must be ordered to pay ten times the costs of the proceedings;

    (vii)  **yes;** in the event that, an action for anticipated production of evidence is brought (as JBS already has) in order to demonstrate Mr. Mota's lack of standing in the Popular Action, the Popular Action must be suspended (i.e. stayed) until conclusion of the anticipated production of evidence, pursuant to Article 313, V, 'b' of the Code of Civil Procedure.

I declare under the penalty of perjury pursuant to 28 U.S.C. §1746 under the laws of the United States that the forgoing is true and correct.

Executed this 6th day of March, 2020.
In São Paulo, State of São Paulo, Brazil

Eros Roberto Grau