UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE:

APPLICATION OF MAURICIO MOTA
FOR AN ORDER TO TAKE DISCOVERY
FOR USE IN FOREIGN PROCEEDINGS
PURSUANT TO 28 U.S.C. § 1782

1:19-mc-00573-KPF

MEMORANDUM OF LAW IN SUPPORT OF INTERVENORS' MOTION TO VACATE
THE COURT'S ORDER AND TO QUASH THE SUBPOENAS FOR USE IN A
FOREIGN PROCEEDING

March 9, 2020
New York, NY

QUINN EMANUEL URQUHART
& SULLIVAN, LLP
Michael B. Carlinsky
Lucas V. M. Bento
Alexander P. Wentworth-Ping
51 Madison Avenue, Floor 22
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
michaelcarlinsky@quinnemanuel.com
lucasbento@quinnemanuel.com
alexwentworthping@quinnemanuel.com

*Attorneys for Intervenors Wesley Mendonça Batista,
Joesley Mendonça Batista, J&F Investimentos S.A.,
JBS S.A., and Pinheiros Fundo De Investimento Em
Participações*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................................ 1

FACTUAL BACKGROUND .................................................................................... 3

      A.     Parties ...................................................................................................3

      B.     JBS-Bertin Merger ..............................................................................4

      C.     Foreign Proceedings............................................................................5

              1.     CAM Arbitrations ................................................................... 5

              2.     Popular Action In Brazil ......................................................... 6

      D.     1782 Proceedings ................................................................................8

ARGUMENT ............................................................................................................. 9

I.       PETITIONER FAILS TO SATISFY THE SECTION 1782 STATUTORY
       REQUIREMENTS ........................................................................................ 9

      A.     Pegas, Moraes, and Blessed Do Not "Reside" Nor Can Be "Found" Here ............9

      B.     The Discovery Sought Is Not "For Use" In Foreign Tribunals ............................10

              1.     The Popular Action is a Sham Proceeding ............................... 10

              2.     Petitioner May Actually Be Seeking Discovery Here in Aid of a Private
                   Arbitration in Brazil ............................................................... 11

              3.     Discovery Sought From Blessed Holdings Inc. Cannot Be "For Use"
                   Because That Entity Had No Involvement in the Transactions At Issue.. 13

      C.     Petitioner is Not an "Interested Person" ...............................................................14

II.      THE *INTEL* FACTORS WEIGH HEAVILY IN FAVOR OF VACATING THE ORDER
      AND QUASHING THE SUBPOENAS ........................................................... 14

      A.     *Intel* Factor 1: The Evidence Petitioner Seeks Is Already Within Reach Of
            The Foreign Tribunals........................................................................15

      B.     *Intel* Factor 2: Nature and Character of the Foreign Proceedings Weigh
            Against Discovery Here ......................................................................17

      C.     *Intel* Factor 3: The Application Seeks To Circumvent Both Foreign And U.S.
            Laws And Policies .............................................................................18

              1.     Petitioner's Application Is An End-Run Around Brazilian Discovery
                   Procedures and Policies ........................................................... 18

               2.     Petitioner's Application Is An End-Run Around U.S. Policy Too ........... 20

      D.     *Intel* Factor 4: Petitioner Seeks Overly Intrusive And Burdensome Discovery ....22

III.     ALTERNATIVELY, THIS COURT SHOULD STAY THIS CASE PENDING THE
      OUTCOME OF THE UNRESOLVED MOTIONS IN BRAZIL ................................... 24

CONCLUSION ....................................................................................................... 25

# TABLE OF AUTHORITIES

**Page**

## Cases

*In re Apotex Inc.*,
2009 WL 618243 (S.D.N.Y. Mar. 9, 2009) ................................................................. 25

*In re Application of Alves Braga*,
789 F. Supp. 2d 1294 (S.D. Fla. 2011) ..................................................................... 25

*In re Application of Digitechnic*,
2007 WL 1367697 (W.D.Wash. May 8, 2007)........................................................... 20

*In re Asia Mar. Pac. Ltd.*,
253 F. Supp. 3d 701 (S.D.N.Y. 2015)................................................................... 22, 24

*Balandra v. Kindred Healthcare Operating, Inc.*,
2016 WL 6953430 (C.D. Cal. Jan. 12, 2016) .......................................................... 10

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*,
673 F.3d 76 (2d Cir. 2012).................................................................................. 9, 22

*In re Caratube Int'l Oil Co., LLP*,
730 F. Supp. 2d 101 (D.D.C. 2010) ......................................................................... 20

*Certain Funds, Accounts &/or Inv. Vehicles v. KPMG, LLP*,
798 F.3d 113 (2d Cir. 2015).................................................................................. 9, 14

*In re del Valle Ruiz*,
939 F.3d 520 (2d Cir. 2019).................................................................................... 10

*In re Edelman*,
295 F.3d 171 (2d Cir. 2002).................................................................................... 10

*Euromepa S.A. v. R. Esmerian, Inc.*,
51 F.3d 1095 (2d Cir. 1995).................................................................................... 21

*Euromepa, S.A. v. R. Esmerian, Inc.*,
154 F.3d 24 (2d Cir. 1998)...................................................................................... 11

*Glock v. Glock, Inc.*,
797 F.3d 1002 (11th Cir. 2015) .............................................................................. 19

*In re Grynberg*,
223 F. Supp. 3d 197 (S.D.N.Y. 2017)...................................................................... 21

*In re Hanwei Guo*,
2019 WL 917076 (S.D.N.Y. Feb. 25, 2019)............................................................. 13

*Heraeus Kulzer, GmbH v. Biomet, Inc.*,
633 F.3d 591 (7th Cir. 2011) .................................................................................. 22

*In re Imanagement Servs., Ltd.*,
2005 WL 1959702 (E.D.N.Y. Aug. 16, 2005)........................................................... 22

*In re Intel Corp. Microprocessor Antitrust Litig.*,
2008 WL 4861544 (D. Del. Nov. 7, 2008) .......................................................... 14, 25

*Intel Corp. v. Advanced Micro Devices, Inc.*,
542 U.S. 241 (2004)........................................................................... 15, 16, 18, 19, 20

*In re IPC Do Nordeste, LTDA*,
2012 WL 4448886 (E.D. Mich. Sept. 25, 2012)........................................................ 23

*Kiobel by Smakalden v. Cravath, Swaine & Moore LLP*,
895 F.3d 238 (2d Cir. 2018)............................................................... 15, 16, 17, 19

*In re Kreke Immobilien KG*,
    2013 WL 5966916 (S.D.N.Y. Nov. 8, 2013) ............................................... 21
*Lufthansa Technik v. Panasonic Avionics Corp.*,
    2017 WL 6311356 (W.D. Wash. Dec. 11, 2017) ................................... 24
*In re Macquarie Bank Ltd.*,
    2015 WL 3439103 (D. Nev. May 28, 2015) ........................................... 16
*Malev Hungarian Airlines v. United Techs. Int'l, Inc.*,
    964 F.2d 97 (2d Cir. 1992) ................................................................. 24
*In re Mauricio Mota*,
    19-MC-00369-MN (D. Del.) ............................................................... 23
*Application of Medway Power Ltd.*,
    985 F. Supp. 402, 405 (S.D.N.Y. 1997) ............................................. 13
*Mees v. Buiter*,
    793 F.3d 291 (2d Cir. 2015) ........................................................ 14, 24
*In re Metallgesellschaft AG*,
    121 F.3d 77 (2d Cir. 1997) ......................................................... 15, 22
*Miccosukee Tribe of Indians of Fla. v. South Fla. Water Mgmt. Dist.*,
    559 F.3d 1191, 1198 (11th Cir.2009) ................................................. 25
*In re Microsoft Corp.*,
    428 F. Supp. 2d 192 (S.D.N.Y. 2006) ....................................... 15, 16, 20
*Nat'l Broad. Co. v. Bear Stearns & Co., Inc.*,
    165 F.3d 184 (2d Cir. 1999) ............................................................. 12
*In re OOO Promnefstroy*,
    2009 WL 3335608 at *5 (S.D.N.Y. Oct. 15, 2009) .............................. 16
*In re Petrobras Sec. Litig.*,
    393 F. Supp. 3d 376, 386 (S.D.N.Y. 2019) ................................... 12, 13
*In re Pinchuk*,
    2014 WL 1328484 (S.D. Fla. Mar. 31, 2014) ................................. 11, 25
*Pravin Banker Assocs., Ltd. v. Banco Popular Del Peru*,
    109 F.3d 850 (2d Cir. 1997) ............................................................. 21
*In re Qualcomm Inc.*,
    162 F. Supp. 3d 1029 (N.D. Cal. 2016) ............................................. 21
*Rep. of Kaz. v. Biedermann Int'l*,
    168 F.3d 880 (5th Cir. 1999) ........................................................... 12
*In re RSM Prod. Corp.*,
    2018 WL 1229705 (S.D.N.Y. Mar. 9, 2018) ................................... 17, 22
*Schmitz v. Bernstein Liebhard & Lifshitz, LLP*,
    376 F.3d 79 (2d Cir. 2004) ............................................................... 17

### Statutory Authorities

28 U.S.C. § 1782 ................................................................... 1, 11, 23, 24

### Rules and Regulations

Fed. R. Civ. P. 26 ....................................................................... 23, 24

Intervenors Wesley Mendonça Batista ("W. Batista"), Joesley Mendonça Batista ("J. Batista" and together with W. Batista, the "Batistas"), J&F Investimentos S.A. ("J&F"), JBS S.A. ("JBS"), and Pinheiros Fundo De Investimento Em Participações ("Pinheiros FIP", and collectively, "Intervenors") submit this Memorandum of Law in support of its Motion to Vacate the Court's January 3, 2020 order ("Order") granting Petitioner Mauricio Mota's application pursuant to 28 U.S.C. § 1782 and to Quash the subpoenas issued to Respondents J.P. Morgan Chase & Co., Fabio Pegas, Patricia Pratini De Moraes, and Blessed Holdings Inc.

## PRELIMINARY STATEMENT

Petitioner brought this 1782 Application supposedly in pursuit of evidence to support its allegations that the Intervenors orchestrated a "sham" merger transaction with another Brazilian company, Bertin S.A., at an inflated value.  But the only "sham" here is the Petitioner's foreign proceeding: a civil action filed in Brazilian federal court under the guise of an *ação popular* ("Popular Action"), supposedly to pursue claims on behalf of the "public interest" to protect "public property" of a "public entity."   Indeed, the purported foreign "proceeding," which Intervenors have recently moved to dismiss, is fundamentally flawed for myriad reasons:

(i) ***No Standing.*** Petitioner has no standing to bring the foreign claims when acting in the pursuit of private interests and the claims are not based on "public acts", as required under Brazilian law, but on a *private merger transaction* between two corporations;

(ii) ***No Harm.*** The public entity that Petitioner alleges suffered harm has denied any harm or loss as a result of the JBS-Bertin Merger; and

(iii) ***Time-Barred.*** The statute of limitations has run on Petitioner's foreign claims which are based on conduct that occurred more than 10 years ago.

It appears that the sole reason Petitioner filed the Popular Action was to publicize sensitive

1

documents he obtained elsewhere so that aligned parties could make use of those documents in a parallel private arbitration pending in Brazil.  Unfazed by the almost certain prospect of dismissal of the Popular Action in Brazil and the unavailability of Section 1782 for private arbitrations, Petitioner seeks to use the Popular Action here as a springboard to obtain document discovery from Respondents on a plethora of topics with no regard to the burden they might impose, nor whether they may obtain those documents directly from Intervenors in the Popular Action, the real party in interest, and without ever having tried to seek them in Brazil.  To allow such a use of Section 1782 would be inappropriate.

As an initial matter, Petitioner has failed to meet the necessary statutory factors for Section 1782 assistance.  *First*, there is no valid "proceeding" as neither the Popular Action, nor the private Brazilian arbitration with which Petitioner is aligned, qualify for assistance under Section 1782. The Popular Action, a "sham" proceeding subject to immediate dismissal on numerous, clear grounds, is merely a ploy to gain leverage and documents for a parallel private Brazilian arbitration that would not, under controlling Second Circuit precedent, qualify as a "proceeding in a foreign tribunal." *Second*, neither Moraes nor Pegas "reside" or are "found" in this District because both live and work in São Paulo, Brazil.  Blessed Holdings Inc. is not found in this District because it is located in Brooklyn, New York.  *Third*, because Petitioner lacks standing to bring his claims in Brazil, he also is not an "interested party" who can initiate these proceedings.

The discretionary *Intel* factors similarly each weigh against granting the discovery requested here.  *First*, the documents sought are within the reach of the foreign tribunals and thus accessible absent Section 1782 aid, and Petitioner has failed to make use of a powerful discovery mechanism (including for pre-action discovery) specifically available under Brazilian law for popular actions.  *Second*, the pretextual nature and character of the foreign proceedings, designed

solely to harass Intervenors and garner discovery via whatever mechanism possible, also favors dismissal. *Third,* the Application seeks to circumvent both Brazilian and U.S. law and policy by, *inter alia*, pursuing baseless proceedings, failing to seek discovery in Brazil, publicizing Intervenors' sensitive documents, and coordinating discovery with aligned claimants in a private Brazilian arbitration. *Finally*, the subpoenas impose an undue burden and intrusion on the Respondents because they seek documents for a proceeding that will likely be dismissed and could be obtained more efficiently in Brazil. Further, Blessed Holdings Inc. should not be burdened by any discovery requests because, inter alia, it was incorporated in 2019, almost 10 years after the events at issue and could not possibly have any documents related to its subpoena. Petitioner also requests the cumulative discovery from multiple parties in this and parallel Section 1782 proceedings in Delaware. Denying Mota's Application would simply force him to do what he should have done in the first place: seek the documents in Brazil. That result fully comports with the efficiency and comity rationales underpinning Section 1782.

Intervenors therefore respectfully request that the Court vacate its Order and quash the Subpoenas issued, protecting Respondents from a burdensome and intrusive subpoenas compliance effort and preventing Mota from abusing Section 1782 to harass Intervenors in aid of a "foreign proceeding" in name only.[1]

## FACTUAL BACKGROUND

### A. Parties

*Petitioner Mauricio Mota* is a Brazilian citizen and law professor at the State University of

---

[1]   Intervenors are the defendants in the Popular Action filed by Petitioner in Brazil. In the interests of efficiency and judicial economy, Intervenors, who are managed independently, have filed this joint motion to vacate the Order and quash the Subpoenas. Intervenors' filings here should not to be considered, understood, or interpreted to be an admission, concession, or waiver related to their separate legal personalities.

Rio de Janeiro in Brazil.  The law firm representing Mota in the Popular Action is the same firm that represented the claimants in the CAM Arbitration proceedings pending in Brazil.  *See* Tucci & Sica Decl. ¶¶ 15, 64; Warde Decl. ¶¶ 8, 16.

*Respondent JP Morgan Chase & Co ("JPM")* is a bank headquartered in New York and incorporated in Delaware.

*Respondent Fabio Pegas* is a Brazilian citizen who, upon information and belief, no longer lives or works in New York and currently resides in Sao Paulo, Brazil and works at the Nogueira Pegas Advogados law firm. *See* Bento Decl., Exs. 1-2.

*Respondent Patricia Pratini De Moraes* is a Brazilian citizen who, upon information and belief, currently resides and works in Sao Paulo, Brazil.  *See* Bento Decl., Exs. 3-5.  Upon information and belief, she stopped working at JPM in 2018 and currently works at a private equity firm in Sao Paulo, Brazil. *See id.*

*Respondent Blessed Holdings Inc.* is a company incorporated in New York on July 10, 2019, with an address at 17 Walton Street, Brooklyn, New York. ECF 4-6.  Based on the information available to Intervenors, Blessed Holdings Inc. has no relationship to Blessed Holdings LLC, the JBS-Bertin Merger, or any of the foreign proceedings. *See* Murphy Decl. ¶ 4.

### B.     JBS-Bertin Merger

On September 16, 2009, J&F and ZMF Fundo de Investimentos em Participações, JBS S.A.'s former direct controlling shareholders, entered into an association agreement with the controlling shareholders of Bertin S.A. ("Bertin"), a Brazilian company that was one of the largest exporters of beef and other cattle by-products in Latin America, to unify the operations of both companies. Warde Decl. ¶5.  That same day, JBS and Bertin each announced to the market that its controlling shareholders had formed Independent Special Committees to determine the exchange

ratio for the merger, or a merger of shares involving Bertin and JBS, as per the structure to be adopted, which would occur in compliance with applicable law.  *Id.*  Following an independent review and due diligence process, on December 29, 2009, JBS shareholders approved the JBS-Bertin merger on those terms ("JBS-Bertin Merger").  Warde Decl. ¶6.  After JBS and Bertin made the required disclosures to the market under applicable law, the Brazilian authorities duly approved the transaction. Warde Decl. ¶7.

      **C.**    **Foreign Proceedings**

         1.    CAM Arbitrations

Around eight years later, on August 16, 2017, Mr. José Aurélio Valporto initiated an arbitral proceeding against JBS and its controlling shareholders, including J&F, before the *Câmara de Arbitragem do Mercado* (translated, the "Market Arbitration Chamber" or "CAM")[2] of the B3 Brazilian stock market, to seek damages purportedly arising from the JBS-Bertin Merger.  Tucci & Sica Decl. ¶¶15, 18; Warde Decl. ¶8.  Mr. Valporto has filed on behalf of companies in which he is a minority shareholder before and has claimed civil liability from controlling shareholders, in addition to presiding over the Minority Investors Association, a civil association that has filed lawsuits on behalf of minority shareholders in other cases. Tucci & Sica Decl. ¶ 16.

On June 15, 2018, the SPS I Equity Investment Fund ("SPS") initiated a parallel arbitration proceeding, which was later consolidated with the Valporto arbitration (collectively, the "CAM Arbitration").  *See* Tucci & Sica Decl. ¶15; Warde Decl. ¶8.  SPS was constituted only four days

---

[2]  CAM specifically sets out procedures for an arbitration including taking evidence. Rules of Market Arbitration Chamber 4.6, *available at* http://www.b3.com.br/data/files/A8/D1/92/7F/4637E41015F7F6E492D828A8/Regulation.pdf [hereinafter "CAM Rules"] (providing that the Arbitral Tribunal "shall decide what evidence is useful and necessary to settle the dispute and establish the procedures *and order for the production of evidence*").

before the request for initiation of the arbitration proceedings.  Tucci & Sica Decl. ¶17.  Valporto and SPS both seek damages from J&F for damages allegedly caused to JBS's minority shareholders as a result of the JBS-Bertin Merger.  Tucci & Sica Decl. ¶18.

Importantly, the law firm Galdino and Coelho Advogados ("GCA") represented the CAM Arbitration claimants and now represents Petitioner Mauricio Mota in the Popular Action in Brazil. Tucci & Sica Decl. ¶¶15, 64; Warde Decl. ¶¶8, 16.  On the same day that Petitioner filed the Popular Action, on November 14, 2019, GCA withdrew from its representation of the CAM Arbitration claimants in favor of another law firm.  Tucci & Sica Decl. ¶¶19, 64; Warde Decl. ¶8. Days after Petitioner publicly filed his complaint in the Popular Action, which annexed certain sensitive documents about Intervenors, the law firm that succeeded GCA as the CAM Arbitration claimants' counsel presented several documents to the CAM arbitral tribunal that had been attached to the Popular Action complaint days before.  Tucci & Sica Decl. ¶¶ 20, 64; Warde Decl. ¶¶12, 16.  The CAM Arbitration claimants are both funded by the same litigation funder, Prisma Capital, whose co-founder was a named partner at GCA.  Warde Decl. ¶8.

2.      Popular Action In Brazil

On November 14, 2019, Petitioner, represented by GCA, commenced a popular action against Intervenors JBS, the Batistas (as previous officers of the company), Pinheiros FIP and J&F before the 22nd Civil Court of the Subsection of the Federal Court in Rio de Janeiro ("Popular Action").  Tucci & Sica Decl. ¶8; Warde Decl. ¶9.  The Popular Action seeks to void the JBS-Bertin Merger and recover damages for BNDES Participações S.A. ("BNDESPar"), a minority shareholder of JBS and a subsidiary of the state-owned Brazilian National Bank for Economic and Social Development ("BNDES"). Tucci & Sica Decl. ¶10; Warde Decl. ¶9.

In the Popular Action, Mota alleges that the JBS-Bertin Merger was a "sham" because

Bertin's assets were over-appraised when acquired by JBS, which supposedly caused the unlawful dilution of the minority shareholders' stake in JBS, including BNDESPar.[3]  Mem. 6.  Mota asserts that Bertin was valued at R\$12 billion when it was actually worth only R\$3.5 billion and the Batistas secured equity based on the higher valuation from Brazilian government agencies such as BNDES.  *Id.*  That valuation, despite being approved by an Independent Special Committee, provided Bertin's controlling shareholders an indirect equity stake of 22.56% in the holding company FB Participações S.A., which was then allegedly transferred back to the Batistas by two assignment agreements. *Id.*  Bertin's former controlling shareholders then allegedly provided the overage (i.e. the difference between the actual and inflated valuation of the JBS shares received in the JBS-Bertin Merger) through alleged "off-the-record contracts" to Blessed Holdings LLC.[4]

Mota has alleged that BNDESPar, as a JBS minority shareholder, suffered losses since its stake in JBS was allegedly diluted by the JBS-Bertin Merger, thus allegedly harming Brazilian public coffers. Tucci & Sica Decl. ¶12; Warde Decl. ¶11.  Mota, supposedly acting on the behalf of the public interest, has filed the Popular Action against Defendants seeking to compensate BNDESPar. *Id.*  Mota has also applied for an injunction seeking, *inter alia*, the suspension of the political and economic rights conferred to J&F, but the Brazilian court declined to rule until the Defendants answered the allegations.  Tucci & Sica Decl. ¶13;  Warde Decl. ¶13.

On February 10, 2020, JBS filed a request to suspend and/or dismiss the Popular Action on the ground that Mota is colluding with the CAM Arbitration claimants. Warde Decl. ¶¶14-15.

---

[3]  BNDESPar refuted the allegation in the Popular Action that it was harmed by the merger when, on January 28, 2020, it filed a sworn declaration confirming that it has suffered **no loss or harm** as a result of the JBS-Bertin Merger.  Warde Decl. ¶26.

[4]  Blessed Holdings Inc. has no relationship to Blessed Holdings LLC, the JBS-Bertin Merger, or the Popular Action. Murphy Decl. ¶4. Petitioner probably included Blessed Holdings LLC as a Respondent because of the coincidental similarity between the entities' names.

On March 5, Intervenors filed their Answer to Mota's Popular Action complaint on the basis that he lacked standing, his claims were time-barred, and that JBS-Bertin Merger complied with applicable law. Warde Decl. ¶¶21-26.  The Court has not yet ruled on those motions, which will likely be decided between April and June 2020. Warde Decl. ¶¶27, 29.

### D.   1782 Proceedings

On December 13, 2019—less than a month after filing the Popular Action in Brazil—Mota filed this *ex parte* 1782 Application seeking permission to issue subpoenas for the production of documents from Respondents JPM, Pegas, Moraes and Blessed Holdings Inc.  Mota seeks document discovery *from 2007 to present* from each Respondent, *see* ECF 1-2 to 1-5 (proposed subpoenas), including the following document requests:

- "All documents and communications concerning the acquisition, merger, transaction(s) and/or partnership by and between Bertin and JBS to include, but not limited to: (1) the valuation of Bertin; (2) investments in Bertin; and (3) the transfer of equity, stock, and/or interest by and between Bertin and JBS." ECF 1-2 ("JPM Subpoena"), Request 1; *see also* ECF 1-3 ("Blessed Inc Subpoena"), Request 6.

- "All documents and communications concerning payments made to the Brazilian Workers' Party and/or Guido Montega by Joesley Batista, Wesley Batista, JBS, Blessed Holdings LLC, Blessed Holdings Inc., Blessed Holdings Cayman, Lighthouse Capital Insurance Co. and/or US Commonwealth Life." JPM Subpoena, Request 2.

- "All documents and communications concerning Formentera Holdings and/or Mustique Enterprises, including, but not limited to, all financial statements, bank statements, accounting records, and financial reports." JPM Subpoena, Request No. 9; Blessed Inc Subpoena, Request 4; *see also* ECF 1-5 ("Moraes Subpoena"), Request 4; ECF 1-4 ("Pegas Subpoena"), Request 4.

- "All documents and communications concerning Bertin." Pegas Subpoena, Request 7; Blessed Inc Subpoena, Request 6; *see also* Moraes Subpoena Request 5.

On January 3, 2020, this Court granted the *ex parte* Application. ECF 7.  On February 5, 2020, this Court permitted Intervenors' intervention as of right. ECF 14; ECF 15; ECF 16.

On December 27, 2019, Petitioner filed a second *ex parte* 1782 Application in the District of Delaware against Colorado Holdings LLC f/k/a Blessed Holdings LLC (an entity allegedly

involved in certain transfers following the JBS-Bertin Merger), which was granted *ex parte* on January 8, 2020. Intervenors intervened in those proceedings too on February 4, 2020, and have filed a motion to vacate that Court's prior order and quash the subpoena issued to Blessed Holdings LLC concurrently with the motion filed in this Court.

## ARGUMENT

## I.   PETITIONER FAILS TO SATISFY THE SECTION 1782 STATUTORY REQUIREMENTS[5]

To successfully invoke § 1782, an applicant must establish that "(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery be for use in a proceeding before a foreign tribunal, and (3) the application be made by a foreign or international tribunal or any interested person." *Certain Funds, Accounts &/or Inv. Vehicles v. KPMG, LLP*, 798 F.3d 113, 117 (2d Cir. 2015) (quoting *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012)). Petitioner fails to establish that the discovery meets each of these requirements for each of the Respondents.

### A.   Pegas, Moraes, and Blessed Do Not "Reside" Nor Can Be "Found" Here[6]

Neither Pegas nor Moraes reside or are "found" in this District.[7] Section 1782's "'resides or is found' language extends to the limits of personal jurisdiction consistent with due process." *In re del Valle Ruiz*, 939 F.3d 520, 528 (2d Cir. 2019). For individuals residing outside the state, this will typically require that they are subject to so-called "tag jurisdiction" by virtue of them

---

[5] *See* Mem. 8-10 (listing statutory and discretionary factors for Section 1782 applications).
[6] Petitioner appears to seek documents relating to and from Intervenors and their alleged transactions. Since none of the Intervenors, all Brazilian entities or individuals, "reside or are found" in this district, Petitioner do not satisfy this statutory factor. *See infra* Section III.1.
[7] Intervenors do not dispute that JPM and Blessed Holdings Inc. are "found" in this District because they are either headquartered or incorporated here. *See In re del Valle Ruiz*, 939 F.3d 520, 525 (2d Cir. 2019).

being physically present in the district at the time of service.  *See In re Edelman*, 295 F.3d 171, 179 (2d Cir. 2002).  Here, there is no evidence that either were personally served in New York and even a cursory review of publicly available information reveals that neither Pegas nor Moraes work or live in New York.[8]  Bento Decl., Exs. 1-5.  Indeed, it is evident that they have long ago both returned to Sao Paulo, Brazil.  *Id.*  Blessed Holdings Inc. is located in Brooklyn, New York, which is not within the Southern District of New York.  Thus, Pegas, Moraes, and Blessed do not "reside" and are not "found" in the Southern District of New York for purposes of Section 1782.

**B.      The Discovery Sought Is Not "For Use" In Foreign Tribunals**

The foreign proceedings that underlie Mota's Application do not qualify for assistance under Section 1782 because, despite having based their application on a purported proceeding in Brazil, that proceeding is a "sham" and the real proceedings at issue are consolidated in a private arbitration, which is not a "tribunal" under controlling precedent in this Circuit.  Blessed Holdings Inc. also had no connection to the JBS-Bertin Merger so Mota could not possibly "use" any discovery obtained from Blessed Holdings Inc. in proceedings abroad.  Without a valid foreign proceeding where the discovery can be used, Section 1782 discovery is not appropriate.

1.      The Popular Action is a Sham Proceeding

The Court should deny the Application because Mota cannot show that the requested discovery is for use in a "*proceeding*" before a foreign or international tribunal.  *See* 28 U.S.C. §

---

[8]  Petitioner merely vaguely alleges, *on information and belief*, that they work *or worked* in New York and cite *Petitioner's own draft subpoenas* for the proposition that Pegas or Moraes maintain a personal residence in New York.  Mem. 11.  In the face of evidence showing that Moraes and Pegas now live and work in Brazil, Petitioner's self-serving allegations on information and belief are inadequate to satisfy this statutory prong of Section 1782.  *Cf. Balandra v. Kindred Healthcare Operating, Inc.*, 2016 WL 6953430, at *1 (C.D. Cal. Jan. 12, 2016) ("[J]urisdictional allegations based on information and belief are insufficient to confer jurisdiction.").

1782(a) (emphasis added).  Mota purportedly seeks to use evidence obtained here in the Popular Action.  Mem. 12.  But that proceeding is "sham" proceeding that should not have been initiated in the first place and in any event asserts claims that are time-barred under Brazilian law.  *See Euromepa, S.A. v. R. Esmerian, Inc.*, 154 F.3d 24, 29 (2d Cir. 1998) (dismissing Section 1782 discovery as moot "because at that time there were no foreign proceedings, within the meaning of the statute, in which the discovery could be used"); *In re Pinchuk*, 2014 WL 1328484, at *1 (S.D. Fla. Mar. 31, 2014) (staying a Section 1782 application until the foreign court resolved the pending motions because the party against whom discovery was sought supplied "credible arguments" that the foreign suit would be dismissed; that stay was never lifted).

As noted in the accompanying expert declarations—including from the Honorable Eros Grau, a former Justice of the Brazilian Supreme Court—Petitioner's Popular Action fails to satisfy the statutory and constitutional prerequisites for a popular action under Brazilian Law.  Petitioner has no standing to file the Popular Action because, *inter alia*, (1) he is acting for private interests and not for the "public interests;" (2) he is seeking to annul a *private* transaction (i.e. the JBS-Bertin Merger) as opposed to a "public act," and (3) he is unable to credibly allege any harm to "public property," as required under Brazilian law.  Grau Decl. ¶¶22, 32, 40-47; Tucci & Sica Decl. ¶¶58-65; Warde Decl. ¶¶17-22.  The key allegation of the Popular Action—that BNDESPar allegedly suffered losses as a result of the merger—has even been directly contradicted by a sworn declaration filed by BNDESPar in the Popular Action confirming that the JBS-Bertin Merger ***did not cause it any losses***. Warde Decl. ¶26; Grau Decl. ¶39.  Moreover, Petitioner's claims involve matters that occurred over 10 years ago and are therefore time-barred. Grau Decl. ¶¶23-28, 31, 35, 56;  Tucci & Sica Decl. ¶¶77-86; Warde Decl. ¶24.

    2.    <u>Petitioner May Actually Be Seeking Discovery Here in Aid of a Private Arbitration in Brazil</u>

Though not cited explicitly in his Application, Intervenors have reason to believe that Petitioner seeks Section 1782 discovery for use in a private CAM Arbitration. Petitioner has already used judicial mechanisms to "regularize" evidence so that the CAM Arbitration claimants can use it in that proceeding. Grau Decl. ¶¶ 13, 22, 32; Tucci & Sica Decl. ¶¶64-65; Warde Decl. ¶¶ 12-17. But discovery obtained under Section 1782 should not be used in the CAM Arbitration because under controlling Second Circuit authority, the term "tribunal" for purposes of Section 1782 excludes private commercial arbitral tribunals such as the CAM Arbitration. *See Nat'l Broad. Co. v. Bear Stearns & Co., Inc.,* 165 F.3d 184, 191 (2d Cir. 1999) (holding Section 1782 cannot be used for foreign private commercial arbitrations). In fact, this Court has specifically denied a Section 1782 application for use in a CAM Arbitration before. *See In re Petrobras Sec. Litig.*, 393 F. Supp. 3d 376, 380, 386 (S.D.N.Y. 2019).[9] Allowing Section 1782 discovery for private arbitrations would undermine arbitration's advantages by exposing arbitration participants to potentially extensive and expensive discovery procedures. *See id.* ("[T]he arbitrators control discovery, and neither party [should be] deprived of its bargained-for efficient process by the other party's tactical use of discovery devices.").

Here, Petitioner obtained Intervenors' sensitive documents prior to filing the Popular Action, which the CAM Arbitration claimants had been trying to obtain for some time, and then publicized them by attaching them to his complaint, such that the CAM Arbitration claimants were able to review and use those documents in the CAM Arbitration. Grau Decl. ¶ 13 (noting that "one

---

[9]  The majority of other federal courts have followed *NBC. See, e.g.*, *Rep. of Kaz. v. Biedermann Int'l*, 168 F.3d 880, 883 (5th Cir. 1999) ("Resort to § 1782 in the teeth of such arguments suggests a party's attempt to manipulate United States court processes for tactical advantage. Section 1782 need not be construed to demand a result that thwarts private international arbitration's greatest benefits." (footnote omitted)); *In re Hanwei Guo*, 2019 WL 917076, at *2 (S.D.N.Y. Feb. 25, 2019) (following *NBC* and concluding that Section 1782 did not "include arbitrations created by private agreement").

of the objectives of the Popular Action [filed by Mota] was to regularize evidence unlawfully or improperly gathered by the plaintiff in the Popular Action, in order to support the legal arguments the plaintiffs advanced in the Arbitration Proceedings.").  Intervenors therefore reasonably believe that Petitioner will use the discovery sought here in the same way—to "regularize" or "publicize" it in the Popular Action so that the CAM Arbitration claimants can use it against some of the Intervenors—but the CAM Arbitration does not qualify as a "tribunal" for purposes of Section 1782 under controlling Second Circuit law.

          3.      Discovery Sought From Blessed Holdings Inc. Cannot Be "For Use" Because That Entity Had No Involvement in the Transactions At Issue

Petitioner also fails to meet his burden to show that the subpoena to Blessed Holdings Inc. will serve any "use" in the foreign proceedings whatsoever.  While the discovery sought need not be necessary for Mota to prevail, the discovery sought must still "serve some use in the proceeding." *Mees v. Buiter*, 793 F.3d 291, 298-99 (2d Cir. 2015) (noting that an applicant may seek discovery of materials that will "increase her chances of success"); *see also Certain Funds, Accounts &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 120, 122 (2d Cir. 2015) (denying discovery where petitioners "failed to show any way that they could put before the foreign tribunals the information they sought to discover").  Here Blessed Holdings Inc. was not involved in any of the transactions referenced in the 1782 Application, including any transaction relating to the JBS-Bertin Merger, nor is it an entity affiliated with any of the Intervenors. Murphy Decl. ¶ 3.  Indeed, the New York Department of State registration page Petitioner uses to support its Application shows that Blessed Holdings Inc. was only incorporated on July 10, 2019, *almost 10 years after* any of the relevant events that took place in the underlying JBS-Bertin Merger. ECF 4-6 (Hine Ex. F).  Blessed Holdings Inc. thus has nothing of value or relevance that could be used at *any stage* of the Popular Action or CAM Arbitration. *See Certain Funds*, 798 F.3d at 120.

### C.     Petitioner is Not an "Interested Person"

Petitioner does not qualify as an "interested person" in the foreign "proceeding" because he lacks standing to bring the Popular Action.  Courts have recognized that foreign plaintiffs must have a *legitimate basis* under local law to be recognized as potential litigants.  *In re Intel Corp. Microprocessor Antitrust Litig.*, 2008 WL 4861544, at *8-10, 12-15 & n.11 (D. Del. Nov. 7, 2008) (denying Section 1782 application where plaintiff had no standing to bring foreign claims).  Here, Petitioner has no standing to bring his claims in Brazil because he has brought claims for his own private interests, seeks to prosecute claims based on "public acts" even though his claims concern a corporate merger between two private companies, and he filed claims with a 5-year statute of limitations arising out of conduct that occurred more than 10 years ago.  Grau Decl. ¶¶23-28, 31, 35, 56; Tucci & Sica Decl. ¶¶77-86; Warde Decl. ¶24.  Further, the supposedly aggrieved party in the Popular Action, BNDESPar, has even submitted a declaration in the Popular Action stating that *it has not suffered any losses as a result of the JBS-Bertin Merger transactions*. Warde Decl. ¶26.  Petitioner's claims are therefore baseless since no harm was caused to "public property." *Id.* Given the numerous deficiencies in his standing to bring claims in Brazil, *see* Grau Decl. ¶56; Warde Decl. ¶¶12, 16-24, 26, Plaintiff does not qualify as an "interested person" worthy of receiving Section 1782 discovery here.

## II.    THE *INTEL* FACTORS WEIGH HEAVILY IN FAVOR OF VACATING THE ORDER AND QUASHING THE SUBPOENAS

"[A] district court is not required to grant a [Section] 1782 discovery application simply because it has the authority to do so."  *In re Microsoft Corp.*, 428 F. Supp. 2d at 192 (S.D.N.Y. 2006) (citing *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004)).  Even if the three statutory requirements were met, this Court should use its discretion to deny the 1782 Application and quash the Subpoenas.  *Intel*, 542 U.S. at 264.  Courts must be mindful of "the

'twin aims' of Section 1782: 'providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts.'" *Kiobel by Smakalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 244 (2d Cir. 2018) (quoting *In re Metallgesellschaft AG*, 121 F.3d 77, 79 (2d Cir. 1997)).  Courts have also considered four "non-exclusive" factors to determine whether a court should exercise its discretion to grant a § 1782 request.  *See Intel*, 542 U.S. at 264–65; *see Kiobel*, 895 F.3d at 244.  Each of these discretionary factors weighs against Mota's 1782 Application and in favor of vacating the Order and quashing the Subpoenas.

A.     *Intel* **Factor 1: The Evidence Petitioner Seeks Is Already Within Reach Of The Foreign Tribunals**

*First*, the Application should be denied because Petitioner can obtain the same discovery sought here from the real party in interest—Intervenors—in Brazil.  Under the first *Intel* factor, courts must consider "whether *the documents* or testimony sought [by the application] are within the foreign tribunal's jurisdictional reach, and thus accessible absent § 1782 aid." *In re Application of Microsoft Corp.*, 428 F. Supp. 2d 188, 192–93 (S.D.N.Y. 2006) (citing *Intel*, 542 U.S. at 264–65) (emphasis added).  Indeed, the core inquiry is whether the "evidence, available in the United States, may be unobtainable absent § 1782(a) aid."  *Intel*, 542 U.S. at 264; *see In re OOO Promnefstroy*, 2009 WL 3335608 at *5 (S.D.N.Y. Oct. 15, 2009) ("[I]t is the foreign tribunal's ability to control the evidence and order production, not the nominal target of the § 1782 application, on which the district court should focus."); *In re Microsoft Corp.*, 428 F. Supp. 2d at 194 (granting motion to quash Section 1782 subpoena because, inter alia, even though respondents "are not 'participants,' per se, in the [foreign] proceeding, all of the documents sought by [petitioner] are within the [the foreign tribunal]'s reach"); *In re Macquarie Bank Ltd.*, 2015 WL 3439103, at *6 (D. Nev. May 28, 2015) ("[T]he key issue is whether the material is obtainable

through the foreign proceeding.").

Here, while Respondents are not parties to the Popular Action or CAM Arbitration, the Subpoenas are primarily aimed at discovering information purportedly supplied by and related to Intervenors.  ECF 1-2 to 1-5.  For example, the JPM Subpoena requests "[a]ll documents and communications concerning the acquisition, merger, transaction(s) and/or partnership between Bertin and JBS," and "[a]ll documents and communications concerning payments made to the Brazilian Workers' Party and/or Guido Montega by Joesley Batista, Wesley Batista, JBS, Blessed Holdings LLC, Blessed Holdings Inc., [and] Blessed Holdings Cayman." ECF 1-2 ("JPM Subpoena"), Requests 1 &2.  Thus, the subpoenas practically seek information from Intervenors— who are named parties to both the Popular Action underlying the Application.  *Kiobel*, 895 F.3d at 245 (2d Cir. 2018) ("when the real party from whom documents are sought" is involved in the foreign proceedings, then the first *Intel* factor counsels against granting the application); *see Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 85 (2d Cir. 2004) ("Although technically the respondent in the district court was [a firm], for all intents and purposes petitioners are seeking discovery from [the firm's client], their opponent in [foreign] litigation.").

Further, allowing Mota to obtain the same type of evidence from third parties here would undermine the twin policy aims of § 1782 as it would be inefficient for Mota to seek discovery from third parties of documents belonging to its party opponent in the Popular Action.  *See*, *e.g.*, *In re RSM Prod. Corp.*, 2018 WL 1229705, at *4 (S.D.N.Y. Mar. 9, 2018) ("[A]lthough [respondent] is not a participant in the foreign proceeding, it would be a poor exercise of discretion in these circumstances to assist an Israeli court by providing discovery from an Israeli resident whose documents are within the Israeli court's jurisdiction.").  Indeed, Brazilian law specifically provides that a plaintiff of a popular action can *directly* seek evidence from the defendants (i.e.

Intervenors here) in that action.  Tucci & Sica Decl. ¶¶54-57, 87 (noting discovery mechanisms that Mota could have used to seek the same discovery in the Popular Action, including pre-action discovery).  Because Mota could seek the same documents from Intervenors abroad but has not even attempted to do so, this weighs against allowing the 1782 Application as the evidence is obtainable absent Section 1782(a) aid.

**B.**   **_Intel_ Factor 2: Nature and Character of the Foreign Proceedings Weigh Against Discovery Here**

Contrary to Mota's assertions, the foreign tribunals will not be receptive to any evidence obtained here. Mem. 15-16.  For starters, Mota wholly fails to plead that the Brazilian court would be receptive to any § 1782 evidence, merely relying on other cases involving 1782 discovery in aid of a proceeding in Brazil, but nowhere explaining that the Brazilian court at issue here would welcome it under these circumstances. _Id._  That is precisely because if the Brazilian court knew that Mota had filed this Application, the Brazilian court may take the view that Mota is "abusing foreign procedures, such as Section 1782, in order to force the Defendants in the Popular Action to expend resources to resist and defend their interests in international proceedings." Warde Decl. ¶24 n.17.  Mota did not even seek to obtain from anyone in Brazil the documents sought here, nor has he ever indicated in the Popular Action complaint the need for any evidence. Tucci & Sica Decl. ¶88.  To be sure, Mota has no grounds for presenting evidence at this time, and given the overwhelming basis for dismissal of the Popular Action, Mota has no real likelihood of being able to use any evidence obtained here in the Popular Action; his only avenue would be to share the discovery with aligned parties in the CAM Arbitration, which would be an abuse of the statute.[10]

---

[10]   To this end, should the Court grant the Application, Intervenors respectfully request that the Court limit the use of the evidence obtained here only for the Popular Action and require that Petitioner use his best efforts to submit any evidence obtained here under seal in the Popular Action.

Further, the Court should not merely consider the receptivity of the foreign court, but the nature and character of the proceedings as a whole. *See Intel*, 542 U.S. at 244 ("[A] court … may consider the nature of the foreign tribunal, the character of proceedings underway abroad, and the receptivity of the foreign government, court, or agency to federal-court judicial assistance."); *Kiobel*, 895 F.3d at 245 ("The *Intel* factors are not to be applied mechanically. A district court should also take into account any other pertinent issues arising from the facts of the particular dispute."). District courts are given wide discretion to "root out sham applications under § 1782." *Glock v. Glock, Inc*., 797 F.3d 1002, 1009 (11th Cir. 2015).

As noted above, the "sham" nature and character of Petitioner's foreign "proceeding" strongly weigh against granting the discovery requested here because (i) the statute of limitations bars Petitioner's claims in the Popular Action; (ii) Petitioner lacks standing to bring claims; (iii) the JBS-Bertin Merger, a corporate transaction between two private parties, does not qualify as a "public act" for purposes of relief under a popular action in Brazil; (iv) the absence of any harm to "public property," and (v) strong evidence suggests that Petitioner is using the Popular Action as a mechanism to regularize evidence to aid aligned parties in a related private CAM Arbitration. Grau Decl. ¶¶22-28, 31-35, 40-47, 56; Tucci & Sica Decl. ¶¶58-65, 77-86; Warde Decl. ¶¶12, 16-24. At the current procedural posture, it would be premature to grant discovery until the Brazilian court has ruled on the pending requests to dismiss/suspend the Popular Action entirely. Warde Decl. ¶30. The "nature of the foreign tribunal" and "the character of proceedings underway abroad" thus weighs against the Application. *Intel*, 542 U.S. at 244.

C.   *Intel* **Factor 3: The Application Seeks To Circumvent Both Foreign And U.S. Laws And Policies**

   1.   Petitioner's Application Is An End-Run Around Brazilian Discovery Procedures and Policies

The third *Intel* factor weighs "whether the § 1782(a) request conceals an attempt to

circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265. This includes circumventing a foreign tribunal's procedures for obtaining evidence. *See In re Caratube Int'l Oil Co., LLP*, 730 F. Supp. 2d 101, 107–08 (D.D.C. 2010) (holding that Respondent's unilateral decision to "side-step" the evidentiary rules by seeking Section 1782 discovery from third parties without leave of the tribunal weighed against discovery under third *Intel* factor); *In re Application of Digitechnic*, 2007 WL 1367697, *5 (W.D.Wash. May 8, 2007) (finding that "discovery application seeking discovery never sought in France certainly appears to be a circumvention attempt").

Here, Mota's attempt to obtain discovery in the United States is an end-run around the Brazilian court's ability to control discovery.[11] Mota has failed to obtain, and has never even sought, any discovery in Brazil, let alone the Brazilian court's permission to file its § 1782 applications, which may lead the Brazilian court to take the view that Mr. Mota is abusing foreign procedures to force defendants in the Popular Action—Intervenors here—to expend resources to resist and defend their interests in international proceedings. Tucci & Sica Decl. ¶¶87-90; Warde Decl. ¶¶ 24 n.17. In fact, Intervenors believe that Petitioner may have publicly filed Intervenors' sensitive documents in support of the Popular Action complaint as a veiled attempt to reveal them to the CAM Arbitration claimants. Grau Decl. ¶¶13, 22, 32; Tucci & Sica Decl. ¶¶64-65; Warde Decl. ¶¶12, 16-17. Allowing Mota to obtain discovery here would have the effect of circumventing the Brazilian court's authority to control discovery, particularly where Petitioner's foreign claims are so fundamentally flawed, thus pitting this Court against the Brazilian courts "rather than

---

[11]   If Petitioner intends to share the discovery he seeks here with parties in the CAM Arbitration, Mota's attempt to obtain discovery here circumvents the CAM Arbitration's discovery procedures too. CAM Rule 4.6, *supra* note 2, at 5 (stating that the arbitration tribunal should "establish the procedures and order for the production of evidence").

fostering cooperation between them" and thereby violating "established principles of comity." *In re Microsoft Corp.*, 428 F. Supp. 2d 188, 195-96 (S.D.N.Y. 2006) (citing *Pravin Banker Assocs., Ltd. v. Banco Popular Del Peru,* 109 F.3d 850, 854 (2d Cir. 1997)); *see In re Kreke Immobilien KG*, 2013 WL 5966916, at *6 (S.D.N.Y. Nov. 8, 2013) ("It would create a perverse system of incentives—one counter to the efficiency and comity goals of § 1782—to encourage foreign litigants to scurry to U.S. courts to preempt discovery decisions from tribunals with clear jurisdictional authority." (footnote omitted)); *see also In re Qualcomm Inc.*, 162 F. Supp. 3d 1029, 1042 (N.D. Cal. 2016) ("[P]rinciples of comity direct this court not to substitute its own judgment for the [foreign tribunal's] on how to best manage its affairs." (footnote omitted)). Petitioner's Application also seeks to perversely capitalize on a sham foreign proceeding contrary to Brazilian law and policy. Grau Decl. ¶¶22, 32, 40, 43, 47; Tucci & Sica Decl. ¶¶ 58-65; Warde Decl. ¶¶17, 21, 22. The *ação popular* (or citizen's suit) in Brazil is a device "to ensure preservation of the public interest." Grau Decl. ¶22. Here, however, Mota is using the Popular Action for ulterior, private motives. Warde Decl. ¶23 (listing evidence of collusion); *accord* Grau Decl. ¶13, 22, 32; Tucci Decl. ¶64-65.

### 2.     Petitioner's Application Is An End-Run Around U.S. Policy Too

Mota's Application should be denied because he filed it in bad faith for the purpose of harassing Intervenors by leveraging U.S.-style discovery for use in a frivolous foreign lawsuit. "[I]f the district court determines that a party's discovery application under Section 1782 is made in bad faith, for the purpose of harassment, or unreasonably seeks cumulative or irrelevant materials, the court is free to deny the application in toto, just as it can if discovery was sought in bad faith in domestic litigation." *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1101 n.6 (2d Cir. 1995); *see In re Grynberg*, 223 F. Supp. 3d 197, 200–02 (S.D.N.Y. 2017) (denying application

where petitioner "launched an international front in his litigation crusade").

Since the Popular Action will likely be dismissed, this Court should not allow Mota to obtain discovery based on frivolous foreign proceedings. *See In re Imanagement Servs., Ltd.*, 2005 WL 1959702, at *5 n.6 (E.D.N.Y. Aug. 16, 2005) (recognizing that the Court should "reject a § 1782 request if it suspects that it is a "fishing expedition" or a vehicle for harassment" where petitioners appeared to be "pursuing discovery in the United States for some purpose other than [the foreign proceeding]."). If not dismissed, the Court should stay this case until the Brazilian court has decided Intervenors' motions pending in the Popular Action. *See* Section IV.

Similarly, the Subpoenas should be quashed because they seek evidence available elsewhere. *See In re Metallgesellschaft AG*, 121 F.3d 77, 79 (2d Cir. 1997) ("[I]f it were clear that discovery were equally available in both foreign and domestic jurisdictions, a district court might rely on this evidence to conclude that the § 1782 application was duplicative or was brought vexatiously." (citations omitted)). Fishing expeditions and duplicative subpoenas not serving the twin aims of Section 1782 discovery should be quashed. *See  In re RSM Prod. Corp.*, 2018 WL 1229705, at *3  (denying § 1782 request as "duplicative, vexatious, and brought in bad faith" where petitioners "ha[d] already sought documents regarding the same set of transactions" in another § 1782 proceeding). Those "overly broad fishing expedition[s]" also do "nothing to further the twin aims of the statute." *In re Asia Mar. Pac. Ltd.*, 253 F. Supp. 3d 701, 705 (S.D.N.Y. 2015) (denying § 1782 request); *accord Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 594 (7th Cir. 2011) ("One abuse would be for a party to seek discovery in a federal district court that it could obtain in the foreign jurisdiction, thus gratuitously forcing his opponent to proceed in two separate court systems; the inference would be that the party seeking U.S. discovery was trying to harass his opponent.").

Section 1782 requests designed to harass others should be denied as a matter of discretion. *See Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 81 (2d Cir. 2012) ("[A] district court may deny the section 1782 application where it suspects that the discovery is being sought for the purposes of harassment."); *In re IPC Do Nordeste, LTDA*, 2012 WL 4448886, at *9 (E.D. Mich. Sept. 25, 2012) ("[E]ither the evidence can be obtained from more convenient and less burdensome source, [*i.e.*, the party opponent], or the evidence cannot be obtained from [the party opponent] because of Brazilian proof-gathering restrictions and policies.  In any case, the final *Intel* factor [*i.e.*, burden] weighs . . . against [the applicant].").  So too here.

### D. *Intel* Factor 4: Petitioner Seeks Overly Intrusive And Burdensome Discovery

*Finally*, the Respondents, as third parties to the dispute between Petitioner and Intervenors, should not be burdened to produce documents for a baseless proceeding.  Under the Federal Rules of Civil Procedure, which are incorporated by reference in Section 1782, district courts "*must* limit the frequency or extent of discovery . . . if it determines that . . . the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive."  Fed. R. Civ. P. 26(b)(2)(C)(i); 28 U.S.C. § 1782(a).  At the outset, Mota seeks duplicative information from multiple of the Respondents here. For example, he requests communications and documents related to Bertin, Nova Holding, Blessed Holdings LLC, J. Batista, W. Batista, JBS, Formentera Holdings, Mustique Enterprises, Lighthouse Capital Insurance Company, and US Commonwealth Life from all of the Respondents. ECF 1-2 to 1-5.  Mota has also sought similar information from Blessed Holdings LLC in Section 1782 proceedings in Delaware and should not be allowed to seek duplicative discovery here.[12]

---

[12]   For example, the subpoena to Respondent Blessed Holdings LLC in the Section 1782 proceedings pending in the District of Delaware requests the same discovery of Respondents

Petitioner's discovery requests are also not "relevant" and "proportional to the needs of the case," in accordance with Federal Rule of Civil Procedure 26. *See, e.g.*, *In re Asia Mar. Pac. Ltd.*, 253 F. Supp. 3d 701, 706 (S.D.N.Y. 2015) ("[D]iscovery is 'for use' in a foreign proceeding if it is *relevant* to the subject matter of the proceeding, and the evidence would 'increase the applicant's chances of success' in the proceeding." (emphasis added) (quoting *Mees*, 793 F.3d at 299)); 28 U.S.C. § 1782(a) (incorporating Federal Rules of Civil Procedure). Mota has not explained the relevance of its document requests to each Respondent related to entities unmentioned and unexplained in its Application—such as Formentera Holdings, Mustique Enterprises, Marcus Moraes, Lighthouse Capital Insurance Company, US Commonwealth Life, and Nova Holding. Mem. 17. Those entities are, at best, tangentially mentioned in Petitioner's Popular Action complaint with no connection to the JBS-Bertin Merger, and are irrelevant to Petitioner's foreign claims. *See* ECF 4-1. Mota appears to be using this Section 1782 Application as a fishing expedition designed to pursue carte-blanche discovery of entities that have no bearing on his claims and belies his requests for broad discovery of "*All* documents and communications…" and "*All* financial statements, bank statements, accounting records and financial reports…" with no regard to the burden placed on the recipients. ECF 1-2 to 1-5; *see also* Warde Decl. ¶ 16 n.11.

Finally, Mota's requests are temporally overbroad as they span a period of ***13 years***. Section 1782 and Federal Rule of Civil Procedure 26 furnishes district courts with broad discretion to impose reasonable limitations upon discovery. *See Malev Hungarian Airlines v. United Techs. Int'l, Inc*., 964 F.2d 97, 102 (2d Cir. 1992). Petitioner's unbridled discovery requests for such a lengthy period of discovery compels quashing the Section 1782 discovery Mota seeks here. *See*

---

here, including documents and communications concerning Bertin, Nova Holding, the relevant JPM accounts, Fromentera Holdings, J. Batista, W. Batista, and JBS. *See In re Mauricio Mota*, 19-MC-00369-MN (D. Del.), ECF 1-2.

*Lufthansa Technik v. Panasonic Avionics Corp.*, 2017 WL 6311356, at *6 (W.D. Wash. Dec. 11, 2017) (modifying discovery to "limit the temporal range of each request according to statutes of limitations for each country for which information is sought"); *In re Intel Corp. Microprocessor Antitrust Litig.*, 2008 WL 4861544, at *15 (D. Del. Nov. 7, 2008) (finding that 1782 discovery "must be bounded by some temporal component"); *In re Apotex Inc.*, 2009 WL 618243, at *3 (S.D.N.Y. Mar. 9, 2009) (quashing 1782 subpoena's with inappropriate time frame).

## III.   ALTERNATIVELY, THIS COURT SHOULD STAY THIS CASE PENDING THE OUTCOME OF THE UNRESOLVED MOTIONS IN BRAZIL

If this Court does not deny Mota's application outright, a stay is nevertheless appropriate to allow the Brazilian court to decide the unresolved motions, which Intervenors are confident will lead to the dismissal of the Popular Action entirely.  Courts have stayed proceedings related to a 1782 application to avoid inconsistent rulings with a foreign court.  *See, e.g.*, *In re Pinchuk*, 2014 WL 1328484, at *1 (S.D. Fla. Mar. 31, 2014) (explaining that the Court "would surely benefit from a clearer picture and timeline pertaining to the foreign tribunal's receptivity to the discovery sought," and further explaining that the Court's "decision to grant a stay of modest duration pending a decision by the underlying foreign tribunal is not unique").  A request for stay should be granted where the decision in a foreign proceeding is "likely to have a substantial or controlling effect on the claims and issues in the stayed case." *In re Application of Alves Braga*, 789 F. Supp. 2d 1294, 1310 (S.D. Fla. 2011) (citing *Miccosukee Tribe of Indians of Fla. v. South Fla. Water Mgmt. Dist.*, 559 F.3d 1191, 1198 (11th Cir. 2009)) (granting limited stay of discovery of 1782 proceeding pending resolution of motions in foreign proceeding).

Here, Intervenors have filed two pending requests to suspend or dismiss the Popular Action in Brazil—one on the ground that Mota is acting in collusion with the CAM Arbitration claimants and others and another on the grounds that Mota has no standing, his claims are time-barred, and

he fails to state a claim.  Warde Decl. ¶¶ 15-35.  A decision on those requests, which would likely have a significant effect on the claims and issues decided and potentially dispose of the entire proceeding, is expected between April and June 2020. Warde ¶¶ 27, 29.  Thus, allowing discovery here would be premature until the Brazilian court rules.  If this Court does not dismiss Mota's Application entirely, a stay would therefore be in the interests of judicial economy to avoid inconsistent rulings and for the Court to gain a "clearer picture" of the foreign "proceeding".

<u>CONCLUSION</u>

Intervenors respectfully request that the Court vacate the Order, deny Mota's Application, and quash the Subpoena, or alternatively, stay these proceedings pending the resolution of the unresolved requests for dismissal and suspension in the Popular Action in Brazil.

By: */s/ Lucas V. M. Bento*

Michael B. Carlinsky
Lucas V. M. Bento
Alexander P. Wentworth-Ping
Quinn Emanuel Urquhart & Sullivan, LLP
51 Madison Avenue, Floor 22
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
michaelcarlinsky@quinnemanuel.com
lucasbento@quinnemanuel.com
alexwentworthping@quinnemanuel.com

*Attorneys for Intervenors*